UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | (Joint Administration Pending) |
| River City Renaissance, LC, & ) | |
| River City Renaissance III, LC[1], ) | |
| ) | |
| Debtors. ) | Case No. 14-34080 (KLP) |
| ) | |

**DECLARATION OF JOSEPH J. LUZINSKI IN SUPPORT OF CHAPTER 11
PETITIONS AND REQUEST FOR FIRST DAY RELIEF**

**I. INTRODUCTION**

1. My name is Joseph J. Luzinski. I am over the age of eighteen and am competent to testify. I am a Senior Vice President of Development Specialists, Inc. ("DSI"). DSI has been retained as Liquidating Representative ("LR") of River City Renaissance, LC and River City Renaissance III, LC (together, the "Debtors"), and the Debtors have requested that the Court approve retention of DSI as their Liquidating Representative and restructuring advisor.

2. DSI and its employees are highly qualified and experienced in providing restructuring management services. For more than three decades, DSI has been providing respected restructuring management services. DSI has specific and extensive experience in advising debtors in Chapter 11.

3. I have more than 25 years of experience in the Chapter 11 process and in providing restructuring management services. In cases before this Court, I have served as (a) the Liquidating Trustee in the Chapter 11 case of In re Michael D. Vick, Case No. 08-50775-FJS, and (b) the Chapter 11 Trustee in the cases of In re IPofA West Oaks Mall, LP, et al., Case No.

---

[1] The final four digits of the federal tax ID numbers for River City Renaissance, LC and River City Renaissance III, LC, respectively, are 8910 and 8102.

07-33649-KRH, In re IPofA West Oaks LeaseCo, LP, Case No. 07-33650-KRH, and IPofA WOM Master LeaseCo, LP, Case No. 07-33651-KRH, all of which were owned or controlled, directly or indirectly, by Mr. Ed Okun, who was sentenced in 2009 to a 100-year prison sentence relating to a $126 million fraud.

4. In other courts my recent restructuring and bankruptcy experience includes serving as - (a) CRO in the Chapter 11 case of a publicly-traded hearing products business; (b) adviser to the Chapter 11 trustee of a large law firm; (c) CRO to a marketer and distributor of branded products in the automotive aftermarket; (d) Chapter 11 trustee of 2 operating automobile dealerships; (e) CRO to a watch manufacturer and jewelry distributor and related entities in operating Chapter 11 cases; (f) CRO of a bank holding company where the underlying bank was taken over by the FDIC; (g) Chapter 11 and then Chapter 7 trustee of a wholesaler of rare and foreign coins; and (h) CEO of a commercial airline under its Chapter 11 plan.

5. Proposed bankruptcy counsel for the Debtors has filed with the Court an application to employ DSI as Liquidating Representative to provide reorganization and liquidation management services, including my services as the DSI professional primarily responsible for the engagement.

6. During my brief involvement with the Debtors, I have spoken on several occasions with counsel for Chevron U.S.A. Inc. and proposed counsel for the Debtors, and I have also conferred with counsel for The Jefferson Investor Group, LC, which is the majority member of each of the Debtors. I have also (a) attended a hearing in the Circuit Court for the City of Richmond, during which counsel for the Debtors attempted to obtain an injunction to prevent a foreclosure sale; (b) reviewed the dockets and relevant pleadings, and attachments and exhibits, filed in the Receivership Action and the Criminal Cases (each as defined below); and (c)

reviewed the closing binders from the closings of the loans described below, payoff demand letters dated April 23, 2014, related to the loans described below, and certain organizational documents of the Debtors and related entities. I have not reviewed the Debtors' books and records, which I understand are in the possession of the state-court receiver. The facts set forth herein are based on this limited, initial investigation.

## II. BACKGROUND

### A. The Debtors' Organizational History And Structure

7.  What follows is a summary of the Debtors' organizational structures and membership interests. Organizational charts of RCR and RCR III are attached as **Exhibits A and B**, respectively.

**i. River City Renaissance, LC**

8.  RCR was organized on or about January 7, 1998 as a Virginia limited liability company pursuant to articles of organization filed with the SCC on that date. RCR's effective operating agreement is that certain Amended and Restated Operating Agreement of River City Renaissance, LC, dated December 18, 2009 (the "RCR Operating Agreement").

