UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| *In re*: | Chapter 11 |
| | (Joint Administration Pending) |
| River City Renaissance, LC, & | |
| River City Renaissance III, LC[1], | |
| *Debtors*. | Case No. 14-34080-KLP |

## EMERGENCY MOTION UNDER § 543 FOR
## LIMITED WAIVER OF TURNOVER REQUIREMENT

River City Renaissance, LC ("RCR") and River City Renaissance III, LC ("RCR III"; collectively, the "Debtors"), as debtors and debtors-in-possession, through their proposed counsel, file this Emergency Motion Under § 543 For Limited Waiver Of Turnover Requirement (the "Motion"), pursuant to 11 U.S.C. §§ 105(a), 542, and 543, and Rules 6002, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Rules"). In support of this Motion, the Debtors state as follows:

### I. INTRODUCTION

1.   Through this Motion, the Debtors seek emergency, interim relief under § 543 of the Code. Prepetition, the Debtors' lead secured creditor obtained, in state court, the appointment of the Receiver to, among other duties, operate the Debtors' businesses, namely rental apartment units. The Debtors seek an Order from the Court directing the Receiver to

---

[1] The final four digits of the federal tax ID numbers for River City Renaissance, LC and River City Renaissance III, LC, respectively, are 8910 and 8102.

Robert H. Chappell, III, Esq. (VSB No. 31698)
Neil E. McCullagh, Esq. (VSB No. 39027)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:       (804) 697-2000
Facsimile:       (804) 697-2100
*Proposed Counsel for the Debtors & Debtors-In-Possession*

continue to operate and manage the Properties for the benefit of the Debtors' estates, as well as tenants at the Properties, until such time as the Debtor and the Liquidating Representative determine the appropriate strategy to manage the Properties; additionally, the Debtors request that the Court direct the Receiver to cooperate with the Debtors' representatives and professionals, including, without limitation, the Debtors' proposed counsel and the Liquidating Representative. In particular, the Debtors' request that the Court direct the Receiver to provide access to and, as requested, to turnover any and all documents, business records, accountings, audit reports, and other records incidental to the Debtors' business and the operation of the Properties, or copies thereof, in the Receiver's possession and control so as to permit the Debtors to accurately complete their Schedules and Statement of Financial Affairs[2] and to provide access to the Debtors' Properties.

2. On July 31, 2014 (the "Petition Date"), the Debtors each filed with the Court a voluntary petition seeking relief pursuant to chapter 11 of title of the United States Code (the "Code"). Contemporaneously, herewith, the Debtors, in each respective case, filed a Motion for Joint Administration (generally, the "Motion for Joint Administration"), seeking joint administration of their bankruptcy cases for procedural purposes and that applicable filings may be filed solely in RCR's bankruptcy case as the lead case.

3. Contemporaneously herewith, the Debtors filed with the Court an application to approve the retention and employment of Development Specialists, Inc. (the "Liquidating Representative"; generally, the "DSI Application"). As the DSI Application and the separately filed declaration of Joseph J. Luzinski, a principal of the Liquidating Representative (the "Luzinski Declaration"), set forth, the duties of the Liquidating Representative, on behalf of the

---

[2] Concurrently with this Motion, the Debtor has filed an extension of time in which to file its Schedules and Statement Financial Affairs.

Debtors' estates include full and plenary power to do any action, or refrain from any action, which it deems necessary, appropriate, and in the best interest of the Debtors, including, without limitation, the marketing, negotiating, and closing of the sale or other disposition of assets of the Debtors.

## II. JURISDICTION AND PARTIES

4. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O), and jurisdiction is proper before the Court pursuant to 28 U.S.C. § 1334(a). Venue is proper before the Court pursuant to 11 U.S.C. §§ 1408 and 1409.

5. The Debtor is a member-managed Virginia Limited Liability Company, registered with the Virginia State Corporation Commission (the "SCC") to transact business within the Commonwealth of Virginia, with its principal place of business at 305 N. Thompson Street, Richmond, Virginia, 23221.

## III. BACKGROUND

6. The Debtors own and, prior to the appointment of the Receiver, operated numerous residential apartment buildings within the City of Richmond. RCR operated approximately 23 apartment buildings, and RCR III operated approximately 6 apartment buildings, which, combined, contain approximately 444 apartment units. The Debtors incorporate by reference, the background facts, organizational history and structure of the Debtors, loan history, state court receivership and procedural history, and other information provided in the Luzinski Declaration, as though fully restated herein.[3]

7. On April 22, 2014, in each of the pending Circuit Court cases that comprise the Receiver Action, the Circuit Court entered a "Final Consent Order Appointing Receiver," which appointed CompassRock as the Receiver (collectively, the "Receivership Orders"; **Exhibits A &**

---

[3] Capitalized terms not defined herein shall have the meaning ascribed to them in the Luzinski Declaration.

**B**, attached hereto).

8. The Receivership Orders are substantially similar, and the key material distinction between them is the properties that are affected by each respective order and the dollar amount of the bond posted in each case.

