## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

_____

|  |  |  |
|---|---|---|
| *In re*: | ) | Chapter 11 |
|  | ) | (Joint Administration) |
| River City Renaissance, LC, & | ) |  |
| River City Renaissance III, LC[1], | ) |  |
|  | ) |  |
| *Debtors*. | ) | Case No. 14-34080-KLP |

_____

## <u>MOTION FOR ORDER (I) APPROVING SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF</u>

River City Renaissance, LC ("<u>RCR</u>") and River City Renaissance III, LC ("<u>RCR III</u>"; collectively, the "<u>Debtors</u>"), as debtors and debtors-in-possession, through counsel and pursuant to 11 U.S.C. §§ 105(a), 363, and 365 and Rules 2002, 3003, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), in accordance with the Sale & Bid Procedures, the Sale & Bid Procedures Order, the Assumption Procedures, and the Assumption Procedures Order, the Credit Bid Order, each as defined below, file this Motion for Order (I) Approving Sale Of Assets Free And Clear Of Liens, Claims, Encumbrances, And Interests; (II) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (III) Granting Related Relief (the "<u>Motion</u>") seeking approval of the sale of all or substantially all of the Debtors' real property assets, including personal property, free and clear

---

[1] The final four digits of the federal tax ID numbers for River City Renaissance, LC and River City Renaissance III, LC, respectively, are 8910 and 8102.

Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:        (804) 697-2000
Facsimile:        (804) 697-2100
*Counsel for the Debtors & Debtors-In-Possession*

of liens, claims, and encumbrances, substantially similar to the form of the proposed Order (the "Sale Order") to be filed with the Court at a later date but prior to the December 23, 2014 sale hearing.  In support of this Motion, the Debtors state as follows:

## PRELIMINARY STATEMENT

1.    The Debtors filed these chapter 11 cases in order to pursue an orderly liquidation of their respective real property assets, comprised of 29 residential apartment buildings throughout the City of Richmond (collectively, the "Properties"[2]).  On December 18, 2014, the Debtors commenced and concluded an auction sale of the Properties.  As a result, the Debtors selected (i) the RCR Holder,[3] acting by and through the Special Servicer as the Prevailing Bidder, as defined in the Sale & Bid Procedures, for the RCR Properties, and (ii) the RCR III Holder, acting by and through the Special Servicer as the Prevailing Bidder, as defined in the Sale & Bid Procedures, for the RCR III Properties (collectively, the RCR Holder and the RCR III Holders are referred to as the "Buyers"; each, individually a "Buyer").  Through this Motion, which is premised on the relief granted in the Sale & Bid Procedures Order, the Assumption Procedures Order, and the Credit Bid Order, the Debtors seek approval of (i) the sale of the Properties to the Buyers pursuant to 11 U.S.C. § 363; and (ii) the assumption and assignment of the residential lease agreements (the "Leases") between the Debtors and current tenants at the Properties (the "Tenants") pursuant to 11 U.S.C. § 365.

---

[2] **Schedule A**, attached hereto, provides a list of the Properties by address and legal description owned by each, respective Debtor, the "RCR Properties" and the "RCR III Properties", respectively.  As defined, the "Properties" shall include all personal property, fixtures, and appliances and warranties, located on, within, or used in connection with the Properties that are owned by the Debtors.

[3] The "Holders" are: (1) U.S. Bank National Association, as trustee, successor-in-interest to Bank of America, N.A., as trustee, successor to Wells Fargo Bank, N.A., as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2005-C22 (the "RCR Holder"), by and through CWCapital Asset Management LLC, in its capacity as special servicer; and (2) U.S. Bank National Association, as trustee, successor-in-interest to Bank of America, N.A., as trustee, successor to Wells Fargo Bank, N.A., as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C23 (the "RCR III Holder"), by and through CWCapital Asset Management LLC, in its capacity as special servicer (the "Special Servicer").

## BACKGROUND & PROCEDURAL HISTORY

2.      On July 30, 2014 (the "Petition Date"), each Debtor filed with the Court a voluntary petition seeking relief pursuant to chapter 11 of title 11 of the United States Code (the "Code").

3.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O), and jurisdiction is proper before the Court pursuant to 28 U.S.C. § 1334(a).  Venue is proper before the Court pursuant to 11 U.S.C. §§ 1408 and 1409.

4.      The Debtors are each Virginia limited liability companies, registered with the Virginia State Corporation Commission to transact business within the Commonwealth of Virginia, each having a principal place of business in the City of Richmond, Virginia.  The Debtors remain in possession of their estates as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.  The Debtors incorporate by reference, as though fully restated herein, the facts and statements contained in the Declaration of Joseph J. Luzinski, the primary designee on behalf of the Debtors and a principal of the Debtors' Liquidating Representative (the "Liquidating Representative").  (Doc. Nos. 7, 37, as modified.)

5.      On October 15, 2014, the Court entered that certain "*Order Under 11 U.S.C. §§ 327(a) and 329 Authorizing Employment And Retention Of Development Specialists, Inc. As Liquidating Representative For The Debtors*", which, in part, approved the Debtors' retention of Development Specialists, Inc. for which Joseph J. Luzinsiki is the primary designee, as the Liquidating Representative.  (Doc. No. 148.)  The Liquidating Representative is authorized to make operational decisions on the Debtors' behalf, including, without limitation, review and approval of the Sale of the Properties.

6.      On October 16, 2014, the Court entered that certain "*Third Interim Order (I)*

3

*Authorizing The Use Of Cash Collateral, And (II) Granting Adequate Protection*" (the "<u>Cash Collateral Order</u>", and along with prior interim cash collateral orders, the "<u>Interim Cash Collateral Orders</u>"), which governs the Debtors' use of cash collateral. (Doc. No. 150.)

7.    On November 6, 2014, the Court entered that certain "*Interim Order (I) Approving Sale And Bid Procedures; (II) Approving The Form And Manner Of Notice; And (III) Granting Related Relief*" (the "<u>Sale & Bid Procedures Order</u>"), which, in part, approved the Sale & Bid Procedures and the Sale Notice that governed the auction of the Debtors' Properties that commenced on December 18, 2014 (the "<u>Auction</u>"). (Doc. No. 201.)

