## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| _____ )<br>_In re_:                                                          )<br>                                                                        )<br>River City Renaissance, LC, &                     )<br>River City Renaissance III, LC,                     )<br>                                                                        )<br>            _Debtors_.                                             )<br>_____ ) | Chapter 11<br>(Joint Administration)<br><br><br><br><br>Case No. 14-34080-KLP |

### NOTICE OF MOTION FOR A FINDING OF CIVIL CONTEMPT

**PLEASE TAKE NOTICE** that counsel for River City Renaissance, LC ("RCR") and River City Renaissance III, LC ("RCR III"; collectively, the "Debtors"[1]), as debtors and debtors-in-possession, through counsel and pursuant to 11 U.S.C. § 105(a) and Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure (the "Rules"), move the Court for an Order to Show Cause as to why the Holders should not be held in contempt for their failure to obey the Order of this Court (the "Motion").

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, then you may wish to consult one.)**

If you do not want the Court to grant the Motion or if you want the Court to consider your views on the Application, then you or your attorney should file with the Court, at the address shown below, a written objection **on or before January 19, 2015, which is fourteen (14) days from the date of service of this Notice and the Motion**.  If you mail your written objection to the Court for filing, then you must mail it early enough so the Court, and counsel for the Debtors, will **receive it** on or before January 19, 2015.

---

[1] The final four digits of the federal tax ID numbers for River City Renaissance, LC and River City Renaissance III, LC, respectively, are 8910 and 8102.

Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:          (804) 697-2000
Facsimile:          (804) 697-2100
_Counsel for the Debtors & Debtors-In-Possession_

William C. Redden, Clerk
U.S. Bankruptcy Court
Eastern District of Virginia
701 E. Broad Street, 5th Floor
Richmond, Virginia 23219

You must also mail a copy to:

James K. Donaldson, Esquire
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia  23219

Robert Van Arsdale, Esquire
Assistant United States Trustee
Office of the U.S. Trustee
Eastern District of Virginia
701 East Broad Street, Suite 4304
Richmond, Virginia  23219

If you or your attorney do not take these steps, then the Court may decide that you do not oppose the relief sought in the Motion and may enter an Order granting that relief.  In the event that a hearing is requested on the Motion, then you will receive further notice of that hearing.

DATED: January 5, 2015          RIVER CITY RENAISSANCE, LC
                                RIVER CITY RENAISSANCE III, LC

                                By: /s/ James K. Donaldson
                                        Counsel

Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:     (804) 697-2000
Facsimile:     (804) 697-2100
*Counsel for the Debtors &*
*Debtors-In-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| | ) | |
| *In re*: | ) | Chapter 11 |
| | ) | (Joint Administration) |
| River City Renaissance, LC, & | ) | |
| River City Renaissance III, LC, | ) | |
| | ) | |
| *Debtors.* | ) | Case No. 14-34080-KLP |
| | ) | |
| River City Renaissance, LC, & | ) | |
| River City Renaissance III, LC, | ) | |
| | ) | |
| *Movants*, | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| U.S. Bank National Association, as Trustee, | ) | |
| Successor-In-Interest to Bank of America, N.A., | ) | |
| as Trustee, Successor to Wells Fargo Bank, N.A., | ) | |
| as Trustee for the Registered Holders of Wachovia | ) | |
| Bank Commercial Mortgage Trust, Commercial | ) | |
| Mortgage Pass-Through Certificates, | ) | |
| Series 2005-C22, & | ) | |
| U.S. Bank National Association, as Trustee, | ) | |
| Successor-In-Interest to Bank of America, N.A., | ) | |
| as Trustee, Successor to Wells Fargo Bank, N.A., | ) | |
| as Trustee for the Registered Holders of Wachovia | ) | |
| Bank Commercial Mortgage Trust, Commercial | ) | |
| Mortgage Pass-Through Certificates, | ) | |
| Series 2006-C23, by and through CWCapital Asset | ) | |
| Management LLC; & | ) | |
| | ) | |
| *Respondents.* | ) | |

Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:        (804) 697-2000
Facsimile:        (804) 697-2100
*Counsel for the Debtors & Debtors-In-Possession*

## MOTION FOR A FINDING OF CIVIL CONTEMPT

River City Renaissance, LC ("RCR") and River City Renaissance III, LC ("RCR III"; collectively, the "Debtors"[2]), as debtors and debtors-in-possession, through counsel and pursuant to 11 U.S.C. § 105(a) and Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure (the "Rules"), move the Court for a finding that the Holders[3] should be held in contempt for their failure to obey an Order of this Court.  In support, the Debtors state as follows:

### I. PRELIMINARY STATEMENT

1.      The Holders have deliberately disobeyed a clear order of this Court, and, to date, have failed to rectify that noncompliance.  As a result, the competitive nature and bidding of the auction was chilled.  The Holders failed to comply, not only with repeated requests of the Debtors for payoff figures, but with an order of this Court directing them to do so.  The Debtors' lack of this crucial information thwarted the Debtors' efforts to consummate a stalking-horse agreement in excess of the RCR Holder's claim.  Based on the standard for civil contempt under the Code and the standard espoused by the Fourth Circuit and applied by this Court, evidence exists for a finding that the Holders are in contempt of Court.

