## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

_____
                                                                    )
*In re*:                                                            )        Chapter 11
                                                                    )        (Joint Administration)
River City Renaissance, LC, &                                       )
River City Renaissance III, LC,                                     )
                                                                    )
            *Debtors*.                                               )        Case No. 14-34080-KLP
_____)

### <u>NOTICE OF MOTION TO COMPEL</u>

**PLEASE TAKE NOTICE** that counsel for River City Renaissance, LC ("<u>RCR</u>") and River City Renaissance III, LC ("<u>RCR III</u>"; collectively, the "<u>Debtors</u>"[1]), as debtors and debtors-in-possession, through counsel and pursuant to 11 U.S.C. § 105(a) and Rules 9014, 7026, and 9037 of the Federal Rules of Bankruptcy Procedure (the "<u>Rules</u>") and Local Rule 7026-1 of the Local Rules for the U.S. Bankruptcy Court of the Eastern District of Virginia (the "<u>Local Rules</u>"), move the Court for an Order to compel the Holders to respond to discovery requests and produce documents responsive to those discovery requests  (the "<u>Motion</u>").

        **<u>Your rights may be affected.</u>  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, then you may wish to consult one.)**

        If you do not want the Court to grant the Motion or if you want the Court to consider your views on the Application, then you or your attorney should file with the Court, at the address shown below, a written objection **on or before January 19, 2015, which is fourteen (14) days from the date of service of this Notice and the Motion**.  If you mail your written objection to the Court for filing, then you must mail it early enough so the Court, and counsel for the Debtors, will **receive it** on or before January 19, 2015.

---

[1] The final four digits of the federal tax ID numbers for River City Renaissance, LC and River City Renaissance III, LC, respectively, are 8910 and 8102.

Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:            (804) 697-2000
Facsimile:            (804) 697-2100
*Counsel for the Debtors & Debtors-In-Possession*

William C. Redden, Clerk
U.S. Bankruptcy Court
Eastern District of Virginia
701 E. Broad Street, 5th Floor
Richmond, Virginia 23219

You must also mail a copy to:

James K. Donaldson, Esquire
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia  23219

Robert Van Arsdale, Esquire
Assistant United States Trustee
Office of the U.S. Trustee
Eastern District of Virginia
701 East Broad Street, Suite 4304
Richmond, Virginia  23219

If you or your attorney do not take these steps, then the Court may decide that you do not oppose the relief sought in the Motion and may enter an Order granting that relief.  In the event that a hearing is requested on the Motion, then you will receive further notice of that hearing.

DATED: January 5, 2015            RIVER CITY RENAISSANCE, LC
                                  RIVER CITY RENAISSANCE III, LC


                                  By: /s/ James K. Donaldson
                                         Counsel


Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:    (804) 697-2000
Facsimile:    (804) 697-2100
*Counsel for the Debtors &*
*Debtors-In-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| _____ | ) | |
| *In re*: | ) | Chapter 11 |
| | ) | (Joint Administration) |
| River City Renaissance, LC, & | ) | |
| River City Renaissance III, LC, | ) | |
| | ) | |
| *Debtors.* | ) | Case No. 14-34080-KLP |
| _____ | ) | |
| | ) | |
| River City Renaissance, LC, & | ) | |
| River City Renaissance III, LC, | ) | |
| | ) | |
| *Movants,* | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| U.S. Bank National Association, as Trustee, | ) | |
| Successor-In-Interest to Bank of America, N.A., | ) | |
| as Trustee, Successor to Wells Fargo Bank, N.A., | ) | |
| as Trustee for the Registered Holders of Wachovia | ) | |
| Bank Commercial Mortgage Trust, Commercial | ) | |
| Mortgage Pass-Through Certificates, | ) | |
| Series 2005-C22, & | ) | |
| U.S. Bank National Association, as Trustee, | ) | |
| Successor-In-Interest to Bank of America, N.A., | ) | |
| as Trustee, Successor to Wells Fargo Bank, N.A., | ) | |
| as Trustee for the Registered Holders of Wachovia | ) | |
| Bank Commercial Mortgage Trust, Commercial | ) | |
| Mortgage Pass-Through Certificates, | ) | |
| Series 2006-C23, by and through CWCapital Asset | ) | |
| Management LLC; & | ) | |
| | ) | |
| *Respondents.* | ) | |
| _____ | ) | |

Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:        (804) 697-2000
Facsimile:        (804) 697-2100
*Counsel for the Debtors & Debtors-In-Possession*

## MOTION TO COMPEL

River City Renaissance, LC ("RCR") and River City Renaissance III, LC ("RCR III"; collectively, the "Debtors"[2]), as debtors and debtors-in-possession, through counsel and pursuant to 11 U.S.C. § 105(a) and Rules 9014, 7026, and 9037 of the Federal Rules of Bankruptcy Procedure (the "Rules") and Local Rule 7026-1 of the Local Rules for the U.S. Bankruptcy Court of the Eastern District of Virginia (the "Local Rules"), move the Court for an Order to compel the Holders[3] to respond to discovery requests and produce documents responsive to those discovery requests.  In support, the Debtors state as follows:

## I. PRELIMINARY STATEMENT

1.    The Special Servicer ("CWCapital") refuses to comply with its obligations to provide timely, full, and complete responses to the Debtors' interrogatories and requests for production of documents (the "Discovery"), all of which severely hinders the Debtors' ability to prepare this matter for trial on the expedited basis as demanded by CWCapital and in accordance with this Court's pretrial Order entered on December 11, 2014 (the "Pretrial Order").  (Doc. No. 256.)  CWCapital's conduct is improper, and it should be ordered to comply and respond in full to the Discovery.  The delay caused by CWCapital's failure to adhere to the Pretrial Order and the resulting prejudice to the Debtors warrant extension of the deadlines established by the Pretrial Order. The Debtors respectfully request extensions and modifications to the pretrial

---

[2] The final four digits of the federal tax ID numbers for River City Renaissance, LC and River City Renaissance III, LC, respectively, are 8910 and 8102.

[3] The "Holders" are: (1) U.S. Bank National Association, as trustee, successor-in-interest to Bank of America, N.A., as trustee, successor to Wells Fargo Bank, N.A., as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2005-C22 ("Trust 2005-C22" or the "RCR Holder"), by and through CWCapital Asset Management LLC, in its capacity as special servicer; and (2) U.S. Bank National Association, as trustee, successor-in-interest to Bank of America, N.A., as trustee, successor to Wells Fargo Bank, N.A., as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C23 ("Trust 2006 C-23" or the "RCR III Holder"), by and through CWCapital Asset Management LLC, in its capacity as special servicer (the "Special Servicer").

2

deadlines to remedy the current discovery improprieties and deter future misconduct.

## II. BACKGROUND

2.      On July 30, 2014 (the "Petition Date"), the Debtors each filed with the Court a voluntary petition seeking relief pursuant to chapter 11 of title of the United States Code (the "Code").

3.      On July 31, 2014, the Debtors filed with the Court a motion for joint administration of these bankruptcy cases, which the Court granted by Order entered on August 1, 2014.  (Doc. Nos. 6, 23.)

4.      On November 6, 2014, each Holder, through CWCapital, filed with the Court a proof of claim in each Debtor's respective bankruptcy case.  (Case No. 14-34080-KLP, Claim No. 6-1; Case No. 14-34081-KLP, Claim No. 3-1; collectively, the "Claims".)

5.      On November 20, 2014, each Debtor filed with the Court an Objection to the Holders' Proofs of Claim.  (Case No. 14-34080-KLP, Doc. No. 226; Case No. 14-34081-KLP, Doc. No. 40; collectively, the "Claim Objections".)  The Objections are substantially similar and assert similar legal theories and facts that, among other disputes, contest the Holders' rights to default interest and prepayment premiums.  The Discovery in each Debtor's cases is also substantially similar.  As such, and in light of the Debtors' cases being subject to joint administration, each Debtor relies on this, sole Motion to Compel.[4]

6.      On December 11, 2014, the Court entered the Pretrial Order, which established, at the request of the Holders and CWCapital,[5] an expedited discovery and pretrial schedule for this

---

[4] The numbered interrogatories and document requests are identical for each Debtor, other than the reference to the respective Debtor and applicable Holder.  For ease, this Motion cites only to RCR and the RCR Holder where applicable, but relief is requested for each Debtor as to each Holder.

[5] At a November 24, 2014 hearing before the Court, counsel for the Holders, by and through the Special Servicer, stressed the need for an expedited pretrial schedule and stated an expedited schedule "gives my client some peace of

contested matter (generally, the "<u>Claims Allowance Litigation</u>").  (Doc. No. 256.)

      7.    The following timeline sets forth the relevant dates and events concerning the

Discovery and subsequent dispute between the parties:

    a.  **November 26, 2014**:  The Debtors served their First Set of Interrogatories and First Set of Requests for Production of Documents (collectively, the "<u>Discovery</u>") on CWCapital.  (**<u>Exhibit A</u>**, attached hereto)

    b.  **December 10, 2014**:  CWCapital served its Objections to the Discovery, which asserted ten (10) "general objections" to the interrogatories and essentially the same ten (10) "general objections" to the document requests, all of which were incorporated into each individual discovery request.  The Objections also asserted "specific objections" to each of the 17 interrogatories and all but 7 of the 37 document requests.  (**<u>Exhibit B</u>**, attached hereto.)

    c.  **December 11, 2014**:  The Court entered its Pretrial Order which set the trial of this contested matter to commence on April 20, 2015, which established January 23, 2015 as the date for disclosure of expert reports by the party with the burden of proof, and which fixed the cutoff for fact discovery on February 9, 2015.  The Pretrial Order also shortened the time to respond to all discovery requests to 21 days.

    d.  **December 17, 2014**:  CWCapital served its Responses to the Discovery (the "<u>Responses</u>") in which it stated that, subject to its Objections, it was responding to certain interrogatories and producing documents in response to certain of the document requests.  (**<u>Exhibit C</u>**, attached hereto.)  CWCapital, however, refused to respond to certain Interrogatories and Document Requests and did not provide all documents requested.