9.  Under the RCR Operating Agreement, RCR's purpose is to acquire, develop, lease, improve, construct, rehabilitate, maintain, operate, and otherwise deal with residential property, particularly 21 parcels of real property on which apartment rental units are situated and located in the City of Richmond, Virginia.

10. RCR's members are: (i) The Jefferson Investor Group, LC; (ii) River City Renaissance Tenant, LC; (iii) River City Renaissance SCP, LLC; and (iv) WJA, Inc., each of which is either a Virginia LLC or a Virginia corporation (collectively, the "RCR Members").

11. WJA, Inc., a Virginia corporation, is the "RCR Managing Member." The

Jefferson Investor Group, LC, a Virginia LLC, is the "RCR Majority Member."

12. Billy G. Jefferson, Jr. ("Jefferson") is the President of the RCR Managing Member, the Member-Manager of the RCR Majority Member, and also serves as the Manager of both River City Renaissance Tenant, LC and River City Renaissance SCP, LLC.

13. Chevron U.S.A. Inc. ("Chevron"), a Pennsylvania corporation, is the Federal Investor member in River City Renaissance Tenant, LC and holds a 99.9% interest in River City Renaissance Tenant, LC.

14. Foss VA 2010 Fund I, LLC and Foss VA 2011 Fund I, LLC (together, "Foss") together own 99% of the member interests in River City Renaissance SCP, LLC. River City Renaissance SCP Manager, LC, which is wholly owned by Mr. Jefferson, owns the other 1%.

15. RCR owns 21 parcels of real property in the City of Richmond (collectively, the "RCR Property"; more particularly described at **Schedule A**, attached hereto).

**ii. River City Renaissance III, LC**

16. RCR III was organized on or about August 30, 1999 as a Virginia limited liability company pursuant to articles of organization filed with the SCC on that date. RCR III's effective operating agreement is that certain Amended and Restated Operating Agreement of River City Renaissance III, LC, dated December 18, 2009 (the "RCR III Operating Agreement").

17. Under the RCR III Operating Agreement, RCR III's purpose is to acquire, develop, lease, improve, construct, rehabilitate, maintain, operate, and otherwise deal with residential property, particularly 7 parcels of real property on which apartment rental units are situated and located in the City of Richmond, Virginia.

18. RCR III's members are: (i) The Jefferson Investor Group, LC; (ii) River City Renaissance III Tenant, LC; (iii) River City Renaissance III SCP, LLC, each of which is a

Virginia LLC; and (iv) Mr. Jefferson, an individual resident of Virginia (collectively, the "RCR III Members").

19. Mr. Jefferson is the "RCR III Managing Member." The Jefferson Investor Group, LC, a Virginia LLC, is the "RCR III Majority Member."

20. Mr. Jefferson is the Member-Manager of the RCR III Majority Member, and also serves as the Manager of both River City Renaissance III Tenant, LC, and River City Renaissance III SCP, LLC.

21. Chevron is also the Federal Investor member in River City Renaissance III Tenant, LC and holds a 99.9% interest in River City Renaissance III Tenant, LC.

22. Foss together own 99% of the member interests in River City Renaissance III SCP, LLC. River City Renaissance III SCP Manager, LC, which is wholly owned by Mr. Jefferson, owns the other 1%.

23. RCR III owns 6 parcels of real property in the City of Richmond (collectively, the "RCR III Property"; more particularly described at **Schedule A**, attached hereto; collectively the RCR Property and the RCR III Property are the "Properties").

**B. Loan History**

**i. River City Renaissance, LC**

24. Between September 2002 and early October 2005, RCR incurred obligations and three separate notes and loans, which were subsequently assigned to various entities, each of which was secured by associated security instruments and deeds of trust, as applicable.

25. On October 3, 2005, the outstanding indebtedness due under each of those three existing loans was consolidated as indebtedness (the "RCR Loan") owed by RCR to Wachovia Bank, N.A. ("Wachovia"), as evidenced by that certain Consolidated Promissory Note (the

5

"RCR Note"), dated October 3, 2005 in the amount of $30,350,000.00 and payable to the order of Wachovia.