9. The Receivership Orders, which are not final orders, provide that:

a. The Receiver may take possession of the Properties, and incidental personal property and collateral.
b. The Receiver shall provide notice to creditors pursuant to Virginia law.
c. The Receiver shall take an inventory of the tangible and intangible property related to the Properties.
d. The Receiver has the power to operate and manage the Properties, including the right to pay the costs and expenses incurred in doing so, provided that excess funds available shall be paid to U.S. Bank, and the right to establish bank and operating accounts in the Receiver's name.
e. The Receiver has the power to appoint and retain agents, independent contracts, and counsel.
f. The Receiver has the power to issue demands relating to and to freeze bank accounts.
g. The Receiver also has powers relating to the continuation and transfer of utilities services and post office boxes, as well as opening and reviewing mail.
h. The Receiver has the power to identify all sources of revenue and make demand related thereto, as well as to demand deposits.
i. The Receiver has the power to pay current operating expenses associated with the Properties and collateral, and its fees and administrative expenses.
j. The Receiver has the power to maintain, modify, terminate, and obtain insurance for the Properties and to be named as loss payee under any applicable and related policies.
k. The Receiver has the right to enter into leases, contracts, and other agreements regarding the occupancy and use of the Properties.
l. The Receiver has the power to make improvements to the Properties and apartments situated thereon.
m. The Receiver has the power to borrow funds from U.S. Bank as required to cover operating expenses, which are treated as advances under the Debtors' existing loan documents and shall become a part of the indebtedness due from the Debtors to U.S. Bank.
n. The Receiver has the power to request law enforcement assistance as necessary.
o. The Receiver is directed to prepare, if appropriate, an operating budget within 60 days of

4

its appointment.

p. The Receiver may make a distribution of funds in excess of operating costs, according to a priority schedule, which priority schedule is as follows: U.S. Bank, Chevron, and an escrow account.

q. The Receiver shall prepare monthly reports and file with the Court and serve those reports.

r. The Receiver shall report to the Commissioner of Accounts.

s. The Receiver shall be compensated by a monthly flat fee of $500, a court appearance fee of $500 per appearance, and a monthly management fee of, the greater of, 4.0% of gross collections or $10,900.00.

t. The Receiver's disbursements are limited to $10,000.00 at any one time.

u. The Receiver may utilize the Debtors' federal tax ID numbers but is not obligated to prepare or file tax returns on the Debtors' behalf.

v. The Receiver may obtain and pay any and all fees associated with any lawful licenses or permits.

w. The Receiver has the power to negotiate contracts.

x. The Debtors' may not sell any parcel or part of the Properties.

10. Further, the Receivership Orders do *not* authorize, but instead prohibit, the Receiver from marketing or selling the Properties.

11. Presently, there is no individual employed or associated with either of the Debtors with the knowledge and ability to assist with the operation of the Properties. Mr. Jefferson, who is the managing member of RCR III and the principal of the managing member of RCR, has been incarcerated in the Pamunkey Regional Jail in Hanover County, Virginia and the Northen Neck Regional Jail in Richmond County, Virginia, since February 14, 2014. Thus, he is precluded from providing material assistance with the operation of the Properties. Mr. Jefferson is scheduled to be sentenced in the U.S. District Court for the Eastern District of Virginia, Richmond Division, on September 9, 2014, which will likely impair his ability to assist with the operation of the Properties.

## IV. ARGUMENT

12. The operation of the Properties by the Receiver, for an interim period, as a going

5

concern will protect the interests of the tenants by providing uninterrupted services and rent collection. This will help to maximize value for future sales. The Receivership Orders, however, preclude marketing and sale of the Property and preclude the Debtors' from selling the Properties. Section 543, in conjunction with other provisions in the Code, enables and authorize the Court to enter an order that preserves the status quo on an interim basis as to the Properties while enabling the Debtors, through the Liquidating Representative, to obtain value-maximizing sales.

13. The Debtors seek entry of an order that directs the Receiver to continue to manage the Properties in the same fashion and for the same commission as it has previously provided for no more than thirty (30) days from the date of entry of such order, during which period of time the Debtors and the Liquidating Representative may determine the appropriate course of action for ongoing management, maintenance, and preservation of the operations at the Properties.

**A. The Code Requires The Receiver To Deliver To The Trustee Property Of The Estate**

14. Section 543 limits and constrains the rights of a prepetition receiver and provides:

> A custodian shall . . . deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property that, at any time, came into possession, custody, or control of such custodian.

11 U.S.C. § 543(b)(1)-(2).

15. Section 101(11)(A) defines a "custodian" as a "receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title." 11 U.S.C. § 101(11)(A). Thus, the Receiver is a custodian for purpose of § 543.

16. In addition to the affirmative obligations of § 543(b), sub-section (d) provides a mechanism by which the Court, after notice and hearing, "may excuse compliance with

subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property." 11 U.S.C. § 543(d). The Debtor submits that a limited and temporary waiver of the requirements of § 543(b) is in the interests of the Debtor's creditors, equity security holders, and the restitution claimants.