8.    On November 6, 2014, the Court entered that certain "*Order Authorizing Employment And Retention Of Auctioneer*" (the "<u>Auctioneer Order</u>"), authorizing the Debtors' retention of Sperry Van Ness Auction Services, LLC, and its affiliates (collectively, the "<u>Auctioneer</u>"), to facilitate and conduct the Auction and Sale, as defined below. (Doc. No. 164.)

9.    On December 5, 2014, the Court entered that certain "*Order (I) Approving Lease Assumption And Assignment Procedures; (II) Approving The Form And Manner Of Notice; And (III) Granting Related Relief*" (the "<u>Assumption Procedures Order</u>"), which approved the Assumption Procedures, the Assumption, Assignment, & Cure Notice, and the Assignment Schedule, each as defined in the Assumption Procedures Order. (Doc. No. 248.)

10.    On December 5, 2014, the Court entered that certain "*Order Determining Credit Bid Rights Of Holders*" (the "<u>Credit Bid Order</u>"), which, in part, determined, conditioned, and established the credit-bid rights of the Holders at the Auction. (Doc. No. 250.)

11.    On December 18, 2014, the Debtors commenced the Auction in order to facilitate the sale of all of the Debtors' Properties in accordance with the Sale & Bid Procedures and the Sale & Bid Procedures Order (generally, the "<u>Sale</u>").

12.     The RCR Holder submitted a Prevailing Bid in the amount of thirty-million five hundred thousand dollars ($30,500,000.00) for the entire portfolio of RCR Properties.  FCP Fund II REIT Investor, LLC submitted the Back-Up Bid for the entirety of the RCR Properties, in the amount of $30,250,000.00, and, upon information and belief, FCP Fund II REIT Investor, LLC has notice that it shall be deemed the Back-Up Bidder.

13.     The RCR III Holder submitted a Prevailing Bid in the amount of six million two hundred thirty five thousand dollars ($6,235,000.00) for the entire portfolio of RCR III Properties.  Various entities submitted Back-Up Bids for the RCR III Properties, in the aggregate amount of $6,135,000.00, and, upon information and belief, those Back-Up Bidders have received notice of their status.[4]

14.     The Debtors submit that, to date and to the extent applicable, the Debtors have complied with the Sale & Bid Procedures, the Sale & Bid Procedures Order, the Assumption Procedures, the Assumption Procedures Order, and the Credit Bid Order in all respects.

### RELIEF REQUESTED

15.     Through this Motion, the Debtors seek entry of the Sale Order, substantially similar to a form to be filed with the Court at a later date but prior to the December 23, 2014 sale hearing:

   a.  Approving the Debtors' execution of asset purchase agreements for sale of the Properties to the Buyers in form substantially similar to the form attached to the Sale & Bid Procedures Order, as modified by the ruling of the Court at the emergency hearing that occurred on December 18, 2014 at approximately 12:30 PM, except as may be agreed to between the Debtors and the Buyers;

   b.  Approving the Debtors' sale of the Properties to the Buyers free and clear of all liens, claims, and encumbrances pursuant to 11 U.S.C. § 363, except for Permitted Exceptions, as defined in the Sale Agreement;

   c.  Approving the Debtors' assumption of the Leases, and assignment of those Leases to the Buyers pursuant to 11 U.S.C. § 365, and approving the Cure Amount scheduled and due,

---

[4] **Schedule B**, attached hereto, provides a list of the RCR III Properties and the corresponding Back-Up Bid Details.

if any, for each of the Leases;

d.  Approving the payment of Customary and Reasonable Closing Costs, as defined in the Sale & Bid Procedures Order;

e.  Approving the payment of compensation, expenses, and costs to be paid to the Auctioneer, in accordance with the terms of the Auctioneer Order and the Interim Cash Collateral Orders; and

f.  Approving each Debtor's selection of the respective Back-Up Bidders, disclosed herein, and to the extent that either Buyer fails to close on a sale, the applicable Debtor may close with the Back-Up Bidder(s) and, if applicable, the Debtors are authorized to pay compensation, expenses, and costs at closing due to a co-broker (the "Co-Broker") engaged by the respective Back-Up Bidder, in accordance with the terms of the Interim Cash Collateral Orders, the Auctioneer Order, the Sale & Bid Procedures, and the Sale & Bid Procedures Order.

## AUTHORITY

16.     The Debtors' decisions to sell the Properties free and clear to the Buyers and to assume and assign to the Buyers the Leases are subject to the business judgment rule, and each decision represents an exercise of the Debtors' sound business judgment.

### A. Authorization Of The Sale Under 11 U.S.C. § 363

17.     Section 363(b)(1) of the Code empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  A debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based on a sound business purpose.  *See Comm. Of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070-71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to § 363(b)); *In re W.A. Mallory Co.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales." (citing *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)).

18.     The business judgment rule is met "when the following elements are present: (1) a business decision, (2) disinterestedness, (3) due care, (4) good faith, and (5) according to some courts and commentators, no abuse of discretion or waste of corporate assets."  *Official Comm.*

of Subordinated Bondholders v. Integrated Res., Inc. (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (internal quotations omitted); *see also W.A. Mallory Co.*, 214 B.R. at 836 (discussing similar requirements for a § 363(b) sale under the business judgment rule). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

19.    Courts in this and other circuits have opted not to interfere with corporate decisions "unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion." *Lubrizol Enters. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985) (applying business judgment rule to debtor's decision to reject executory contract); *see also In re Integrated Res. Inc.*, 147 B.R. at 656. The Auction and consummation of the Sale will maximize creditor recoveries during these chapter 11 cases, which also helps to ensure that the completion of these chapter 11 cases in a timely manner.

20.    Under § 363(f), the debtor-in-possession may proceed with a sale under § 363(b) where only one of five possible elements is satisfied. *See* 11 U.S.C. § 363(f)(1)-(5). In particular, § 363(f)(2) states that "[t]he trustee may sell property under subsection (b) . . . free and clear of any interest in such property of an entity other than the estate, only if . . . such entity consents." 11 U.S.C. § 363(f)(2). Each Buyer holds an interest in the respective Debtor's Properties, and each Buyer as the Prevailing Bidder is presumed to consent to the Sale through submission of the Prevailing Bids.