### II. BACKGROUND

2.      On July 30, 2014 (the "Petition Date"), the Debtors each filed with the Court a

---

[2] The final four digits of the federal tax ID numbers for River City Renaissance, LC and River City Renaissance III, LC, respectively, are 8910 and 8102.

[3] The "Holders" are: (1) U.S. Bank National Association, as trustee, successor-in-interest to Bank of America, N.A., as trustee, successor to Wells Fargo Bank, N.A., as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2005-C22 ("Trust 2005-C22" or the "RCR Holder"), by and through CWCapital Asset Management LLC, in its capacity as special servicer; and (2) U.S. Bank National Association, as trustee, successor-in-interest to Bank of America, N.A., as trustee, successor to Wells Fargo Bank, N.A., as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C23 ("Trust 2006 C-23" or the "RCR III Holder"), by and through CWCapital Asset Management LLC, in its capacity as special servicer (the "Special Servicer").

voluntary petition seeking relief pursuant to chapter 11 of title of the United States Code (the "Code").

3.    On December 5, 2014, this Court entered the Order Determining Credit Bid Rights of Holders (the "Order"; Doc. No. 250), in which the Court ordered, in part, the following:

> Each Holder shall provide to the Debtors an update, in writing, no later than the date set forth below, as to that respective Holder's Claim, which update shall include: (a) additional regular interest accrued from the date set forth in such Holder's Claim through the date of such provision or other date that the Debtors may reasonably request; (b) additional default interest accrued from the date set forth in such Holder's Claim through the date of such provision or other date that the Debtors may reasonably request; (c) a current estimate of all fees, costs, and expenses, including attorneys' fees, costs, and expenses, incurred from the date set forth in such Holder's Claim through the date of such provision or other date that the Debtors may reasonably request; (d) an updated calculation of the prepayment premium through the date of such provision or other date that the Debtors may reasonably request; and (e) an updated statement of any funds that Lender holds for application to that Holder's Loan for items such as escrow and suspense funds. The updated components, set forth above at (a) through (d), plus any sums asserted or claimed due under the respective Claim shall comprise the "Indebtedness." Each respective Holder shall provide such written updates: (i) no later than five (5) calendar days after entry of this Order; and (ii) on the date that is five (5) calendar days prior to the date of the Auction.

(Doc. No. 250, at 5.)

4.    Pursuant to the Order, the updates of the Holders' claims were due no later than December 10, 2014 and December 13, 2014.

5.    The Debtors had requested that the Court order these updates because the updated, alleged amounts of the Holders' claims were and remain necessary to properly conduct and administer the sale of the properties owned by the Debtors and the cases.[4]  The request that the Court enter such an order was necessary because despite multiple prior requests, the Holders

---

[4] A copy of the portion of transcript from the November 24, 2014 hearing wherein Counsel for the Debtors explained to the Court the request for the payoffs and the importance of obtaining the payoffs is attached hereto as **Exhibit A**.

had failed and/or refused to provide payoff information to the Debtors.[5]

6.      Despite the Order, the Holders provided only one update to the Debtors and that update was provided on December 12, 2014 (the "December 12 Update").  (**Exhibit B**, attached hereto.)  The stated basis for the delay was that the Special Servicer was awaiting the calculation of the amount claimed for the "Prepayment Premium" from the Master Servicer as the Special Servicer was prohibited from calculating that Prepayment Premium.

7.      The December 12 Update provided the estimated payoffs as of January 23, 2015 with the exception of costs and fees which were estimated through December 12, 2014.  The payoff figures provided in the December 12 Update were $31,375,470.09 and $6,643,946.12 for RCR and RCR III, respectively.

8.      The Debtors' commenced the auction of their real property the morning of December 18, 2014 (the "Auction").

9.      Shortly after 12:00 PM on December 18, 2014, before commencement of the portion of the Auction where bidders would begin bidding on the entire portfolio of each Debtor's properties, the Debtors and the Holders, by counsel, appeared before the Court for an emergency hearing (the "Hearing") related to the form of the contract that the Holder(s) would sign if they were the prevailing bidder(s) at the Auction.  (Doc. No. 270.)