Furthermore, the documents that were produced in response to document requests do not appear to have been produced as they are kept in the ordinary course of business, nor were they separately labeled to correspond to particular requests, as required by Rule 34(b)(2)(E)(i).

Finally, in response to several of the interrogatories, CWCapital states:

> Non-objectionable documents and business records responsive to this Interrogatory, if any, will be produced at a time and place mutually agreeable to counsel.  The burden of deriving or ascertaining the answer will be substantially the same for either party, and Debtor will have the opportunity to examine and audit the records and to make copies, compilations, abstracts or

---

mind to believe that yes, we are, in fact, on an expedited schedule.  We're not simply doing a normal adversary case with all the normal deadlines."  (Nov. 24, 2014 Hrg. Tr. at 23:13-16.)

summaries.

CWCapital's interrogatory responses, however, did not "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could," as required by Rule 33(d).

e. **December 18 - 22, 2014**:  Counsel for the parties engaged in a series of discussions and e-mails in an attempt to schedule a telephone conference to discuss the deficiencies in the Responses.

f. **December 23, 2014**:  Counsel for the parties met and conferred by telephone regarding the Responses.  During this conference, Counsel for CWCapital conceded that they were holding additional responsive documents and agreed to produce those documents and provide supplemental responses to certain discovery requests by "early next week."  CWCapital also advised that it would be submitting a privilege log in connection with the Discovery.  During the telephone conference, CWCapital also confirmed its continued refusal to respond to Interrogatories 11, 12, and 16 or to Document Requests 14, 26, and 36, and CWCapital will therefore stand on its Objections to those discovery requests.

g. **December 30, 2014**:  Counsel for CWCapital advised the Debtors' counsel that additional information and documents would be forthcoming, and certain information and documents would be received by the Debtors' counsel on December 31, 2014.

h. **December 31, 2014**:  Counsel for CWCapital advised that a CD containing additional documents would be sent out on December 31, 2014, and will therefore not be delivered to the Debtors until January 2, 2015 and e-mailed CWCapital Asset Management LLC's First Supplement to its Responses to Interrogatories and Requests for Production Propounded by River City Renaissance I, LC and CWCapital Asset Management LLC's First Supplement to its Responses to Interrogatories and Requests for Production Propounded by River City Renaissance III, LC (collectively the "<u>Supplements</u>").  (**<u>Exhibit D</u>**, attached hereto.)  The Supplements do not provide any responses to some of the disputed discovery requests and some of the supplemental answers (and the manner and form of the Supplements) are not complete or otherwise are objectionable.

i. **January 2, 2015**:  Debtors' counsel received via UPS Overnight a CD containing additional, responsive documents to the Discovery.  The Debtors are in the process of converting that data for review.

## III. LEGAL STANDARD

8.    Rule 26 of the Federal Rules of Civil Procedure, incorporated herein through

Rules 7026 and 9014 of the Bankruptcy Rules, states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).  The federal discovery rules are broadly construed and contemplate the broadest discovery possible in the search for truth.  *See, e.g., Kline v. Martin*, 345 F. Supp. 31 (E.D. Va. 1972).  Accordingly, where one party refuses to respond to discovery, the requesting party may move for an order compelling responses to interrogatories or document requests.  *See* Fed. R. Civ. P. 37(a).  Furthermore:

> If the motion is granted — or if the disclosure or requested discovery is provided after the motion was filed — the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5)(A).

### III. ARGUMENT

9.    The standards and analysis relevant to the underlying, substantive law concerning the Claim Objections warrants consideration by the Court.  While counsel for the Special Servicer asserts that this analysis is solely a legal analysis, the applicable case law states otherwise.  *See Fla. Asset Fin. Corp. v. Dixon* (*In re Dixon*), 228 B.R. 166 (W.D. Va. 1998).  "Entitlement to default interest is generally determined either by reliance on equitable principles or the cure rationale evoked by the Ninth Circuit in *Great Western Bank & Trust v. Entz-White Lumber & Supply, Inc.* (*In re Entz-White Lumber & Supply, Inc.*), 850 F.2d 1338, 1340-42 (9th Cir. 1988)." 228 B.R. at 172.  The facts surrounding the inception of the Loans, as well as the manner in which funds have been allocated and applied is a critical, factual inquiry that requires

6

discovery.

10.     The *Dixon* court stated that "numerous courts have conducted an analysis of the equities and chosen to attach significance to the existence of other claims in addition to that of the oversecured creditor" and cited several cases where bankruptcy courts did not allow default interest based on the equities where junior creditors would be affected. *Id.* at 174-75. Further, "[c]losely connected to each of the above is the equitable concern that a default rate may function as 'a coercive penalty rather than a bargained for attempt to compensate a creditor for its extra costs after a default.'" *Id.* at 175 (quoting *In re Consolidated Properties Ltd. P'ship*, 152 B.R. 452, 455 (Bankr. D. Md. 1993)) (citing *In re DWS Inv., Inc.*, 121 B.R. 845, 849 (Bankr. C.D. Cal. 1990)).