26.     The indebtedness due under the RCR Note is purportedly secured, in part, by that certain Amended and Restated Deed of Trust and Security Agreement, naming Wachovia as beneficiary, dated October 3, 2005, and recorded with the Clerk's Office at Instrument No. 050034697 on October 6, 2005 (the "RCR DOT"). The RCR DOT purports to encumber the RCR Property.

27.     The indebtedness due under the RCR Note is further purportedly secured, in part, by that certain Assignment of Leases and Rents dated October 3, 2005, given by the Debtor in favor of Wachovia, recorded with the Clerk's Office at Instrument No. 050034698 on October 6, 2005 (the "RCR Assignment of Rents"), which conveyed to Wachovia a security interest in the rents, profits, and proceeds derived from the RCR Property.

28.     Additionally, Wachovia purports to have a security interest in personal property identified by the RCR DOT and the RCR Assignment of Rents through a UCC Financing Statement, filed with the SCC on October 11, 2005, with file number 051011 723-12 (the "RCR Financing Statement;" collectively, the RCR DOT, the RCR Assignment of Rents, and the RCR Financing Statement are the "RCR Security Instruments").

29.     On or about April 10, 2006, Wachovia assigned the RCR Loan, and the documents associated with the RCR Loan, to Wells Fargo Bank, N.A. ("Wells Fargo"), as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2005-C22, through, among other documents, that certain Assignment of Amended and Restated Deed of Trust Security Agreement dated April 10, 2006, recorded with the Clerk's Office at Instrument No. 060024823 on July 21, 2006.

30. On or about March 31, 2009, Wells Fargo assigned the RCR Loan, and the documents associated with the RCR Loan, to Bank of America, N.A. ("BofA"), as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2005-C22, through, among other documents, that certain Assignment of Amended and Restated Deed of Trust Security Agreement dated March 31, 2009 recorded with the Clerk's Office at Instrument No. 090018602.

31. Subsequently, BofA assigned the RCR Loan and the documents associated with the RCR Loan, to U.S. Bank National Association ("U.S. Bank"), as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2005-C22, by and through CWCapital Asset management LLC, solely in its capacity as special servicer.

32. U.S. Bank contends that on or about November 11, 2013 RCR defaulted under the terms and conditions of the RCR Loan, and on March 10, 2014, U.S. Bank, by letter, notified RCR of the alleged default and accelerated the indebtedness due under the RCR Note and terms of the RCR Loan.

**ii. River City Renaissance III, LC**

33. Between March 2001 and early January 2006, RCR III incurred obligations and three separate notes and loans, which were originated and subsequently assigned by and to various entities, each of which was secured by associated security instruments and deeds of trust, as applicable.

34. On January 4, 2006, the outstanding indebtedness due under each of those three existing loans was consolidated as indebtedness (the "RCR III Loan") owed by RCR III to Wachovia, as evidenced by that certain Consolidated Promissory Note (the "RCR III Note"),

dated January 4, 2006 in the amount of $6,300,000.00 and payable to the order of Wachovia.

35. The indebtedness due under the RCR III Note is purportedly secured, in part, by that certain Amended and Restated Deed of Trust and Security Agreement, naming Wachovia as beneficiary, dated January 4, 2006, and recorded with the Clerk's Office at Instrument No. 060000500 on January 5, 2006 (the "RCR III DOT"). The RCR III DOT purports to encumber the RCR III Property.

36. The indebtedness due under the RCR III Note is further purportedly secured, in part, by that certain Assignment of Leases and Rents dated January 4, 2006, given by RCR III in favor of Wachovia, recorded with the Clerk's Office at Instrument No. 060000501 on January 5, 2006 (the "RCR III Assignment of Rents"), which conveyed to Wachovia a security interest in the rents, profits, and proceeds derived from the RCR III Property.

37. Additionally, Wachovia purports to have a security interest in personal property identified by the RCR III DOT and the RCR III Assignment of Rents through a UCC Financing Statement, filed with the SCC on January 10, 2006, with file number 060110 7368-0 (the "RCR III Financing Statement;" collectively, the RCR III DOT, the RCR III Assignment of Rents, and the RCR III Financing Statement are the "RCR III Security Instruments").