17. Courts look to the following factors in determining whether a receiver or custodian may remain in place post-petition: (1) whether turnover would be injurious to creditors; (2) whether the debtor will use the turned over property for the benefit of its creditors; (3) the fact that the bankruptcy automatic stay has deactivated the state court receivership action; (4) whether or not there are avoidance issues raised with respect to property retained by a receiver, because a receiver does not possess avoiding powers for the benefit of the estate; (5) the probability that funds required for reorganization will be available; (6) whether there are instances of mismanagement by the debtor; and (7) the likelihood of a reorganization. *See In re Falconridge LLC*, No. 07-BK-19200, 2007 WL 3332769, *7 (Bankr. N.D. Ill. Nov. 8, 2007); *see also In re Bryant Manor LLC*, 422 B.R. 278, 289 (Bankr. D. Kan. 2010); *In re Poplar Springs Apartments of Atlanta Ltd.,* 103 B.R. 146, 150 (Bankr. S.D. Ohio 1989). These factors are not exclusive or exhaustive but aid the Court in applying § 543(d).

18. Here, an order directing the Receiver to operate the Properties for a limited period of time is in the best interests of the Debtors' creditors, equity security holders, and the restitution claimants. Application of the Code and those factors authorizes relief. The critical fact in this case is that the Properties comprise a going concern that, if not operated and maintained, will lead to a diminution in value. Under the continued, albeit limited, supervision of the Receiver, the Properties' value will be maximized, namely tenants will see no disruption

in services and rents will continue to be received. These conditions will attract purchasers of the Properties that value high occupancy rates and satisfied tenants.

19. Turnover of the Properties and complete cessation by the Receiver of its duties and obligations would be injurious to creditors because the Debtors have only limited operational capability at this time, and the Debtors intend to utilize the proceeds and rents from the Properties, including cash collateral, to fund an orderly liquidation of the Properties. *See also In re Bryant Manor, LLC*, 422 B.R. 278, 291-92 (Bankr. D. Kan. 2010) (determining it was in best interests of creditors if receiver continued to operate 100-unit apartment complex); *see also In re Orchards Village Invs., LLC*, 405 B.R. 341, 353-54 (Bankr. D. Or. 2009) (excusing compliance with § 543(a)-(c) on part of receiver for senior living facility).

20. The issue is not the stabilization of the Properties; the Properties are stable and generating positive cash flow. Instead, the Debtors seek a temporary period during which the Debtors and the Liquidating Representative may assess the Receiver and assure continued operation and, if necessary, a seamless transition of the management of the Properties prior to robust marketing and sales efforts.

21. Further, certain provisions of the Receivership Orders would hamper the Debtors' sales and marketing efforts. To that end, the Debtors will request by separate motion full authorization for the Liquidating Representative and their other professionals, to market and sell the Properties as is necessary to maximize the value of the Debtors' estates. The Debtors request that the only powers of the Receiver, as described in the Receivership Orders, that shall remain are those powers and rights relating to the continued management and operation of the Properties, and that the Receiver be directed to perform those duties and obligations incidental to management and operation of the Properties for the same commission provided in the

Receivership Orders, including, without limitation, maintaining insurance on the Properties.

22. To the extent that excess funds are derived from the revenues and operation of the Properties, beyond the sum of funds necessary to cover costs and expenses relating to the Receiver's continued management and operation of the Properties, which excludes debt service and payments due to U.S. Bank, then the Debtors submit that those funds constitute cash collateral under the Code and within the meaning of Cash Collateral defined in the Debtors' Motion for Interim and Final Orders (I) Authorizing the use of Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling a Final Hearing (the "Cash Collateral Motion"), filed on the Petition Date. The Debtors' request turnover of those excess funds on going-forward basis in accordance with the Cash Collateral Motion.

## V. CERTIFICATION FOR EXPEDITED RELIEF

23. Pursuant to Local Rule 9013-1(N), the Debtors, and its undersigned proposed counsel, certify that: (a) the Debtors have carefully examined the matter giving rise to this Motion and concludes that a true need exists for an emergency, expedited hearing; (b) the Debtors have not created the emergency through any lack of due diligence; and (c) the Debtors will engage in discussions with any affected parties, including, without limitation, the Receiver and U.S. Bank in a *bona fide* effort to resolve the matter without a hearing.

24. The Debtors have made no prior request seeking the relief herein.

## VI. WAVIER OF LOCAL RULE 9013-1(G)

25. Pursuant to Local Rule 9013-1(G), the Debtors hereby request that the Court waive the requirement of a separate memorandum of points and authorities to be filed in support of the Motion.

**WHEREFORE**, based on the foregoing, the Debtors request that the Court grant the relief requested, enter an interim order, and award any other relieve that the Court deems proper and just.

DATED: July 31, 2014

RIVER CITY RENAISSANCE, LC
RIVER CITY RENAISSANCE III, LC

By: /s/ Robert H. Chappell, III
Proposed Counsel

Robert H. Chappell, III, Esq. (VSB No. 31698)
Neil E. McCullagh, Esq. (VSB No. 39027)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:    (804) 697-2000
Facsimile:     (804) 697-2100
*Proposed Counsel for the Debtors &
Debtors-In-Possession*

600375.v.4.doc