21.    The Sale of the Properties to the Buyers, thus, represents an exercise of the Debtors' sound business judgment that comports with the applicable requirements of the Bankruptcy Code, including, without limitation, 11 U.S.C. § 363(f).  Further, in the event that either Buyer is not able to close the Sale, then the Debtors' selection of the entities and individuals disclosed herein as the Back-Up Bidders represents an exercise of the Debtors' sound business judgment that comports with the applicable requirements of the Bankruptcy Code.

**B. Credit Bid Rights**

22.    Section 363(k) of the Bankruptcy Code provides that at a sale under § 363(b) "property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchase such property, such holder may offset such claim against the purchase price of such property." 11 U.S.C. § 363(k).

23.    The Credit Bid Order, entered on December 5, 2014, conditions the rights of each of the Holders as Buyers.  (Doc. No. 250.)  The Court found "that cause exists to craft an equitable remedy through the imposition of an equitable lien which [would] allow each Holder to credit-bid at the Auction up to the full amount of its respective Indebtedness . . . but preserve the ability of each Debtor to subsequently recover any portion of the Claim that is disallowed but which has been credit-bid by a Holder."  (Doc. No. 250, at 4.)

24.    "[A]ny order approving the sale . . . shall provide for an equitable line in favor of the respective Debtor in the amount such prevailing bid exceeded the Holder's Undisputed Portion, with such equitable lien encumbering the Properties conveyed and purchased.  The Sale Order shall set forth the terms and conditions of any such equitable lien, as well as any restrictions on the subsequent transfer of the Property which the Court may impose."  (Doc. No.

250, at 8.)

25.     At the Auction, the RCR Holder through the Special Servicer, through counsel, represented that the indebtedness due to the RCR Holder through January 23, 2015 equals $30,637,372,78.   And, the RCR III Holder through the Special Servicer, through counsel, represented that the indebtedness due to the RCR III Holder through January 23, 2015 equals $6,520,222.32.

26.     Under the terms of the Credit Bid Order, the RCR Holder, therefore, must grant to RCR an equitable lien in favor of RCR in the amount of the difference between the dollar amount of (i) its Prevailing Bid, $30,500,000.00, minus (ii) the Undisputed RCR Portion of its claim, $27,621,781.83.  (Doc. No. 250, at 6, 8.)  The amount of the equitable lien to be ordered in favor of RCR shall equal $2,878,218.17.

27.     Under the terms of the Credit Bid Order, the RCR III Holder, therefore, must grant to RCR III an equitable lien in favor of RCR in the amount of the difference between the dollar amount of (i) its Prevailing Bid, $6,235,000.00, minus (ii) the Undisputed RCR Portion of its claim, $5,968,481.92.  (Doc. No. 250, at 6, 8.)  The amount of the equitable lien to be ordered in favor of RCR III shall equal $266,518.08.

## C. Assumption And Assignment Of The Leases

28.     The value and price of the Properties is maximized because the Properties are operating as going concerns with approximately 478 current Tenants occupying approximately 303 units across all the Properties.  The rents derived from the Leases and the Tenants comprise significant revenues that will inure to the benefit of the Buyers.  Thus, the assumption and assignment of the Leases to the Buyers ensures a continuing source of income from the Properties with minimal effect on the Tenants during any transition of ownership.  Therefore, the

Debtors submit that there exists a sound business purpose to authorize assumption and assignment of the Leases to the Buyers, in accordance with the Bankruptcy Code and the Assumption Procedures Order.

29.    Section 365(a) of the Code authorizes a debtor-in-possession to assume and assign an executory contract or unexpired lease subject to Court approval.  *See* 11 U.S.C. § 365(a).  Section 365(b) of the Code requires that the debtor-in-possession satisfy certain requirements at the time of assumption if a default exists under the contract to be assumed.  *See* 11 U.S.C. § 365(b).

30.    Section 365(a) of the Code provides, in pertinent part, that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  In enacting § 365, Congress intended to allow a debtor to assume those leases and contracts that benefit the estate and to reject those that are of no value or are burdensome to the estate.  *See In re Fas Mart Convenience Stores, Inc.*, 296 B.R. 414, 420 (Bankr. E.D. Va. 2002); *see also Cinicloa v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir. 2001); *In re Whitcomb & Keller Mortgage Co., Inc.*, 715 F.2d 375, 379 (7th Cir. 1983).  For the reasons set forth above, the assumption and assignment of the Leases enhances and maximizes the value of the Debtors' bankruptcy estates through the Sale.

31.    Section 365(b) of the Code requires, in pertinent part, that the debtor-in-possession cure any existing defaults, compensate or provide adequate assurance of compensation resulting from any cure obligation, and provide adequate assurance of future performance under the applicable contract or lease.  *See* 11 U.S.C. § 365(b)(1).

32.    As set forth in the Assumption, Assignment, & Cure Notice and the Cover Letter, each as defined in the Assumption Procedures Order and as served on the Tenants, the proposed

Cure Amount owed to each Tenant is zero dollars ($0.00), due to the nature of the Debtors' obligations to the Tenants, which is to provide access to an apartment unit and common areas. Those obligations are not monetary in nature.

33.     Further, under the terms of any executed sale agreement the Buyers will assume all security deposit obligations that may be due in the future to the Tenants, and the Buyers have and will provide adequate assurance, including the financial wherewithal, of such performance in accordance with the Bankruptcy Code.

34.     The decisions to assume or reject executory contracts or unexpired leases are matters within the "business judgment" of the debtor.  *See Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.* (*In re Lubrizol Enters.*), 756 F.2d 1043, 1046-47 (4th Cir. 1985) (when reviewing a debtor's decision to assume or reject a contract, courts "must start with the proposition that the bankrupt's decision . . . is to be accorded the deference mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate debtors") *cert. denied*, 475 U.S. 1057 (1986); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984).   Accordingly, courts approve the assumption or rejection of an executory contract or unexpired lease unless evidence is presented that the debtor's decision to assume or reject was "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *Lubrizol Enters.*, 756 F.2d at 1047.

35.     Sufficient business justification exists to merit approval of the proposed assumption and assignment of the Leases.   The Debtors request that the Court approve the assumption and assignment of the Leases to the Buyers.