10.     The Debtors and their advisors suspended the Auction during the Hearing, which recommenced after the Hearing.

11.     After the Hearing and immediately prior to the recommencement of the Auction, counsel for the Holders informed Debtors' counsel that there had been a material mistake in the

---

[5] On November 13, 2014, counsel for the Debtors requested payoffs from the Holders and informed the Holders' counsel by telephone that it needed the payoffs the following week.  Again on November 20, 2014, Debtors' counsel discussed with Holders' counsel by telephone the need for the payoffs.  Also, see Note 6, *infra*.

calculation of the December 12 Update caused by double counting of fees and costs and handwrote and gave to Debtors' counsel an updated figure for each Debtor (the "Auction Update"). (**Exhibit C**, attached hereto.) The payoff figures provided in the Auction Update were $30,637,372.78 and $6,520,222.32 for RCR and RCR III, respectively.

12.    Based on the statements made by counsel for the Holders when the Auction Update was presented, Debtors' counsel understood the two figures provided to be the updated payoff figure for each of the Debtors. In fact, the Debtors' motion seeking approval of the sale, among other relief, filed with the Court fewer than twenty-four (24) hours after conclusion of the Auction represents the Debtors' understanding that the Auction Update constituted the Holders' claimed respective indebtedness due from each Debtor. (Doc. No. 271, at 9.)

13.    The Auction recommenced and was ultimately completed with the Holders as the respective prevailing bidders for both the real property owned by RCR with a prevailing bid of $30,500,000 and the real property owned by RCR III with a prevailing bid of $6,235,000.

14.    On December 22, 2014, counsel for the Debtors and the Holders had a call to discuss the cases and issues related to the closing of the sales of the real property. During this call, counsel for the Holders informed Debtors' counsel that the Auction Update was not the corrected, updated payoff but rather the maximum amounts that the Holders intended to bid at the Auction. Counsel for the Holders stated that the actual corrected, updated claim amounts due were $30,887,372.78 and $6,520,222.32 for RCR and RCR III, respectively.

15.    To date, the Holders have not complied with the Order, because the Holders have not provided to the Debtors updated payoff figures in accordance with the Order.

### III. ARGUMENT

16.    The need for correct and timely payoff figures are critical for a fair and successful

5

sale and auction because the Debtors and its professionals need to know what sales price is necessary to top the amount of the indebtedness for a variety of reasons, including but not limited to negotiating with potential stalking horse bidders, preparing sale and auction strategy, and preparing for the auction based on the amounts of the initial bids (or other offers) versus the amount of the indebtedness

17. The refusal to provide updated payoff numbers in accordance with the Order and prior to the sale and auction comports with a pattern of behavior by the Holders as it relates to provision of financial and other information to the Debtors to which the Debtors are entitled and are necessary to properly conduct a sale and auction and administer the cases.[6]

18. "Section 105 of the Bankruptcy Code provides that '[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'" *In re Hookup, L.L.C.*, No. 12-33202-KRH, 2013 Bankr. LEXIS 170, at *6 (Bankr. E.D. Va. Jan. 15, 2013) (citing 11 U.S.C. § 105(a)). "The Fourth Circuit has interpreted this subsection to empower bankruptcy courts to issue civil contempt orders." *Hookup*, 2013 Bankr.

---

[6] As set forth in prior documents filed with the Court, the Debtors' counsel began requesting payoff information in mid-July and was repeatedly assured that it was forthcoming. The requests and assurances included requests to the Holders' counsel via telephone on or about July 25, 2014, assurance from the Holders' counsel in person at the July 30 hearing before the Circuit Court that payoffs had been requested and would be produced. The Debtors then issued formal discovery on the Holders and the Special Servicer for the previously promised information, seeking payoff amounts, breakdowns, and payment histories. The parties resolved the discovery requests via agreement, by which the Holders would provide documents and information on or before August 22, 2014, including payoff amounts, breakdowns, and payment histories. The Holders did not produce these documents or this information on or before August 22, 2014. Thus, Debtors' counsel sent a letter to the Holders'/Special Servicer's counsel requesting all information and documents, including payoffs and the payment histories. The Debtors received no response to that letter. Via telephone and e-mail on September 25, 2014, Debtors' counsel, again, inquired as to when the documents and information would arrive, and the Holders' counsel responded on September 25 that "You'll have those before the weekend." On Monday, September 29, Debtors' counsel was told that the information will be provided before a hearing on October 1, 2014. The evening before the October 1, 2014 hearing, Debtors' counsel received from the Holders' counsel a figure that was a reiteration of the "no less than" aggregate sum claimed to be due that was stated in the Holders' Objection to Cash Collateral. Finally, on October 3, 2014, payoffs as of the petition date were provided but with the statement that they "should not be considered final or otherwise binding on my client." Despite all of their requests, the Debtors did not receive any payoffs for the alleged amounts due post-petition under the loans until the December 12 Update. Also, each Debtor will be filing with the Court a Motion to Compel Discovery in the claims objection contested matter (the "Claims Objection Matter") due to the Holders objection to some of the discovery and their failure to provide all responsive documents pursuant to discovery deadlines.