11.     Similarly, the U.S. Bankruptcy Court for the Eastern District of North Carolina has enumerated four factors to consider in analyzing whether prepetition default interest is allowed. *See In re Parker*, No. 12-03128-8-SWH, 2014 Bankr. LEXIS 4784, at *10 (Bankr. E.D. N.C. Nov. 19, 2014). These four factors are: (i) the risk of nonpayment to the lender; (ii) whether the non-default contract rate represents the prevailing market rate; (iii) whether the difference between the default rate and the non-default rate is reasonable; and (iv) whether the purpose of the default rate of interest is to compensate the creditor for costs incurred upon default, or whether it is a penalty. *Parker*, 2014 Bankr. LEXIS 4784, at *10-23. The Debtors' discovery is designed to gather information relevant to these factors and is, thus, reasonably calculated to lead to the discovery of admissible evidence.

12.     CWCapital's continuing failure to produce complete information responsive to the Discovery continues to hinder and frustrate the Debtors' ability to gather information critical to the preparation of this case. CWCapital and the Holders possess a great informational

7

advantage over the Debtors, in part due to the incarceration of Billy Jefferson, but, in any event, the discovery process exists to level that playing field. Also, CWCapital and the Holders represented to the Court, through counsel, the willingness to cooperate with the Debtors and facilitate an expedited discovery schedule. Instead, and as in other facets of this chapter 11 case, CWCapital and the Holders appear to have utilized this informational advantage to delay and prejudice the Debtors. Absent intervention from the Court, CWCapital and the Holders' behavior will preclude the Debtors ability to prepare this matter for trial in an efficient or effective manner.

**A. CWCapital Should Be Compelled To Respond Fully To The Discovery**

13.     Each of the Debtors' discovery requests, to which CWCapital refuses to respond, are reasonably calculated to lead to the discovery of admissible evidence. The parties have conferred but have been unable to resolve this dispute.

**1. CWCapital Should Be Compelled To Answer Interrogatories 8 - 12, 15, And 16**

14.     CWCapital has served objections but has refused to provide substantive answers to Interrogatories 8 through 12, 15, and 16. The Court should order CWCapital to provide substantive responses to each of the unanswered interrogatories.

**a. Interrogatories 8 - 10 Seek Information As To CWCapital's Claims**

15.     Each Claim asserts that it is entitled to recover, among other elements Prepayment Premium, Default Interest, and Late Charges. These elements of each Claim may not be recoverable by CWCapital under applicable bankruptcy or Virginia law. In determining whether default interest will be allowed, courts consider "whether the purpose of the default rate of interest is to compensate the creditor for costs incurred upon default, or whether it is a penalty." *In re Parker*, 2014 Bankr. LEXIS 4784, at * 16. The same analysis applies to the disputed

8

elements of each Claim.

16.     Interrogatories 8 through 10 are proper contention interrogatories designed to determine whether CWCapital believes that the elements of the Claim identified as a Prepayment Premium, Default Interest, and Late Charges represent actual loss or damages of the Holders. The exact wording of the interrogatories is as follows:

*8*.     Do you contend that the Prepayment Premium in the amount of $1,562,514.55 that is an element of Your Proof of Claim represents actual damages of the Holder?  If so, provide all facts in support of such contention.

*9*.     Do you contend that the Default Interest at the Default Interest Rate in the amount of $770,187.88 that is an element of Your Proof of Claim represents actual damages of the Holder?  If so, provide all facts in support of such contention.

*10*.     Do you contend that the Late Charges in the amount of $94,006.49 that are an element of Your Proof of Claim represent actual damages of the Holder?  If so, provide all facts in support of such contention.

(**Ex. B**, at 48-50, 64-66.)

17.     CWCapital served the following objection to interrogatories 8 through 10:

CWCapital objects to this Interrogatory on the basis that is seeks a legal conclusion, is vague and is not tailored to lead to the discovery of relevant information. CWCapital further objects to this Interrogatory on the basis that the phrase "actual damages" is not defined and is subject to multiple interpretations. As a result, CWC is unable to determine the meaning or scope of this Interrogatory. CWCapital further objects to this Interrogatory to the extent that it imposes requirements not otherwise imposed by the Rules. Without limiting the generality of the  foregoing, CWCapital states that its burden of proof under 11 U.S.C. § 502 and/or Federal Rule of Bankruptcy Procedure 3001 does not include an obligation to prove that any of the amounts set forth in the Proof of Claim constitute "actual damages."

CWCapital does not intend to further respond to this Interrogatory.

(**Ex. B**, at 48-50, 64-66.)  CWCapital's Responses to these Interrogatories stated "Reference is made to the Objections."  (**Ex. C**, at 7, 18-19.)  In the Supplements, CWCapital states that it will stand on these objections.

18.     The facts that these discovery requests seek to elicit are necessary to complete the

analysis of the applicable standards under bankruptcy law and Virginia law; thus, CWCapital and

the Holders should be compelled to respond to these Interrogatories.

**b. The Debtors Are Entitled To Responses To Interrogatories 11 - 12**

19.     CWCapital's role as Special Servicer for each Loan is governed by a document

known as a pooling and servicing sgreement (the "<u>PSA</u>").  Pursuant to the terms of each PSA,

certain fees and expenses to which CWCapital, not the Holders, is entitled purportedly comprise

each Claim.  Interrogatories 11 and 12 ask the following:

> *11*.     Identify any components or sums claimed due in the Proof of Claim that
> are comprised in whole, or in part, of Penalty Interest.
>
> *12*.     Identify any components or sums claimed due in the Proof of Claim that
> are comprised in whole, or in part, of either a Yield Maintenance Premium or a
> Yield Maintenance Charge.