38. On or about May 26, 2006, Wachovia assigned the RCR III Loan, and the documents associated with the RCR III Loan, to Wells Fargo, as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C23, through, among other documents, that certain Assignment of Amended and Restated Deed of Trust Security Agreement dated May 26, 2006, recorded with the Clerk's Office at Instrument No. 060029021 on August 22, 2006.

39. Subsequently, Wells Fargo assigned the RCR III Loan, and the documents

associated with the RCR III Loan, to BofA, as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C23.

40. BofA assigned the RCR III Loan and the documents associated with the RCR III Loan, to U.S. Bank, as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C23, by and through CWCapital Asset management LLC, solely in its capacity as special servicer.

41. U.S. Bank contends that on or about November 11, 2013 RCR III defaulted under the terms and conditions of the RCR III Loan, and on March 10, 2014, U.S. Bank, by letter, notified RCR III of the alleged default and accelerated the indebtedness due under the RCR III Note and terms of the RCR III Loan.

**C. The State Court Receivership Proceedings And Pending Foreclosure**

42. On or about March 24, 2014, U.S. Bank, as plaintiff, filed two lawsuits with the Circuit Court for the City of Richmond, Virginia (the "Circuit Court"), each a Verified Complaint for Emergency Appointment of Property Receiver and Injunctive Relief, to which the Circuit Court assigned case numbers CL14-1405-1, which named RCR as defendant and later added River City Renaissance Tenant, LC as a defendant by consent, and CL14-1406-1, which named RCR III as defendant and later added River City Renaissance III Tenant, LC as a defendant by consent (collectively, Case Nos. CL14-1405-1 and CL14-1406-1 are the "Receiver Action").

43. Each complaint comprising the Receiver Action, in part, sought the appointment of CompassRock Real Estate LLC, a Delaware LLC ("CompassRock" or the "Receiver") to serve as a receiver for the Properties.

44.     On or about March 25, 2014, the Circuit Court entered orders in each case comprising the Receiver Action appointing Compass Rock as "Receiver" for the Properties.

45.     On or about April 22, 2014, the Circuit Court entered in each case comprising the Receiver Action orders styled as a "Final Consent Order Appointing Receiver" (the "Receiver Orders"), which continued the appointment of CompassRock as "Receiver" for the operation and management of the Properties.  The Receiver Orders provided to CompassRock certain enumerated powers and duties authorized by Virginia Code, more particularly described therein, which include and relate to the operation, possession, and maintenance of the properties and incidental obligations.

46.     On or about May 1, 2014, CompassRock posted the requisite bond to serve as Receiver for the Properties.

47.     The Receiver Orders prohibit the Debtors from selling the Properties, but the Receiver Orders provide that U.S. Bank shall not be prohibited or restrained from foreclosing on the Properties and taking title to the Properties in accordance with Virginia law.

48.     On June 16, 2014, and June 19, 2014, CompassRock submitted to the Circuit Court its reports as to RCRIII and RCR, respectively, for a partial month of April 2014 and the month of May 2014 (the "May Receiver Reports").  The Receiver Reports concern, without limitation, the status of the Properties and pending actions related to the Properties.

49.     The May Receiver Reports state, in relevant part, that for the month of May 2014 (a) the Properties owned by RCRIII had 98% occupancy and generated positive cash flow in the amount of $46,423.60 (total income of $51,379.11 - operating expenses of $4,955.51); and (b) the Properties owned by RCR had 92% occupancy and generated positive cash flow in the amount of $187,069.93 (total income of $209,608 - operating expenses of $22,538.07).

50. CompassRock has also prepared reports for the month of June 2014 (the "June Receiver Reports"). The June Receiver Reports state, in relevant part, that for the month of June 2014 (a) the Properties owned by RCR III had 87% occupancy and generated positive cash flow in the amount of $31,886.24 (total income of $46,896.16 - operating expenses of $15,009.92); and (b) the Properties owned by RCR had 78.3% occupancy and generated positive cash flow in the amount of $445,041.94 (total income of $504,315.37 - operating expenses of $59,273.43).