## **RESERVATION OF RIGHTS**

36.     The Debtors reserve all rights concerning any and all claims against the Holders,

the Special Servicers, and any other parties-in-interest, including, without limitation, the

obligations of the Holders and the Special Servicer to perform their respective obligations under

the Credit Bid Order.  Further, nothing herein, shall be construed as a waiver of any rights that

the Debtors may later assert in connection with the pending claims allowance litigation.

## REQUEST FOR WAIVER OF STAY

33.     Through this Motion, the Debtors seek a waiver of any stay imposed on the

effectiveness of any order approving this Motion pursuant to any Bankruptcy Rule, Local Rule,

or the Code, including, without limitation, Rules 6004 and 6006 of the Bankruptcy Rules.  The

Debtors require, and thereby request, immediate relief in order to move forward expeditiously

with the Sale.  The Debtors submit that cause exists to justify a waiver of respective the 14-day

stays imposed by Rule 6004 and 6006 and any other applicable rule or law.

## WAIVER OF MEMORANDUM OF LAW

34.     The Debtors request a waiver of Local Bankruptcy Rule 9013-1(G), which

requires a separate memorandum of points and authorities to accompany a motion.

## NOTICE

35.     The Debtors will provide notice and service of this Motion in accordance with the

Sale & Bid Procedures, as will be set forth in a later-filed Affidavit of Service.

36.     Further, all parties-in-interest having previously received prior notice of the Sale

& Bid Procedures, the Sale & Bid Procedures Order, the Assumption Procedures, and the

Assumption Procedures Order, through the Sale Notice and the Assumption, Assignment, &

Cure Notice, the Debtors submit that notice is adequate, proper, and sufficient under the

circumstances, with no further notice being necessary.  To the extent applicable, the Debtors

request relief from the requirements of Rule 2002 of the Bankruptcy Rules, and any other

applicable Bankruptcy Rules or Local Rules of the Court.

**WHEREFORE**, the Debtors respectfully request the entry of an Order granting the relief set forth in this Motion and granting such other and further relief as may be just and proper.

DATED: December 19, 2014   RIVER CITY RENAISSANCE, LC
           RIVER CITY RENAISSANCE III, LC

           By: /s/ James K. Donaldson
               Counsel

Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone: (804) 697-2000
Facsimile: (804) 697-2100
*Counsel for the Debtors &*
*Debtors-In-Possession*

637809.v.3.doc

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

_____

|  |  |  |
|---|---|---|
| *In re*: | ) | Chapter 11 |
|  | ) | (Joint Administration) |
| River City Renaissance, LC, & | ) |  |
| River City Renaissance III, LC[1], | ) |  |
|  | ) |  |
| *Debtors*. | ) | Case No. 14-34080-KLP |

_____)

## MOTION FOR ORDER (I) APPROVING SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF

## SCHEDULE A - PROPERTIES

---

[1] The final four digits of the federal tax ID numbers for River City Renaissance, LC and River City Renaissance III, LC, respectively, are 8910 and 8102.

## RCR PROPERTY WITHIN THE CITY OF RICHMOND, VA

Parcel 1: (2734-2736 W. Grace Street)

All those certain tracts or parcels of land, with all appurtenances thereto belotiging, lying and being in the City of Richmond, Virginia, containing 0.169 acre, more particularly described as follows:

BEGINNING at a rod found on the north line of West Grace Street, said point being 71.64 feet East of the east line of North Boulevard; thence leaving said Street, North 35 degrees 54 minutes 30 seconds East, a distance of 86.00 feet to a point on the terminus of a 15 foot alley; thence along terminus of said alley, South 54 degrees 1 minute 42 seconds East, a distance of 8.00 feet to a point on the east line of said Alley; thence with and along said alley, North 35 degrees 54 minutes 30 seconds East, a distance of 59.00 feet to a rod found on the south line of a 20 foot alley; thence with and along said alley, South 53 degrees 59 minutes 58 seconds East, a distance of 46.00 feet to a rod found; thence leaving said alley, South 35 degrees 54 minutes 30 seconds West, a distance of 145.00 feet to a lead hub found on the north line of West Grace Street; thence with and along said Street, North 54 degrees West, 54.00 feet to the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a liability company, by Deed from Donald K. Waybright and Teena H. Waybright, husband and wife, dated February 3, 1998, recorded February 13, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 98-3872.

Parcel 2: (706 N. Boulevard)

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.107 acre, more particularly described as follows:

BEGINNING at a rod found on the west line of North Boulevard, said rod being 87.00 feet North of the north line of Monument Avenue; thence leaving said Boulevard, North 52 degrees 28 minutes 38 seconds West, a distance of 108.40 feet to a lead hub found; thence North 37 degrees 31 minutes 22 seconds East, a distance of 45.31 feet to a lead hub found on the south line of a 15 foot alley; thence with and along said alley, South 52 degrees 28 minutes 38 seconds east, a distance of 97.71 feet to a rod found on the west line of North Boulevard; thence with and along said Boulevard, South 24 degrees 15 minutes 00 seconds West, a distance of 46.56 feet to the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited liability company by Deed from Ivry Thompson, married and Bradley Coker, unmarried, dated January 16, 1998, recorded January 30, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 98-2724.

Parcel 3: (801-803 N. Boulevard)

All those certain tracts or parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.100 acre, more particularly described as follows:

BEGINNING at a stone found on the north east corner of North Boulevard and West Grace Street; thence with and along the east line of North Boulevard, North 22 degrees 43 minutes 30 seconds East to a nail hole found; thence leaving said Boulevard, South 54 degrees East to a PK Nail found on the west line of a 7 foot alley in common; thence southwardly along said alley, South 35 degrees 54 minutes 30 seconds West, a distance of 1.38 feet to a rod found at the terminus of said alley; thence Southeasterly along the terminus of said 7 foot alley, South 54 degrees East, a distance of 7.00 feet to a rod found; thence leaving said alley, South 35 degrees 54 minutes 30 seconds West, a distance of 54.26 feet to a rod found on the north line of West Grace Street; thence along said Street, North 54 degrees West, a distance of 71.64 feet to the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited liability company, by Deed from P & S Ltd, Partnership, a Maryland limited partnership, dated January 12, 1998, recorded January 15, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument 98-1376.