LEXIS 170, at *6 (citing *Burd v. Walters* (*In re Walters*), 868 F.2d 665, 669-71 (4th Cir. 1989)).

19.     The Fourth Circuit enumerated four elements that comprise the standard to establish civil contempt:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's favor; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (internal citations and quotation marks omitted).

20.     In *Hookup*, Judge Huennekens found that a corporate designee had misrepresented intentionally the financial condition concerning an entity's ability to pay rent to a debtor.    *Hookup*, 2013 Bankr. LEXIS 170, at *13.    That designee's "intentional misrepresentations at [a hearing] constituted misbehavior amounting to an obstruction of justice."  *Id.*  There, the designee's misrepresentations and omissions "bore directly upon the true nature of [the entity's] financial condition."    *Hookup*, 2013 Bankr. LEXIS 170, at *9. Ultimately, the Court found the designee in contempt and awarded sanctions against him.  *Id.*, at *13.

21.     In this matter, each element necessary to find the Holders in contempt exists.  The Order, entered on December 5, 2014, precisely establishes when the Holders were required to provide to the Debtors payoff figures.  Second, the Order favored the Debtors by imposing an affirmative obligation on the part of the Holders, owed to the Debtors and critical to the sale and a fair Auction.  Third, the Holders violated the terms of the Order, and remain in violation of the Order.

22.     Finally, the Debtors have suffered harm as a result of the Holders' failure to

7

comply with the Order.  The Holders' pattern of refusal to disclose payoff information, which culminated in the noncompliance and misstatements, prejudiced the Debtors. This behavior materially impaired the Debtors' efforts to obtain a stalking-horse bidder for their properties. For example, RCR received an offer from a third-party purchaser willing to act as a stalking-horse bidder as to RCR's properties at a price of $32,000,000 with certain stalking-horse protections.  Based on the information known to the Debtors and provided to the Debtors by the Holders concerning the amount of the Holders' claims, the Debtors, in their business judgment, could not enter into a contract with the potential stalking-horse bidder at $32,000,000.[7]

23.    With correct and timely payoff figures, a stalking-horse bidder at a purchase price of $32,000,000, compared to a payoff of less than $30,900,000, would have been acceptable, could have potentially been obtained, and would have had a material effect on the outcome of the Auction.  The lack of payoff information also hampered negotiations with other potential stalking-horse bidders.  The erroneous December 12 Update hampered the Debtors' ability to evaluate whether to contact other potential stalking-horse bidders again prior to the Auction, which they could have done had they known the correct payoff as ordered by the Court.

24.    The Holders' continued recalcitrance and misdirection concerning the accuracy of the debts that the Debtors owe has and will continue to prejudice the Debtors absent intervention from the Court.

25.    Moreover, the Holder as to RCR has benefitted from this violation of the Order by obtaining RCR's properties at an artificially low amount.

26.    The refusal to provide payoff information and correct payoff information has had

---

[7] For example, during one phone call where the payoff information was requested of Holders' counsel, counsel for the Debtors said that the RCR Debtor estimated the updated RCR payoff to be around $31,500,000 and counsel for the Holders informed Debtors' counsel that number sounded about right.

a material negative effect on the sale and administration of the bankruptcy cases and the claims

objection process.  Further, the Holders intentional and/or grossly negligent refusal to obey the

Order and provide the accurate payoff information materially hindered the sale and Auction and

the Debtors' attempts to maximize recovery for the estates.  As a result, the Debtors incurred,

and continue to incur, unnecessary fees in this matter.

27.    This Court should issue an order finding the Holders in civil contempt of Court

for their refusal and failure to abide by the Order.

28.    The Debtors are examining their potential causes of action against the Holders for

their actions in this matter, including their actions that culminated in the violation of the Order

and reserve all rights to file an adversary proceeding asserting causes of actions and claims

related to such actions.

29.    The Debtors request a waiver of Local Bankruptcy Rule 9013-1(G), which

requires a separate memorandum of points and authorities to accompany a motion.

**WHEREFORE**, the Debtors respectfully request that the Court enter an Order:

(a) Finding the Holders in contempt of Court and reserving the rights of the Debtors for a

determination of the monetary amount of the damages and sanctions related to the Holders'

contempt until requested by the Debtors, whether in connection with this Motion for a Finding of

Civil Contempt, an adversary proceeding, or other matters filed by the Debtors in this case;

(b)  Requiring that sworn, verified, correct, and final binding payoff figures be provided

to the Debtors within seven (7) days of the date of entry of the Court's Order on this Motion for a

Finding of Civil Contempt; and

(c)  For such other and further relief as the Debtors request or the Court deems just and

proper due the Holders' failure to comply with the Order.