(**<u>Ex. B</u>**, at 50-51, 66-67.)  These interrogatories seek information concerning CWCapital's rights

to recover certain amounts under the PSA.  Whether or not the Claims seek funds that will

compensate the Special Servicer, not the Holders, is a dispositive fact under the requisite

standards of bankruptcy law and Virginia law.

20.     CWCapital asserted the following objection to both Interrogatories 11 and 12:

> CWCapital objects to this Interrogatory on the basis that RCR PSA is not
> relevant to the interpretation of the RCR Note or the Loan Documents or the
> allowance of a claim under 11 U.S.C. § 502.3 CWCapital further objects to
> this Interrogatory to the extent that is seeks a legal conclusion unrelated to the
> facts of this contested matter, is vague and is not tailored to lead to the
> discovery of relevant information. CWCapital further objects to this
> Interrogatory to the extent that is imposes requirements not otherwise imposed
> by the Rules.
>
> CWCapital does not intend to further respond to this Interrogatory.

(**<u>Ex. C</u>**, at 7, 19.)  In the Supplements, CWCapital states that it intends to stand on the objections.

21.     The information sought in these Interrogatories relates to the Debtors' position

that certain elements of the Claim may not be recoverable by CWCapital if those elements of the

Claim penalize a Debtor's default on the Loan, rather than compensation for actual losses or

damages sustained by the Holders as a result of a Debtor's default.   These requests are

reasonably calculated to lead to the discovery of admissible evidence concerning how

CWCapital and/or the noteholder treat the elements of the Claim, *i.e.*, as a penalty or as actual

recoverable loss of the Holders.   Accordingly, CWCapital should be required to respond.

### c. CWCapital Should Be Compelled To Respond To Interrogatory 15

22.    Interrogatory 15 asks the following:

***15***.    Identify the Controlling Class Representative and all persons employed by
or acting on behalf of the Controlling Class Representative with whom you
communication regarding the RCR Loan and for each person identified, describe
the specific areas of communication of which such person has knowledge.

(**Ex. B**, at 52-53, 68.)

23.    CWCapital asserted the following objection to Interrogatory 15:

CWCapital objects to this Interrogatory on the basis of relevancy.   Neither
CWCapital's communications [*sic*] the Controlling Class Representative nor
the identity of the Controlling Class Representative or its employees are in
any way relevant to this contested matter.   CWCapital further objects to this
Interrogatory on the basis that the Controlling Class Representative serves
only in a limited capacity and had no input as to the amounts claimed in the
Proof of Claim.   CWCapital further objects to this Interrogatory because it is
overly board, unduly burdensome, and not tailored to lead to the discovery of
relevant information.

Subject to the Objections, CWCapital will respond to this Interrogatory within
the time period set forth in the applicable Rules, or as otherwise ordered by
the Bankruptcy Court.

(**Ex. B**, at 52-53, 68.)   In the Supplements, the Holders state that they intend to stand on the

objections.

### d. CWCapital's Relevance Objection To Interrogatory 16 Should Be Overruled

24.    Interrogatory 16 asks CWCapital to: "Identify the Majority Subordinate

Certificateholder and all persons employed by or acting on behalf of the Majority Subordinate

Certificateholder with whom You communicate regarding the RCR Loan and for each person

identified, describe the specific areas of communication of which such person has knowledge."

(**Ex. A**, at 12, 38.)  CWCapital objected to this interrogatory on relevance grounds:

> CWCapital objects to this Interrogatory on the basis of relevancy. Neither
> CWCapital's communications with the Majority Subordinate Certificateholder
> nor the identity of the Majority Subordinate Certificateholder or its employees are
> in any way relevant to this contested matter. CWCapital further objects to this
> Interrogatory on the basis that the Majority Subordinate Certificateholder has no
> role whatsoever in the servicing of the RCR Loan or the preparation of Proof of
> Claim. CWCapital further objects to this Interrogatory because it is overly broad,
> unduly burdensome, and not tailored to lead to the discovery of relevant
> information.
>
> Subject to the Objections, CWCapital will respond to this Interrogatory within the
> time period set forth in the applicable Rules, or as otherwise ordered by the
> Bankruptcy Court.

(**Ex. B**, at 53, 69.)  CWCapital responded to Interrogatory 16 as follows:  "Neither Alex Killick

nor Matt Farina know the identity of the Majority Subordinate Certificateholder, nor do they

communicate with the Majority Subordinate Certificateholder. Reference is made to the

objections. CWCapital further objects to this Interrogatory because the identity of the Majority

Subordinate Certificateholder is non-public information.  (**Ex. C**, at 9, 21.)

25.    Whether two employees of CWCapital know the identity of the Majority

Subordinate Certificateholder is not relevant.  Rather, the issue is what information CWCapital

holds concerning the Majority Subordinate Certificateholder.  This information will enable the

Debtors to determine whether any third party discovery concerning communications between

CWCapital and the Majority Subordinate Certificateholder has taken place concerning the Loan

at issue in this case.  Furthermore, the non-public nature of the Majority Subordinate

Certificateholder's identity can be maintained by an appropriate protective order if necessary.