51. On or about July 9, 2014, Pardo Drazin Auctioneers LLC, as Substitute Trustee (the "Substitute Trustee") under the RCR DOT and the RCR III DOT, published a notice in the Richmond Times Dispatch of its intent to conduct a foreclosure auction of the RCR Property and RCR III Property on Thursday, July 31, 2014 at 12:00 p.m., as to the RCR Property, and at 12:30 p.m., as to the RCR III Property, on the steps of the courthouse for the Circuit Court.

52. On or about July 15, 2014, counsel for the Debtors contacted the Substitute Trustee to request that the foreclosure auctions for the Properties (collectively, the "Foreclosures") be voluntarily cancelled so that an orderly liquidation of the RCR Property and RCR III Property could be arranged with appropriate marketing to enable the properties to be sold for fair market value.

53. The Substitute Trustee and U.S. Bank refused to cancel the Foreclosures.

**D. Bankruptcy Court Sales Will Maximize Recovery For All Claimants**

54. Unlike a foreclosure on the courthouse steps, significant marketing efforts and § 363 sales and auctions will reap the best prices for the Properties, and those proceeds will inure to the benefit of U.S. Bank, and, importantly, through to creditors of the Debtors' respective members and to restitution claimants.

55. On December 9, 2013, the United States of America, through the U.S. Attorney's

Office for the Eastern District of Virginia (the "U.S. Attorney"), filed a Criminal Information as to Mr. Jefferson in the U.S. District Court for the Eastern District of Virginia (the "District Court"), to which case number 3:13-CR-00221-JAG was assigned.

56. On December 19, 2013, a Plea Agreement was filed with the District Court, as well as a Consent Order Directing Forfeiture of Property and an Order of Restitution as to Mr. Jefferson (respectively, the "Plea," "Forfeiture Order," and "Restitution Order").

57. The Forfeiture Order provides that the sum of $750,000.00 shall be included as a money judgment in Mr. Jefferson's ultimate sentence from the District Court. The Restitution Order provides that Mr. Jefferson will owe restitution of $12,947,886.77 at sentencing.

58. On May 6, 2014, the U.S. Attorney filed an Indictment as to Mr. Jefferson with the District Court, to which case number 3:14-CR-00066-JAG was assigned.

59. On June 4, 2014, a Plea Agreement was filed with the District Court in case number 3:14-CR-00066-JAG.

60. On July 22, 2014, the District Court entered a Restitution Order in case number 3:14-CR-00066-JAG, providing, among other things, that Mr. Jefferson would relinquish control of certain accounts and pay those restrained funds to the Clerk of the District Court until sentencing. That Order also stated that $165,000.00 of those funds shall be made payable to the Debtors' proposed counsel "related to efforts to liquidate [the Property] . . . and to otherwise assist [Mr. Jefferson] in making full restitution." (Case No. 3:14-CR-00066-JAG; Doc. No. 18.)

61. As to each of the pending District Court matters (the "Criminal Cases"), Mr. Jefferson is currently in custody awaiting sentencing from the District Court, which is currently scheduled for September 9, 2014.

62. As the District Court recognizes, an orderly liquidation of the Properties will

assist with reaching the goal of satisfying the full amount of the restitution owed to claimants in connection with Mr. Jefferson's pending District Court matters.

63. On information and belief, U.S. Bank is over-secured because the value of the RCR Property and RCRIII Property that serves as collateral for the RCR Note and the RCRIII Note exceeds the current aggregate indebtedness due under the two notes of approximately $36,795,000.

64. This concludes my declaration.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

**(SIGNATURE PAGE TO DECLARATION)**

WITNESS the following signatures and seals on the date indicated:

_____
Joseph J. Luzinski
Senior Vice President
Development Specialists, Inc.

The foregoing Declaration was sworn to and acknowledged before me, a Notary Public in and for the jurisdiction aforesaid, this 31st day of July, 2014, by Joseph J. Luzinski.

My commission expires: 07/31/16
Notary Registration No. 298127

_____
Notary Public

13