Parcel 4: (2225 Monument)

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.084 acre and more particularly described as follows:

BEGINNING at a nail found on the south line of Monument Avenue; said nail being 363.25 feet West of the west line of Allison Street; thence leaving said Avenue, South 36 degrees 54 minutes 34 seconds West, a distance of 130.0 feet to a point on the north line of a 15 foot alley; thence along said Alley, North 53 degrees 05 minutes 26 seconds West, a distance of 28.00 feet to a rod found; thence leaving said alley, North 36 degrees 54 minutes 34 seconds East, a distance of 130.00 feet to a nail found on the south line of Monument Avenue; thence with and along the south line of said Avenue, South 53 degrees 05 minutes 26 seconds East, 28.00 feet to the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited liability company, by Deed dated October 9, 1998, recorded October 16, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 98-27715.

Parcel 5: (2215 Monument)

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.196 acre, more particularly described as follows:

BEGINNING at a "X" cut found on the south line of Monument Avenue; said "X" cut being 213.55 feet West of the west line of Allison Street; thence leaving said Avenue, South 35 degrees 07 minutes 00 seconds West, a distance of 130.00 feet to a rod round on the north line of 15 foot alley; thence along said alley, North 54 degrees 53 minutes 00 seconds West a distance of 65.37 feet to a rod found on the North line of said Alley; thence leaving said alley, North 35 degrees 07 minutes 00 seconds East, a distance of 130.00 feet to a drill hole found on the south line of Monument Avenue; thence with and along said Avenue, South 54 degrees 53 minutes 00 seconds East a distance of 65.87 feet to a "X" cut found, being the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited liability company, by Deed dated April 9, 1998, recorded April 13, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 98-9308.

Parcel 6: (811 N. Boulevard)

All those certain tracts or parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.071 acre, more particularly described as follows:

BEGINNING at a nail found on the east line of North Boulevard, said point being 115.59 feet North of the north line of West Grace Street; thence with and along the East line of said North Boulevard, North 22 degrees 43 minutes 30 seconds east, a distance of 33.39 feet to a rod found on the south line of a 20 foot alley; thence with and along said alley, South 53 degrees 59 minutes 58 seconds East a distance of 98.62 feet to a rod found on the west line of a 15 foot alley; thence with and along said alley, South 35 degrees 54 minutes 30 seconds West, a distance of 32.50 feet to a rod found; thence leaving said alley, North 54 degrees West, a distance of 91.00 feet to the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited liability company, by Deed from Wayne L. Sullivan and Elvie I. Sullivan, husband and wife, dated March 18, 1998, recorded March 23, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 98-7104.

Parcel 7: (2730 W. Grace)

All those certain tracts or parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.131 acre, more particularly described as follows:

BEGINNING at a lead hub found on the north line of West Grace Street, said point being 125.64 feet East of the east line of North Boulevard; thence leaving said Street, North 35 degrees 54 minutes 30 seconds East, a distance of 145.00 feet to a rod found on the west line of a 20 foot alley; thence along said alley, South 53 degrees 59 minutes 58 seconds East, a distance of 39.50 feet to a R.R. spike set on the west line of said alley; thence leaving said alley, South 35 degrees 54 minutes 30 seconds West, a distance of 145.00 feet to a "X" in concrete found on the north line of West Grace Street; thence with and along said street, North 54 degrees 00 minutes 00 seconds a distance of 39.50 feet to a lead hub, being Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a liability company, by Deed from Fred D. Goodwin, III and Katheryn K. Goodwin, husband and wife, and Russell D. Stone and Mary J. Stone, husband and wife, dated May 8, 1998, recorded May 15, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 98-12494.

Parcel 8:  (805-807 N. Boulevard)

All those certain tracts or parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.110 acre, more particularly described as follows:

BEGINNING at a nail hole found on the East line of North Boulevard, said point being 57.17 feet west of the north line of West Grace Street; thence with and along the west line of said Boulevard, North 22 degrees 43 minutes 30 seconds East, a distance of 58.42 feet to a nail found; thence leaving said Boulevard, South 54 degrees 00 minutes 00 seconds East, a distance of 91.00 feet to a rod found on the west line of a 15 foot alley in common; thence southwardly with and along said alley, South 35 degrees 54 minutes 30 seconds West a distance of 56.86 feet to a pk nail found on the centerline of a 2.75 foot alley in common; thence with and along said alley, North 54 degrees 00 minutes 00 seconds West, a distance of 77.68 feet to a nail hole found, being the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited liability company, by Deed from Patricia Inglesby Thomas, dated May 13, 1998, recorded May 15, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 98-12493.

Parcel 9:  (622 N. Boulevard)

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.167 acre, more particularly described as follows:

BEGINNING at a nail set at the intersection of the west line of North Boulevard and the south line of Monument Avenue; thence along said Boulevard, South 23 degrees 17 minutes 39 seconds West, a distance of 50.00 feet to a nail set; thence leaving said Boulevard, North 53 degrees 26 minutes 11 seconds West, a distance of 150.00 feet to a rod found on the east line of a 15 foot alley; thence along said alley, North 23 degrees 17 minutes 39 seconds East a distance of 50.00 feet to a nail set; thence leaving said alley, South 53 degrees 26 minutes 11 seconds East, a distance of 150.00 feet to a nail set on the west line of North Boulevard, being the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability Company, by Deed from River City Renaissance II, LC, a Virginia limited liability company, dated September 18, 2002, recorded October 1, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-030846.