DATED: January 5, 2015                     RIVER CITY RENAISSANCE, LC
                                           RIVER CITY RENAISSANCE III, LC

                                           By: /s/ James K. Donaldson
                                                    Counsel

Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:     (804) 697-2000
Facsimile:     (804) 697-2100
*Counsel for the Debtors &*
*Debtors-In-Possession*

10

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2015 I caused to be served a copy of the foregoing Notice and Motion to be served via electronic mail or notice on all parties that receive CM/ECF notification, including the following persons, including all necessary parties:

Robbin S. Rahman, Esq.                     Mark D. Taylor, Esq.
Kilpatrick Townsend & Stockton LLP         VLP Law Group
Peachtree Street, Suite 2800               1629 K. Street, NW, Suite 300
Atlanta, GA 30309                          Washington, DC 20006

Robert B. Van Arsdale, Esq.
Office of the U.S. Trustee
701 E. Broad St., Suite 4304
Richmond, VA 23219


/s/ James K. Donaldson


642799.v.11.doc

11

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

_____
                                                    )
*In re*:                                            )        Chapter 11
                                                    )        (Joint Administration)
River City Renaissance, LC, &                       )
River City Renaissance III, LC,                     )
                                                    )
              *Debtors*.                             )        Case No. 14-34080-KLP
_____ )

## <u>MOTION FOR A FINDING OF CIVIL CONTEMPT</u>

## <u>EXHIBIT A</u>

_____
Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:        (804) 697-2000
Facsimile:        (804) 697-2100
*Counsel for the Debtors & Debtors-In-Possession*

1               IN THE UNITED STATES BANKRUPTCY COURT
                EASTERN DISTRICT OF VIRGINIA (RICHMOND)
2

3
                                    )    Case No. 14-34080-KLP
4   In re                           )    Richmond, Virginia
                                    )
5   RIVER CITY RENAISSANCE, LC, et al.,  )
                                    )    November 24, 2014
6              Debtors.             )    11:09 AM
                                    )
7   _____)

8
                        TRANSCRIPT OF HEARING
9       [159] CONTINUED MOTION TO APPROVE SALE AND BID PROCEDURES
                         AND RELATED RELIEF
10        [176 ] DEBTOR'S MOTION FOR ENTRY OF AN ORDER EXTENDING
     EXCLUSIVE PERIODS WITHIN WHICH TO FILE A CHAPTER 11 PLAN
11                  AND SOLICIT VOTES THEREON
          [223] MOTION TO ASSUME LEASES AND APPROVAL OF LEASE
12      ASSUMPTION AND ASSIGNMENT PROCEDURES AND RELATED NOTICE
      [224] MOTION TO EXPEDITE HEARING ON LEASE ASSUMPTION AND
13                ASSIGNMENT PROCEDURES MOTION
              BEFORE THE HONORABLE KEITH L. PHILLIPS,
14               UNITED STATES BANKRUPTCY JUDGE

15

16

17

18

19

20

21

22

23

24

25

```
 1   APPEARANCES:

 2   Debtors:                    ROBERT H. CHAPPELL, III, ESQ.
                                 TIMOTHY G. MOORE, ESQ.
 3                               SPOTTS FAIN PC
                                 411 East Franklin Street
 4                               Suite 600
                                 Richmond, VA 23218
 5
     CWCapital Asset            ROBBIN S. RAHMAN, ESQ.
 6   Management LLC:            KILPATRICK TOWNSEND & STOCKTON LLP
                                 1100 Peachtree Street NE
 7                               Suite 2800
                                 Atlanta, GA 30309
 8
                                 MARK D. TAYLOR, ESQ.
 9                               VLP LAW GROUP LLP
                                 555 Bryant Street
10                               Suite 820
                                 Palo Alto, CA 94301
11
     Chevron, USA:              AUGUSTUS C. EPPS, JR., ESQ.
12                               JENNIFER MCLEMORE, ESQ.
                                 CHRISTIAN & BARTON, L.L.P.
13                               909 East Main Street
                                 Suite 1200
14                               Richmond, VA 23219

15   U.S. Trustee:              ROBERT B. VAN ARSDALE, ESQ.
                                 OFFICE OF THE U. S. TRUSTEE
16                               701 East Broad Street
                                 Suite 4304
17                               Richmond, VA 23219

18

19

20

21   Transcription Services:              eScribers
                                          700 West 192nd Street
22                                        Suite #607
                                          New York, NY 10040
23                                        (973) 406-2250

24   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.

25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
```

                              Colloquy                              14

1   dispute, if we're unable to agree on an issue -- what can be

2   produced, what's privileged, et cetera.