CWCapital should be compelled to respond to Interrogatory 16.

### 2. CWCapital Should Be Compelled To Provide More Complete Responses To Interrogatories 1, 3, and 15

26.     CWCapital has provided only partial responses to Interrogatories 1, 3, and 15. CWCapital should be required to provide full and complete responses as soon as possible.

27.     Interrogatory 1 requests that CWCapital "[i]dentify all persons with knowledge of the facts alleged in, and underlying, your Proof of Claim, including the factual basis for and calculation of each element (e.g. prepayment premium) of your claimed amounts in the Proof of Claim, and for each person identified, state the specific facts and subject matter of which you believe he or she has knowledge." (**Ex. A**, at 10, 36.)

28.     CWCapital's response identifies two individuals who work for CWCapital and states that responsive documents will be produced.  (**Ex. C**, at 4, 16.)  Based on a preliminary review of documents produced by CWCapital, various other CWCapital employees appear to have corresponded with other entities and individuals concerning the Debtors.  Those individuals employed by CWCapital include: Alden Ellis, Lisa Myrberg, Hillary Marken, Joshua Williams, George O'Neill, Michael Greenblatt, Brian Hanson, Kenneth L. Frank, and Ben Miller. CWCapital should be required to provide a complete response.

29.     Interrogatory 3 requests that CWCapital "[s]tate the date on which you first became engaged as Special Servicer for the RCR Loan and identify all documents that related to your role as Special Servicer for the RCR Loan." (**Ex. A**, at 10, 36.)

30.     CWCapital's Response only states the dates during which it has acted as Special Servicer, but the response does not identify any pertinent documents. (**Ex. C**, at 4, 16.)   The Supplements state that "no documents other than the [applicable pooling and servicing agreement] and CW-RCR000007-0008 are non-objectionable and responsive." (**Ex. D**, at 6.)

CWCapital should be required to provide a full response, not a limited response qualified by objections.

31.    Interrogatory 15 requests that CWCapital "[i]dentify the Controlling Class Representative and all persons employed by or acting on behalf of the Controlling Class Representative with whom you communicate regarding the RCR Loan and for each person identified, describe the specific areas of communication of which such person has knowledge." (**Ex. A**, at 12, 38.)    CWCapital responded solely by identifying the Controlling Class Representative, without further details.    (**Ex. C**, at 9, 20.)    CWCapital should be required to provide a complete response to this Interrogatory.

### 3. CWCapital Must Answer Document Requests 14, 15, 26, And 36

32.    CWCapital has served objections but has refused to provide substantive answers to Document Requests 14, 15, 26, and 36.  The Court should order CWCapital to produce documents in response to each of the unanswered requests.

### a. CWCapital Should Be Ordered To Produce Documents In Response To Document Requests 14, 15, 26, and 36, For Which It Is Standing On Its Objections

33.    Document Request 14 asks for "All documents concerning or relating to any investment of money You or any of Your affiliates have made that entitles You to receive any compensation in connection with the RCR Loan." (**Ex. A**, at 26, 50.)  CWCapital objected:

> CWCapital objects to this RFP on the basis that the phrase "concerning or relating to any investment of money You or any of Your affiliates have made that entitles You to receive any compensation" is imprecise and subject to multiple interpretations. As a result, CWCapital is unable to determine the meaning or scope of this RFP. As a result, CWCapital is unable to determine the meaning or scope of this RFP and it is unable to determine what documents, if any, might be responsive to this RFP. CWCapital further objects to this RFP on the basis that any documents relating to CWCapital's investments would in no way be relevant to this contested matter. CWCapital further objects to this RFP on the basis that it is overly broad, unduly burdensome, vague, and not tailored to lead to the discovery of relevant evidence.

14

CWCapital does not intend to further respond to this RFP.

(**Ex. B**, at 11, 30-31.)  In the Supplements, CWCapital states that it intends to stand on its objections.  (**Ex. D**, at 8.)

34.     Information concerning whether CWCapital, or an affiliate, has invested in the Loan, or related securities, is at issue and discoverable.  The Claim asserts that the Holders are entitled to recover various elements of damages from the Debtors as a result of their alleged default.  Whether those elements are compensatory damages or are penalties is a critical issue. On information and belief, affiliates of special servicers invest in or acquire an interest in securitization trusts so that the investor may appoint its affiliate special servicer and collect fees and compensation.  If CWCapital, or one of its affiliates, invested in securities that entitle it to a recovery through the Claim, then that information will lead to admissible evidence concerning the equities and whether those elements are unrecoverable or penalties.  CWCapital should be required to respond in full to this document request.