Parcel 10: (709-711 N. Boulevard)
All those certain tracts or parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.170 acre, more particularly described as follows:

BEGINNING at a stone found at the intersection of the south line of West Grace Street and the east line of North Boulevard; thence with and along the south line of West Grace Street, South 51 degrees East, a distance of 110.78 feet to a pk nail found; thence leaving said Street, South 39 degrees 00 minutes 49 seconds West a distance of 72.49 feet to a rod found at the terminus of a 5 foot alley; thence leaving said alley, North 51 degrees West, a distance of 93.62 feet to a "X" found on the east line of North Boulevard; thence with and along said Boulevard, North 25 degrees 41 minutes 28 seconds East, a distance of 74.49 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability Company, by Deed from River City Renaissance II, LC, a Virginia limited liability company, dated September 18, 2002, recorded October 1, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-030846

Parcel 11: (308 N. Boulevard)

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.145 acre, more particularly described as follows:

BEGINNING at a punch hole found on the west line of North Boulevard, said punch hole being 136.59 feet north of the north line of West Grace Street; thence leaving said Boulevard, North 45 degrees 00 minutes 00 seconds West a distance of 150.00 feet to a rod found on the east line of a 15 foot alley; thence along said alley, North 31 degrees 42 minutes 03 seconds East a distance of 43.41 feet to a pk nail found; thence leaving said alley, South 45 degrees 00 minutes 00 seconds East a distance of 150.00 feet to a rod found on the west line of North Boulevard; thence with and along said Boulevard, South 31 degrees 42 minutes 03 seconds West a distance of 43.41 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability Company, by Deed from River City Renaissance II, LC, a Virginia limited liability company, dated September 18, 2002, recorded October 1, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-030846.

Parcel 12:  (3115 Monument Avenue)

All those two certain tracts or parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.187 acres, more particularly described as follows:

BEGINNING at a pk nail found on the south line of Monument Avenue, said nail being 232.27 feet east of the east line of Cleveland Street; thence with and along said Avenue, South 53 degrees 57 minutes 23 seconds East, a distance of 160.96 feet to a rod found; thence South 15 degrees 15 minutes 02 seconds West, a distance of 25.31 feet to a lead hub found on the north line of West Franklin Street; thence with and along the north line of said Street, North 75 degrees West, a distance of 149.92 feet to a pk nail found; said nail being 225.08 feet east of the east line of Cleveland street; thence leaving West Franklin Street, North 14 degrees 51 minutes 58 seconds East, a distance of 83.11 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability Company, by Deed from River City Renaissance II, LC, a Virginia

limited liability company, dated September 18, 2002, recorded October 1, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-030846.

Parcel 13: (2726 W. Grace)

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.188 acre, more particularly described as follows:

BEGINNING at a "X" found on the north line of West Grace Street, said point being 165.14 feet east of the east line of North Boulevard; thence leaving said Street, North 35 degrees 54 minutes 30 seconds East, a distance of 145.00 feet to a point on the south line of a 20 foot alley; thence eastwardly along said alley, South 53 degrees 59 minutes 58" East, a distance of 56.50 feet to a rod found; thence leaving south line of said Alley, South 35 degrees 54 minutes 30 seconds West, a distance of 145.00 feet to a "X" found on the north line of West Grace Street; thence along said Street, North 54 degrees West, 56.50 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability Company, by Deed from River City Renaissance II, LC, a Virginia limited liability company, dated September 18, 2002, recorded October 1, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-030846.

Parcel 14: (2217 Monument)

All those certain tracts of parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.064 acre, more particularly described as follows:

BEGINNING at a drill hole found on the south line of Monument Avenue, said drill hole being 279.42 feet West of the west line of Allison Street; thence leaving said Avenue, South 35 degrees 07 minutes West, a distance of 130.00 feet to a rod found on the north line of a 15 foot alley; thence along said alley, North 54 degrees 53 minutes West, a distance of 21.33 feet to a nail found; thence leaving said Alley, North 35 degrees 07 minutes East, a distance of 130.00 feet to a point on the south line of Monument Avenue; thence with and along the south line of said Avenue, South 54 degrees 53 minutes East, 21.33 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability Company, by Deed from River City Renaissance II, LC, a Virginia limited liability company, dated September 18, 2002, recorded October 1, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-030846.

Parcel 15: (2233 Monument)

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.075 acre, more particularly described as follows:

BEGINNING at a point on the south line of Monument Avenue, said point being 51.00 feet east of the east line of Addison Street; thence Easterly with and along the south line of Monument Avenue, South 53 degrees 05 minutes 26 seconds East, a distance of 25.00 feet to a point; thence leaving said Avenue, South 36 degrees 54 minutes 34 seconds West, a distance of 130.00 feet to a rod found on the north line of a 15 foot alley; thence along said alley, North 53 degrees 05 minutes 26 seconds West, a distance of 25.00 feet to a rod found; thence leaving said alley, North 36 degrees 54 minutes 34 seconds East, a distance of 130.00 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability Company, by Deed from River City Renaissance II, LC, a Virginia limited liability company, dated September 13, 2002, recorded October 1, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-030846.

Parcel 16: (2700 W. Grace)

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.110 acre more particularly described as follows:

BEGINNING at a stone found on the northwest corner of Mulberry Street and West Grace Street; thence Westwardly along the north line of West Grace Street, North 54 degrees West, a distance of 33.00 feet to a punch hole found; thence leaving said Street, North 35 degrees 55 minutes 19 seconds East, a distance of 145.00 feet to a rod found on the south line of a 20 foot alley; thence eastwardly along said alley, South 53 degrees 59 minutes 53 seconds East, a distance of 33.00 feet to a punch hole found on the west line of Mulberry Street; thence along said Street, South 35 degrees 55 minutes 19 seconds West a distance of 145.00 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability Company, by Deed from River City Renaissance II, LC, a Virginia limited liability company, dated September 13, 2002, recorded October 1, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-030846.

Parcel 17: (3501 Stuart Avenue and 306 N. Nansemond)

All those two certain tracts of parcels of land, with all appurtenances thereto belonging,
lying and being in the City of Richmond, Virginia, containing 4.926 acres, and 0.120
acres, more particularly described as follows:

**4.926 Acre Parcel**
BEGINNING at a monument found on the northeast corner of Thompson Street and
Hanover Avenue; thence along the east line of Thompson Street, North 40 degrees 43
minutes 27 seconds East, a distance of 396.78 feet to a monument on the southwest
corner of Thompson Street and Stuart Avenue; thence along the south line of Stuart
Avenue, South 66 degrees East, a distance of 567.05 feet to a monument found in the
northwest corner of Stuart Avenue and Nansemond Street; thence along the west line of
Nansemond Street, South 23 degrees 24 minutes 15 seconds West a distance of 179.86
feet to a nail found on the north line of a 20 foot alley; thence along said alley, North 66
degrees 3 minutes 49 seconds West, 126.00 feet to a nail set on the west line of a 16 foot
alley; thence along said alley, South 23 degrees 24 minutes 12 seconds West, a distance
of 82.55 feet to a nail set on the south line of a 15 foot alley; thence along said alley,
South 66 degrees 00 minutes 33 seconds East, a distance of 16.01 feet to a rod found;
thence leaving said alley, South 23 degrees 23 minutes 39 seconds West, a distance of
117.38 feet to a nail found on the north line of Hanover Avenue; thence along said
Avenue, North 66 degrees 00 minutes 33 seconds West, a distance of 575.21 feet
(erroneously stated as 685.18 feet in prior conveyances) to the Point of Beginning.