3           So from our standpoint, it's just too tight.  And so

4   for that reason we think the March 6th summary judgment

5   filing, argue the last week of March, if need be, have a trial

6   the end of April, is a reasonable time frame.

7           THE COURT:  Fine.  What's the third issue?

8           MR. CHAPPELL:  That's really it.

9           THE COURT:  I thought you said there were three.

10          MR. CHAPPELL:  Yes.  There is one other issue, Your

11  Honor.  And I'm hopeful we'll be able to resolve it.  I don't

12  think we've finished talking about it.  But we are, we hope,

13  very close to being able to strike a deal with a stalking

14  horse in order to have on RCR -- not RCR III, but on RCR to

15  have a stalking horse bid that we believe, based on our

16  calculation of what the holders' payoff should be in January

17  and factoring in a generous -- what we think is a generous

18  amount of attorneys' fees, we think we have a deal that would

19  pay them in full even if they prevail completely, pay the

20  administrative expenses, and have at least some recovery for

21  the unsecureds.  And so we would very much like to take that.

22  But it doesn't do us any good to take on a stalking horse and

23  award them bid protections -- obviously all of this would be

24  subject to Your Honor's discretion after notice and hearing --

25  but it doesn't do us any good to do that if it turns out that

Colloquy                                                    15

1    the actual payoff is materially higher than we thought it was,

2    and we haven't even cleared that bar in the contract.

3           And so we have written into the order a provision

4    requiring the holders to give us a payoff immediately, to give

5    us one right before the auction, and then, upon reasonable

6    request, in between.  They have countered with a provision

7    that has them giving us one shortly before the auction.  And,

8    candidly, that is a material impediment to us.  I mean, we

9    really need to know what their estimated payoff will be,

10   because that yield maintenance premium changes depending --

11          THE COURT:  You need to know it before you accept the

12   stalking horse is what you're saying?  The proof of claim

13   doesn't give you enough information?

14          MR. CHAPPELL:  The proof of claim is as of the filing

15   of the petition, and it includes a per diem for the interest

16   and the default interest.  However, it does not include --

17   we're not comfortable whether we have accurately calculated

18   the yield maintenance premium that would be due in January in

19   a payoff.  And we also have no idea what post-petition fees

20   and costs are.  And so we are concerned about putting the

21   estate in a position where what we thought was going to

22   benefit everyone actually becomes a burden.  And so we really

23   need to get a payoff as of mid-January from them now.

24          We recognize that the attorneys' fees would have to

25   be an estimate, or maybe that component could only be to date.

Colloquy                                                                16

 1   But that is a problem that we need help with.  We're hopeful

 2   we can solve it with negotiation, but we haven't been able to

 3   yet.  And I understand there are mechanical problems, because

 4   the special servicer doesn't provide it.  They have to go back

 5   to the master servicer, and the master servicer has a certain

 6   number of days to generate it and a variety of issues arising

 7   from the securitization.  I'm sure Mr. Rahman will speak to

 8   that.  But that is a place where our orders do differ.  If we

 9   were to submit them to Your Honor, that is a place where they

10   do differ.

11          THE COURT:  Well, look.  If you get a payoff as of

12   mid-January, are you going to hold them to that payoff?

13          MR. CHAPPELL:  I think we would.  I think we would.

14   Yes, Your Honor.

15          THE COURT:  You would say that's the most you could

16   possibly get?  They can't come back later and ask me to

17   reconsider it?

18          MR. CHAPPELL:  I don't think we would say that, but I

19   think -- first of all, as to the attorneys' fees, it could

20   only be an estimate.  And so who knows what will come up, what

21   work Mr. Rahman and his firm will need to do.  But certainly I

22   don't think it's too much to ask them to calculate that yield

23   maintenance premium through January, and I don't think it's

24   too much to ask them to tell us where they are now on

25   attorneys' fees.  Because it could material.

Colloquy                                                    17

1       They're very good lawyers.  We feel they're very

2   expensive.  And we want to make sure that there isn't a much

3   larger professionals' claim lurking out there than we

4   anticipate.

5           THE COURT:  All right.  Okay.  Thank you.

6           MR. CHAPPELL:  Thank you, Your Honor.

7           MR. RAHMAN:  Good morning, Your Honor.

8           THE COURT:  Good morning.

9           MR. RAHMAN:  Robbin Rahman with Kilpatrick Townsend

10  on behalf of the holders, by and through CWCapital as the

11  special servicer.  Before we dive in, Your Honor, I just want

12  to thank you again for indulging our scheduling of this order.