35.     Document Request 15 seeks "[a]ll documents concerning or relating to Your, or any of Your affiliates', interest in the RCR Holder."  (**Ex. A**, at 26, 50.)  CWCapital objected:

> CWCapital objects to this RFP on the basis of relevancy. No documents concerning or relating to CWCapital's or its affiliates' interests in any person are in any way relevant to this contested matter. CWCapital further objects to this RFP on the basis that it is overly broad, unduly burdensome, vague, and not tailored to lead to the discovery of relevant evidence. CWCapital further objects to this RFP on the basis that the term "interest" is not defined and is subject to numerous interpretations. As a result, CWCapital is unable to determine the meaning or scope of this RFP. Accordingly, CWCapital objects on the basis that it is unable to determine what documents, if any, might be responsive to this RFP.

> CWCapital does not intend to further respond to this RFP.

(**Ex. B**, at 11, 31.)

36.     Comparable to Document Request 14, the issue of whether CWCapital, or an

affiliate, holds an interest in the RCR Holder is relevant. CWCapital may own, control, or hold

voting rights as to either Holder. If CWCapital, or one of its affiliates, is entitled it to a recovery

through the Claim based on an ownership interest in either Holder, then that information will

lead to admissible evidence concerning the equities and whether those elements are

unrecoverable or penalties. CWCapital should be required to respond in full to this document

request.

37.     Document Request 26 asks for "Any and all communications between, among, or

including You and the Majority Subordinate Certificateholder relating to or concerning RCR or

the RCR Loan." (**Ex. A**, at 27, 51.) CWCapital objected as follows:

> CWCapital objects to this RFP on the basis of relevancy. No communications
> between CWCapital and the Majority Subordinate Certificateholder are in any
> way relevant to this contested matter. CWCapital further objects to this RFP on
> the basis that it is overly broad, unduly burdensome, vague, and not tailored to
> lead to the discovery of relevant evidence. CWCapital further objects to this RFP
> on the basis that the definition in Debtors' RFPs of "You" is overly broad and
> imprecise.
>
> CWCapital does not intend to further respond to this RFP.

(**Ex. B**, at 15, 34-35.) If communications have taken place between CWCapital and the Majority

Subordinate Certificateholder concerning the Loan at issue in this case, then that information

may be relevant, and any related request is reasonably calculated to lead to the discovery of

admissible evidence.

38.     Document Request 36 asks for "Any and all documents or communications that

refer to the Servicing Standard." (**Ex. A**, at 27, 52.) CWCapital objected as follows:

> CWCapital objects to this RFP on the basis of relevancy. Documents or
> communications that refer to the Servicing Standard are not in any way relevant
> to this contested matter. CWCapital further objects to this RFP on the basis that it
> is overly broad, unduly burdensome, vague, and not tailored to lead to the
> discovery of relevant evidence.
>
> CWCapital does not intend to further respond to this RFP.

16

(**Ex. B**, at 18, 38.)  Relevancy is not a proper objection to discovery.  The Debtors have inquired

about the Servicing Standard because it prescribes the standard by which CWCapital must

adhere in order to comply with its obligations under the applicable PSA.  While the Debtors are

not a party to the PSA, the requirements and protocol mandated by the Servicing Standard

purport to govern how CWCapital services each Debtor's Loan.  That is a fundamental issue in

this contested matter.

### 4. CWCapital Should Be Ordered To Specify Which Documents Are Responsive To Particular Discovery Requests

#### a. Interrogatory Responses That Refer To Documents Must Identify The Documents From Which The Responses Can Be Ascertained

39.      CWCapital responded to Interrogatories 3, 4, 5, 6, 13, 14, and 17 with the

following language:

> *Non-objectionable* documents and business records responsive to this
> Interrogatory, if any, will be produced at a time and place mutually agreeable to
> counsel.  The burden of deriving or ascertaining the answer will be substantially
> the same for either party, and Debtor will have the opportunity to examine and
> audit the records and to make copies, compilations, abstracts or summaries.

(**Ex. C**, at 4-9, 16-21 (emph. added).)  The Supplements then identify in Paragraph 3 a list of

documents by Bates Number that may be responsive.  (**Ex. D**, at 5.)  The Supplements do not

sufficiently correct the deficiencies.

40.      The Supplements, however, state "no documents are being 'withheld,' but rather,

given its objections, CWCapital is under no obligation to further respond or produce documents

in response to such RFP or Interrogatory." (**Ex. D**, at 6.)  The Debtors are entitled to receive all

documents responsive to their requests and request a ruling from this Court ordering CWCapital

to withdraw its objections to all Interrogatories and Requests for Production of Documents to

which it has agreed to respond.

41.      With regard to CWCapital's offer to produce documents in response to the

specified Interrogatories, CWCapital's responses are deficient and must be corrected to comply

with the provisions of Rule 33(d) that require CWCapital to "specify[] the records that must be

reviewed, in sufficient detail to enable the interrogating party to locate and identify them as

readily as the responding party could."   CWCapital must be required to comply with the

applicable Rules, especially under the accelerated schedule that they demanded from the Court

and provide these supplemented answers to the individual interrogatories, under oath as required

by the Rules, not in the manner done in the Supplements.