**0.120-Acre Parcel**
BEGINNING at a rod found on the northwest corner of Nansemond Street and a 15 foot
alley, said point being 132.38 feet north of the north line of Hanover Street; thence along
said alley, North 65 degrees 56 minutes 48 seconds West, 110.00 feet to a nail set on the
east line of a 16 foot alley; thence along said alley, North 23 degrees 24 minutes 15
seconds East a distance of 47.50 feet to a rod found on the south line of a 20 foot alley;
thence along said alley, South 65 degrees 56 minutes 48 seconds East, a distance of
110.00 feet to a nail found on the west line of Nansemond Street; thence along said
Street, South 23 degrees 24 minutes 15 seconds West, a distance of 47.50 feet to the
Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited
liability company, by Deed from River City Renaissance IV, LC, a Virginia limited
liability company, dated September 18, 2002, recorded October 1, 2002, in the Clerk's
Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 02-030345.

Parcel 18: (25 N. Boulevard)

All that certain lot, piece or parcel of land, lying and being in the City of Richmond,
Virginia, together with all improvements thereon and all appurtenances thereto relating,
known as No.25 North Boulevard or "Dakota Apartments", more particularly described
as follows:

COMMENCING at a stone marking the intersection of the eastern line of North
Boulevard and the southern line of Floyd Avenue; thence southwardly along the eastern
line of North Boulevard, 33.0 feet to a nail; thence back eastwardly between parallel
lines, the northernmost one of which is the southern line of Floyd Avenue, a distance of
131.66 feet to a cross cut marking the western line of alley and the southern one of which
is 131.55 feet to a nail marking the western line of an alley, said Lot having a rear line of
38 feet abutting upon said alley as shown on the plat of survey prepared by J.K. Timmons
& Associates, Incorporated, Engineers, Surveyors and Planners, dated July 1, 1985,
attached to and made a part of that certain Deed of Trust recorded in Deed Book 48, Page
620.

Being the same property conveyed to River City Renaissance III, LC, a Virginia limited
liability company by Deed from Delores K. Montalbano, dated November 27, 2000,
recorded December 4, 2000, in the Clerk's Office of the Circuit Court of the City of
Richmond, Virginia as Instrument No. 00-23439.

Parcel 19: (2810 Monument Avenue)

All that certain lot, piece or parcel of land, with all improvements thereon and
appurtenances thereunto belonging, lying and being in the City of Richmond, Virginia,
known as "The Greenwood Apartments", and numbered 2810 Monument Avenue, and
being more particularly bounded and described in accordance with the plat of survey by
Foster & Miller, Certified Surveyors, dated December 8, 1976, and entitled, "Plat of No.
2810 Monument Avenue, Richmond, Virginia", and described as follows:

BEGINNING at a point marked by a lead hub in the northern line of Monument Avenue,
said Point being distant thereon 162.62 feet from the western line of North Boulevard;
thence running in a westerly direction along and fronting on the northern line of
Monument Avenue, 49 feet to a lead hub; thence back from said front, in a northerly
direction between parallel lines a distance of 130 feet to a 15 foot alley in the rear, the
northwestern corner being marked by a rod and the northeastern corner being the corner
of the garage on the east, said Lot having a width of 49 feet along said alley.

Being the same property conveyed to River City Renaissance, III, LC, a Virginia limited
liability company, by Deed from Net Corp, L.L.C., a Virginia limited liability company,
dated January 7, 2000, recorded January 19, 2000, in the Clerk's Office, Circuit Court of
the City of Richmond, Virginia, as Instrument No. 00-01317.

Parcel 20: (2714-2716 W. Grace)

All that certain lot, piece or parcel of land with all improvements thereon and
appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, all
as shown on the plat of survey made by Potts, Minter and Associates, P.C., Engineers,
Land Surveyors, Land Planners, dated January 24, 2000, entitled, "PLAT SHOWING
IMPROVEMENTS ON NOS. 2714 AND 2716 W. GRACE STREET, IN THE CITY OF
RICHMOND, VIRGINIA", a copy of which is recorded with deed recorded in
Instrument # 00003353 in the Clerk's Office of the Circuit Court of the City of
Richmond, Virginia.

Being the same property conveyed to River City Renaissance III, LC, a Virginia limited
liability company, by Deed from Stephen H. Catlett and Margaret S. Catlett, husband and
wife, dated February 3, 2000, recorded February 15, 2000, in the Clerk's Office of the
Circuit Court of the City of Richmond, Virginia, as Instrument No. 00-003353.

Parcel 21: (2516, 2518 W. Grace and 803 and 805 N. Robinson)

All that certain real estate situated, lying and being in the City of Richmond, Virginia,
with the improvements thereon, known as No. 2516 (formerly 2520), No 2518 (formerly
2522) West Grace Street and Nos. 803, 805, 807 and 809 North Robinson Street
(formerly, erroneously referred to as 803 and 805 North Robinson Street), as more
particularly shown and designated upon plat of Phillip H. Brooks, C.L.S., dated June
15,1973 which is attached to and recorded with that certain Deed in Deed Book 685B,
Page 89 and as further shown and designated on plat of survey by Potts, Minter and
Associates, P.C., dated October 22, 1999, revised November 11,1999, attached to and
recorded with Deed recorded in Instrument # 99-33764 in the Clerk's Office of the
Circuit Court of the City of Richmond, Virginia.