13          THE COURT:  I'm happy to do that.

14          MR. RAHMAN:  Yes.  So we appreciate it.  This issue

15  is very important to my client.  We very much appreciate it.

16      Just, sort of, tackling the -- I guess the low-lying

17  fruit first.  I think Mr. Chappell understates a little bit

18  the difference between the two orders on the update issue.  So

19  just to give you an example, what is in there currently

20  contemplates, conceivably, an unlimited number of updates that

21  would be required from my client.

22      First would be five days after entry of the order.

23  Second would be five days prior to the auction.  And, finally,

24  ten days after a request by the debtors, with no conceivable

25  cap on how many updates they would want.

Colloquy                                                         18

1          And so, really, that's the fundamental problem we

2    have.  We agree that at some point it makes sense to give them

3    an update of what our post-petition claims are.  Our view was

4    that what you really need is an update prior to our credit bid

5    to establish the amount of our indebtedness before we credit

6    bid.

7          THE COURT:  Well, that and --

8          MR. RAHMAN:  If they think --

9          THE COURT:  And also, apparently, the deal with the

10   potential stalking horse bidder.

11         MR. RAHMAN:  Correct, Your Honor.  I think, perhaps,

12   Mr. Chappell overstates that a bit, as well, because if the

13   question is -- if it's a close question as to whether our

14   claim will eat up any value of the stalking horse bid, then I

15   would think undeniably the stalking horse agreement should not

16   be entered into and --

17         THE COURT:  But they need an estimate in order to --

18         MR. RAHMAN:  And I think they have everything they

19   need for that particular purpose.  If they're --

20         THE COURT:  Except for the yield maintenance premium.

21   I mean --

22         MR. RAHMAN:  Correct, but that can only go down.

23   That can only go down, because time is -- the time between

24   today and the original maturity is getting shorter, and that's

25   how yield maintenance works.  It doesn't go up.  It goes down.

1   So that number --

2          THE COURT:  Can you estimate how quickly it goes

3   down?

4          MR. RAHMAN:  I mean, it's basically by month.  I

5   mean, you reevaluate every month as to what the number would

6   be.

7          THE COURT:  I mean, is the criteria available from

8   which the numbers can be determined?

9          MR. RAHMAN:  Do the debtors have the criteria?

10         THE COURT:  By the debtor or by you.  I mean, I'm

11  just wondering why --

12         MR. RAHMAN:  Sure.  We --

13         THE COURT:  -- it's such a --

14         MR. RAHMAN:  We could --

15         THE COURT:  -- difficult thing to --

16         MR. RAHMAN:  As Mr. Chappell alluded to, we could

17  back to the master servicer and ask for an updated estimate.

18  Not estimate, an updated amount for the yield maintenance as

19  of a specific date.

20         The normal business practice is to give it as of --

21  not a far-off date, but as of a very near date, usually within

22  two weeks or something like that.

23         THE COURT:  I'm wondering why there's difficulty with

24  that --

25         MR. RAHMAN:  Well, because it's tied to the markets

1    to some extent, so markets fluctuate, and so if you give it

2    too far out based upon the way rates are today it may not

3    accurately reflect.

4           THE COURT:  Well, but that wouldn't be a huge

5    difference, though, would it?

6           MR. RAHMAN:  That's, sort of, my point.  None of

7    these things are going to be a huge difference one way or the

8    other.  They have per diem.  That is the most significant

9    number for interest.  They know how -- they can calculate what

10   default interest would be based upon the percentages that are

11   in the agreement.  And although they may think that we're

12   expensive, there are, essentially, half of the number of

13   lawyers working on this issue on our side as are on their

14   side.  They could use their own fees to figure out --

15          I don't want to debate whether they could or could

16   not estimate this number.

17          THE COURT:  Well, you can give them -- you can give

18   an update on fees periodically.

19          MR. RAHMAN:  Correct.

20          THE COURT:  I mean, I heard Mr. Chappell saying that

21   he only needed this payoff figure as of mid-January and then

22   after the sale.  So would that be difficult for you to give

23   him those estimates on those two dates?

24          MR. RAHMAN:  I think that's the same date, unless I'm

25   misunderstanding.

1    MR. CHAPPELL:  It's the same date, effective mid-

2  January, which is the closing date, but we'd like one now and

3  then there --

4    THE COURT:  Oh, one now and one then.

5    MR. CHAPPELL:  That's correct, Your Honor.

6    THE COURT:  Well, so he's just asking for two.  Is

7  that --

8    MR. RAHMAN:  If that's the ask, Your Honor, I think

9  we can probably come up with it, but that's not what's in the

10  order as drafted.

11    THE COURT:  Oh.  Well, you can change the order,

12  because I'm hearing him say now just now and mid-January.