### 5. The Court Should Order CWCapital To Produce Its Privilege Log And Invoices To Support The Fees In The Claims

42.      To date, CWCapital has not produced to the Debtors either a privilege log in

connection with its document production, and it has not yet produced its counsel's invoices

concerning the fees and expenses asserted in the Claims, despite representations that those

documents are forthcoming.   CWCapital's "General Objections" to each Debtor's discovery

requests contain an objection for "information or documents protected by the attorney-client, and

other privileges, or the trial preparation or work product doctrines (or any confidentiality or

privilege associated with mediation), all of which are beyond the scope of permissible discovery

under the Federal Rules."  (**Ex. B.**, at 4, 24, 43, 59.)

43.      "[I]n addition to claiming a privilege, a party must 'describe the nature of the

documents, communications, or tangible things not produced or disclosed - and do so in a

manner that, without revealing information itself privileged or protected, will enable other parties

to assess the claim.'"   *Zaremba v Fed. Inc. Co.* (*In re Cont'l Capital Inv. Servs.*), No. 09-3322,

2011 Bankr. LEXIS 3853, at *12-13 (Bankr. N.D. Ohio Sept. 30, 2011) (quoting Fed. R. Civ. P.

26(b)(5)) (citing *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984)

(finding that a party's failure to make the required showing that privilege applies "is not excused

18

because the document is later shown to be one which would have been privileged if a timely

showing had been made")).  To date, CWCapital has failed to comply with the rules and should

be compelled to produce a privilege log.

44.    Further, each Claim asserts a component of funds due for attorneys' fees, yet no

documentation or invoices have been produced to the Debtors.  This information is critical so

that the Debtors may analyze the reasonableness of those fees under the appropriate standards,

and CWCapital should be compelled to produce invoices for its counsel fees.

**B. The Court Should Modify The Pretrial Deadlines As A Remedy For CWCapital's Delay in Responding To Written Discovery And Award To The Debtors' Their Attorneys' Fees For Having To File This Motion**

45.    CWCapital must not be permitted to demand an expedited trial schedule and then

withhold information and documents (and also not produce responsive documents in a timely

manner) that the Debtors believe are necessary to prepare this case for trial.  CWCapital insisted

on an accelerated discovery cutoff and stated that it would cooperate in the production of

information.[6]  Instead, two weeks after all documents should have been produced, the Debtors

are still waiting for additional documents.  This refusal to respond timely to discovery is further

evident in the continued refusal by CWCapital to provide full and complete responses to the

Discovery.

46.    The timing of this conduct is extremely prejudicial to the Debtors' ability to

prepare this matter for trial in just over four months.  At this stage in the litigation, with just over

one month left to conduct discovery and less than a month to the beginning of expert

designations, this Court can and should modify the accelerated pretrial schedule as a remedy to

---

[6] At the November 24, 2014 hearing, counsel for CWCapital requested an expedited schedule for discovery and stated "[t]hat gives my client some peace of mind to believe that yes, we are, in fact, on an expedited schedule. We're not simply doing a normal adversary case with all the normal deadlines."  (Nov. 24, 2014 Hrg. Tr. at 22:23 - 25:12.)

the Debtors and as a sanction for CWCapital's refusal to participate properly in discovery. Discovery responses, including responsive documents and a privilege log, were due from CWCapital on December 17, 2014.

47.     The Debtors therefore propose that CWCapital be ordered to provide full and complete responses to all of the pending Discovery within 48 hours of entry of a Court order and that all pretrial deadlines be extended by no less than twenty-one (21) days to account for the unnecessary delay caused by CWCapital.  These proposed remedies and discovery sanctions, at a minimum, will help to remedy CWCapital's past misconduct and will hopefully deter any similar conduct during the remainder of this litigation.  Finally, the costs and attorney's fees associated with the preparation of this Motion should be borne by CWCapital.

48.     The Debtors have made no prior request for the relief sought in this motion.

49.     The Debtors request a waiver of Local Bankruptcy Rule 9013-1(G), which requires a separate memorandum of points and authorities to accompany a motion.

## V. CONCLUSION

50.     This Court should issue an Order directing and compelling the Holders, acting by and through the Special Servicer, to respond to and, where applicable, produce documents responsive to the Debtors' Discovery, as set forth above, and award to the Debtors any other relief that the Court deems proper and just.

**WHEREFORE**, the Debtors respectfully request that the Court enter an Order granting

this Motion to Compel and granting such other relief that this Court deems just and proper.


DATED: January 5, 2015                    RIVER CITY RENAISSANCE, LC
                                          RIVER CITY RENAISSANCE III, LC

                                          By: /s/ James K. Donaldson_____
                                                  Counsel


Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:      (804) 697-2000
Facsimile:      (804) 697-2100
*Counsel for the Debtors &*
*Debtors-In-Possession*

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2015 I caused to be served a copy of the foregoing to be served via electronic mail or notice on all parties that receive CM/ECF notification, including the following persons, including all necessary parties:

Robbin S. Rahman, Esq.  
Kilpatrick Townsend & Stockton LLP  
Peachtree Street, Suite 2800  
Atlanta, GA 30309

Mark D. Taylor, Esq.  
VLP Law Group  
1629 K. Street, NW, Suite 300  
Washington, DC 20006

Robert B. Van Arsdale, Esq.  
Office of the U.S. Trustee  
701 E. Broad St., Suite 4304  
Richmond, VA 23219

/s/ James K. Donaldson

642895.v.5.doc