Being the same property conveyed to River City Renaissance III, LC, a Virginia limited
liability company, by Deed from Carson L. Milam a/k/a Carson Lee Milam, a married
man, dated November 9, 1999, recorded December 15, 1999, in the Clerk's Office of the
Circuit Court of the City of Richmond, Virginia as Instrument No. 99-33764.

## RCR III PROPERTY WITHIN THE CITY OF RICHMOND, VA

Parcel I: (110 North Boulevard)

All that certain lot, piece or parcel of land, with improvements thereon and appurtenances
thereto belonging, known as "BELMONT APARTMENTS", lying and being in the City
of Richmond, Virginia, situated on the western line of the Boulevard between Floyd and
Grove Avenues, designated as No. 108-110 North Boulevard and being more particularly
described as follows:

BEGINNING on the western line of the Boulevard, 118 feet North of the northern line of
Floyd Avenue; thence running northwardly along the western line of Boulevard and
fronting thereon 73 feet and 9 inches; thence from said front extending back westwardly
between parallel lines, 147 feet and 9 1/2 inches on the northern line and 148 feet and
3 1/2 inches on the southern line to a court and alley in the rear and being shown upon the
map made May 6, 1921 by T. Crawford Redd & Bro., and recorded in the Clerk's Office
of the Circuit Court of the City of Richmond, Division I, in Deed Book 273-B, Page 208.

Parcel II: (3408 Park Avenue)

That certain parcel of land with improvements thereon situated in the City of Richmond,
Virginia, known as 3408 Park Avenue, and further described as follows:

Commencing at a point on the north line of Park Avenue 272.36 feet west of the western
line of Roseneath Road; thence running westwardly along and fronting on the northern
line of Park Avenue, 61.58 feet; thence extending back northwardly from said front
between parallel lines 140 feet to an alley in the rear, 15 feet wide.

Parcel III: (705 and 707 North Boulevard)

All that certain lot, piece or parcel of land, lying and being in the City of Richmond,
Virginia, together with all improvements thereon and appurtenances thereto related and
generally known as No. 705 and 707 North Boulevard, and more particularly shown by
plat of survey prepared by Charles H. Fleet and Assoc., Certified Surveyors, dated
March 13, 1973, recorded in Deed Book 682-D, Page 78, as follows:

Commencing at a point along the eastern line of North Boulevard, which point is 74.49
feet southwardly from the intersection of the eastern line of North Boulevard and the
southern line of West Grace Street, thence eastwardly through an alley in common,
103.63 feet to a rod along the northern line of an alley, 10 feet wide, (which rod is 72.5
feet southwardly from the south line of West Grace Street); thence along the said alley
southwardly 57.50 feet to a point marking the intersection of the western line of said 10
foot alley with the northern line of a 15 foot alley; thence along the northern line of said

15 foot alley, 90.03 feet to a spike marking the intersection of the northern line of said 15 foot alley with the eastern line of North Boulevard; thence along the eastern line of North Boulevard 59.08 feet to the Point of Commencement.

Parcel IV: (3228 Stuart Avenue)

That parcel of land in the City of Richmond, Virginia, situated on the northern line of Stuart Avenue and on the eastern line of Tilden Avenue, together with all improvements on said parcel and appurtenances thereto belonging, known as "The Tilden Apartments", also known as No. 3228 Stuart Avenue, and bounded as follows, to wit:

Beginning at the northeast corner of Stuart Avenue and Tilden Street, thence running eastwardly along and fronting on the northern line of Stuart Avenue, 57.5 feet; thence extending back northwardly between the eastern line of Tilden Street and a line parallel therewith 130 feet to an alley 12 feet wide.

Parcel V: (3224 Stuart Avenue)

All that certain lot, piece or parcel of land, lying and being in the City of Richmond, Virginia, together with all the improvements thereon known as "The Hayes Apartment", and designated as 3224 Stuart Avenue, and more particularly described as follows:

Beginning on the north line of Stuart Avenue 57.5 feet east of Tilden Street, thence running eastwardly along and fronting on the north line of Stuart Avenue 57.5 feet; thence extending back between nearly parallel lines 130 feet to an alley, 12 feet wide, on which it fronts 57.49 feet.

Parcel VI: (2903 Monument Avenue)

All that certain piece or parcel of land, lying and being in the City of Richmond, State of Virginia, together with all improvements thereon and appurtenances thereto belonging, known as 2903 Monument Avenue and more particularly described as follows, to wit:

Beginning at a point on the south line of Monument Avenue, 30 feet west of Colonial Avenue (formerly Deep Run Street); thence running westwardly along the south line of Monument Avenue and fronting thereon 44 feet; thence running back southerly from said front between parallel lines to a distance of 130 feet, more or less, to a public alley in the rear.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, L.L.C., dated March 12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-5977.

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

_____

|  |  |  |
|---|---|---|
| *In re*: | ) | Chapter 11 |
|  | ) | (Joint Administration) |
| River City Renaissance, LC, & | ) |  |
| River City Renaissance III, LC[1], | ) |  |
|  | ) |  |
| *Debtors*. | ) | Case No. 14-34080-KLP |

_____)

**MOTION FOR ORDER (I) APPROVING SALE OF ASSETS FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) APPROVING THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

**SCHEDULE B - RCR III PROPERTIES - BACK-UP BID DETAILS**

| BACK-UP BID | PROPERTY | GPIN | BACK-UP BIDDER |
|---|---|---|---|
| $1,625,000.00 | 110 North Boulevard | W000-1245/009 | River United, LLC |
| $975,000.00 | 3408 Park Avenue | W0001619/020 | Antar Abouzaki |
| $925,000.00 | 705/707 North Boulevard | W0001210/001 | John Beardsworth |
| $875,000.00 | 2903 Monument Avenue | W000-1290/007 | Remarkable Apartments, LLC |
| $850,000.00 | 3228 Stuart Avenue | W000-1464/036 | Remarkable Apartments, LLC |
| $885,000.00 | 3224 Stuart Avenue | W000-1464/034 | Virginia Realty Ventures |
| **$6,135,000.00** | **TOTAL** |  |  |

---

[1] The final four digits of the federal tax ID numbers for River City Renaissance, LC and River City Renaissance III, LC, respectively, are 8910 and 8102.