13    So, Mr. Chappell, is that acceptable to amend the

14  order that you --

15    MR. CHAPPELL:  That'd be fine, Your Honor.

16    THE COURT:  Okay.  So we've got that issue resolved?

17    MR. RAHMAN:  I think that would be fine.

18    THE COURT:  Okay.  All right.  So then we go back to

19  the first two.

20    MR. RAHMAN:  Sir, would you like to go to the pre-

21  trial schedule first or the credit bid?

22    THE COURT:  Okay.  Let's do the pre-trial.

23    MR. RAHMAN:  That one might be a little bit easier.

24    THE COURT:  I was thinking -- I was wondering if

25  this -- this might be a case where mediation might be

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| _In re_: | ) | Chapter 11 |
| | ) | (Joint Administration) |
| River City Renaissance, LC, & | ) | |
| River City Renaissance III, LC, | ) | |
| | ) | |
| _Debtors_. | ) | Case No. 14-34080-KLP |
| | ) | |

## MOTION FOR A FINDING OF CIVIL CONTEMPT

## EXHIBIT B

Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:       (804) 697-2000
Facsimile:       (804) 697-2100
_Counsel for the Debtors & Debtors-In-Possession_

## Tim Moore

| | |
|---|---|
| **From:** | Rahman, Robbin <Rrahman@kilpatricktownsend.com> |
| **Sent:** | Friday, December 12, 2014 8:13 PM |
| **To:** | Robert Chappell; Tim Moore |
| **Cc:** | Pulliam, Jim; Levin, Matthew |
| **Subject:** | RCR Holder's Updated Payoff |

Robert & Tim –

As requested, the below represents the updated payoff amount for the RCR Holder.  These amounts are calculated as of the outside closing date (1/23/15), **except** for fees which are estimated as of today (12/12/14) as best as possible.

| | |
|---|---|
| Principal | $26,371,077.65 |
| Contract Interest | $1,590,000.18 |
| Prepayment Premium | $878,679.57 |
| Default Interest | $1,285,888.96 |
| Late Charges | $135,787.21 |
| Fees | $1,424,329.44 |
| Subtotal | $31,685,763.00 |
| Suspense Funds | ($310,292.91) |
| **TOTAL PAYOFF** | **$31,375,470.09** |
| **Annual Daily interest** | **$6,838.23** |



## KILPATRICK TOWNSEND
ATTORNEYS AT LAW

**Robbin S. Rahman**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA  30309-4528
office 404 815 6323 | cell 404 217 0498 | fax 404 541 3340
rrahman@kilpatricktownsend.com | My Profile | vCard

Confidentiality Notice:
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 404 815 6500, and destroy the original transmission and its attachments without reading or saving in any manner.

***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

## Tim Moore

| | |
|---|---|
| **From:** | Rahman, Robbin <Rrahman@kilpatricktownsend.com> |
| **Sent:** | Friday, December 12, 2014 8:14 PM |
| **To:** | Robert Chappell; Tim Moore |
| **Cc:** | Pulliam, Jim; Levin, Matthew |
| **Subject:** | RCR III Holder's Updated Payoff |

Robert & Tim —

As requested, the below represents the updated payoff amount for the RCR III Holder.  These amounts are calculated as of the outside closing date (1/23/15), **except** for fees which are estimated as of today (12/12/14) as best as possible.

| | |
|---|---|
| Principal | $5,575,555.15 |
| Contract Interest | $415,484.17 |
| Prepayment Premium | $271,223.18 |
| Default Interest | $271,343,.68 |
| Late Charges | $29,763.50 |
| Fees | $229,059.08 |
| Subtotal | $6,792,428.77 |
| Suspense Funds | ($148,482.65) |
| **TOTAL PAYOFF** | **$6,643,946.12** |
| **Annual Daily interest** | **$1,505.40** |



KILPATRICK
TOWNSEND
ATTORNEYS AT LAW

**Robbin S. Rahman**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA  30309-4528
office 404 815 6323 | cell 404 217 0498 | fax 404 541 3340
rrahman@kilpatricktownsend.com | My Profile | vCard

Confidentiality Notice:
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 404 815 6500, and destroy the original transmission and its attachments without reading or saving in any manner.

***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

_____
                                        )
*In re*:                                )       Chapter 11
                                        )       (Joint Administration)
River City Renaissance, LC, &           )
River City Renaissance III, LC,         )
                                        )
          *Debtors*.                    )       Case No. 14-34080-KLP
_____)

**MOTION FOR A FINDING OF CIVIL CONTEMPT**

**EXHIBIT C**

_____
Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:        (804) 697-2000
Facsimile:        (804) 697-2100
*Counsel for the Debtors & Debtors-In-Possession*

Through  1/23/15

RCR:

$30,637,372.78


RCR III:

$6,520,222.32