**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| *In re*: ) | Chapter 11 |
| ) | (Joint Administration) |
| River City Renaissance, LC, & ) | |
| River City Renaissance III, LC[1], ) | |
| ) | |
| *Debtors*. ) | Case No. 14-34080-KLP |
| ) | |

**DEBTORS' REPLY SEEKING CONTINUANCE**
**AND AMENDMENT TO SALE & BID PROCEDURES**

River City Renaissance, LC ("RCR") and River City Renaissance III, LC ("RCR III"; collectively, the "Debtors"), as debtors and debtors-in-possession, through counsel and pursuant to 11 U.S.C. §§ 105(a), 363, and 365 and Rules 2002, 3003, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), file this Reply Seeking Continuance And Amendment to the Sale & Bid Procedures (the "Reply") in connection with (i) the Debtors Motion For Order (I) Approving Sale Of Assets Free And Clear Of Liens, Claims, Encumbrances, And Interests; (II) Approving The Assumption And Assignment Of Certain Executory Contracts and Unexpired Leases; And (III) Granting Related Relief (the "Preliminary Sale Motion"; Doc. No. 271); and (ii) the Holders': (A) Limited Response thereto, And (B) Request For Finding That Holders Are Good Faith Purchasers And Entitled To The Protections of Sections 363(m) and (n) of the Bankruptcy Code (the "Holders' Response"). In support of

---

[1] The final four digits of the federal tax ID numbers for River City Renaissance, LC and River City Renaissance III, LC, respectively, are 8910 and 8102.

Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:     (804) 697-2000
Facsimile:      (804) 697-2100
*Counsel for the Debtors & Debtors-In-Possession*

this Reply, the Debtors state as follows:

1. The Debtors filed these chapter 11 cases in order to pursue an orderly liquidation of their respective real property assets, comprised of 29 residential apartment buildings throughout the City of Richmond (collectively, the "<u>Properties</u>").  Since the December 18, 2014 auction of the Properties (the "<u>Auction</u>") and the filing of the Preliminary Sale Motion, certain material facts have come to light that affect the Debtors' decision to seek Court approval of the results of the Auction.  At the conclusion of the Auction, the Debtors selected Prevailing Bidders, as defined in the Sale & Bid Procedures, for the RCR and RCR III Properties, respectively: (i) the RCR Holder,[2] acting by and through the Special Servicer as the Prevailing Bidder for the RCR Properties, and (ii) the RCR III Holder, acting by and through the Special Servicer as the Prevailing Bidder for the RCR III Properties.

2. With a more complete understanding of facts concerning the Auction, as well as the Debtors' rights concerning both any future sale of the Properties to the Holders and claims held by the Debtors' estates against the Holders, the Debtors cannot seek approval of the Preliminary Sale Motion at this time.

3. On January 12, 2015, the Holders, by and through the Special Servicer, filed the Holders' Response.  (Doc. No. 323.)  The Holders' Response contains material misstatements of fact and partial recitations of fact concerning, among other issues, the Auction and events that transpired after the Auction.

---

[2] The "<u>Holders</u>" are: (1) U.S. Bank National Association, as trustee, successor-in-interest to Bank of America, N.A., as trustee, successor to Wells Fargo Bank, N.A., as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2005-C22 (the "<u>RCR Holder</u>"), by and through CWCapital Asset Management LLC, in its capacity as special servicer; and (2) U.S. Bank National Association, as trustee, successor-in-interest to Bank of America, N.A., as trustee, successor to Wells Fargo Bank, N.A., as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C23 (the "<u>RCR III Holder</u>"), by and through CWCapital Asset Management LLC, in its capacity as special servicer (the "<u>Special Servicer</u>").

## BACKGROUND

4. On November 6, 2014, the Court entered that certain "*Interim Order (I) Approving Sale And Bid Procedures; (II) Approving The Form And Manner Of Notice; And (III) Granting Related Relief*" (the "Sale & Bid Procedures Order"), which, in part, approved the Sale & Bid Procedures and the Sale Notice that governed the Auction. (Doc. No. 201.)

5. On November 6, 2014, the Court entered that certain "*Order Authorizing Employment And Retention Of Auctioneer*" (the "Auctioneer Order"), authorizing the Debtors' retention of Sperry Van Ness Auction Services, LLC, and its affiliates (collectively, the "Auctioneer"), to facilitate and conduct the Auction. (Doc. No. 164.)

6. On December 5, 2014, the Court entered an *Order Determining Credit Bid Rights Of Holders* (the "Credit Bid Order"), which, in part, determined, conditioned, and established the credit-bid rights of the Holders at the Auction. (Doc. No. 250.)

7. On December 18, 2014, the Debtors commenced the Auction in order to facilitate the sale of all of the Debtors' Properties in accordance with the Sale & Bid Procedures and the Sale & Bid Procedures Order.

## FACTS

**A. Purchase Price Issue**

8. As to the Purchase Price Issue, as defined in the Holders' Response, the best evidence concerning the deliberate topping bid submitted by the Holders' representative at the Auction, Mr. Rahman, is the video footage of that portion of the Auction. To the extent that the issue is relevant, the Debtors request the opportunity to prepare testimony and offer that video into evidence.

9. Nonetheless, the Debtors contend that a member of the Auctioneer's team advised

3

the Holders' representative that he was "in" as the high bidder at a bid of $30,250,000.00 for the entirety of the RCR Properties' portfolio. The Holders' representative, next, deliberately and quickly submitted the incremental topping bid at $30,500,000.00. Testimony from the Auctioneer's team will corroborate these events shown in the video footage. The Holders' do not appear to contest that their representative submitted a bid of $30,500,000.00. (Holders' Resp., at 6.)

10. The Holders' Response attempts to cobble together certain facts along with several critical inaccuracies in an effort to reduce the RCR Holders' prevailing bid to $30,250,000.00. The Debtors do not dispute that the Preliminary Sale Motion stated their attorneys' initial belief that FCP Fund II REIT Investor, LLC ("<u>FCP</u>") was the Back-Up Bidder for the RCR Properties with a bid of $30,250,000.00. Also, FCP was the opening bidder for the RCR Properties at $30,000,000.00, based on their written, Qualified Bid submitted prior to the Auction.

11. The Holders' Response incorrectly asserts that "[c]ounsel for the Debtors also revealed that they had known this issue for **<u>five</u>** full days - since prior to the telephone call between the Debtors and the Holders on Friday, December 19, 2015 [*sic*] - representing that FCP had 'called immediately after the Sale Motion was filed' to disclaim any responsibility for the $30,250,000 bid . . ." (Holders' Resp., at 9, ¶14.) The Holders are wrong. FCP's representatives first contacted the Debtors' counsel via e-mail on Monday, December 22, 2014 at approximately 12:48 PM to dispute the amount of FCP's Back-Up Bid. The Debtors can produce that e-mail upon request and are willing to offer it into evidence at a continued, evidentiary hearing.

12. Upon receipt of FCP's e-mail containing its assertion that its Back-Up Bid was

4

$30,000,000.00, the Debtors' contacted the Auctioneer to further investigate the relevant facts. This investigation included compilation and conversion of the video footage by the Auctioneer.

13. On December 22, 2014, the Debtors' counsel requested the transcript from the Auction, as transcribed by a court reporter, for which an excerpted portion first arrived from the court reporter on December 29, 2014.

14. At approximately 6:16 PM on Monday, December 22, 2014, the Auctioneer provided footage from a rear angle that suggests that the Holders' representative submitted a bid at $30,250,000.00 and then at $30,500,000.00. That angle, however, provided a view of the Holders' representative only from behind, his face was not visible.

15. At the conclusion of the December 23, 2014 hearing, the parties met at the Courthouse, where Messrs. Rahman, Taylor, Luzinski, Chappell, and Donaldson discussed the then-known facts: namely, that a camera angle showed that the Holders' representative submitted the $30,250,000.00 bid and the $30,500,000 bid. The Holders' representatives and counsel requested that the Debtors provide to them the available video footage.

16. At approximately, 11:43 AM on Tuesday, December 23, 2014, the Auctioneer first provided video footage containing a camera angle that displayed the faces of bidders and audience members. This camera angle and footage corroborates that the Holders' representative submitted bids at $30,250,000.00 and then at $30,500,000.00. The Debtors' counsel received this footage *after* the commencement of the December 23, 2014 hearing, which began at 11:03 AM according to the transcript and exhibit attached to the Holders' Response.

17. At approximately 4:43 PM on December 23, 2014, the Debtors transmitted via e-mail links containing each available camera of video footage to the Holders' counsel. On December 24, 2014, the Holders' counsel responded via e-mail asserting that the Holders'

5

prevailing bid amount for the entirety of the RCR Properties was $30,250,000.00, not $30,500,000.00.

18. On December 29, 2014, the Debtors received a copy of the portion of the Auction transcript that reflects an announcement made at the conclusion of the Auction of the RCR Properties when the Auctioneer announced and identified the Back-Up Bidder for the RCR Properties as Bidder No. 327, with a bid of $30,000,000.00. At the commencement of the Auction, the Auctioneer assigned Bidder No. 327 to FCP.

19. Further, the Holders' Response also attempts to cast aspersions on the Debtors by noting the Debtors' amendment of the Back-Up Bid details concerning the outcome of the RCR III Properties' Auction. The reason that, on December 22, 2014, the Debtors filed the Revised RCR III Schedule, as defined in the Holders' Response, is that the undersigned counsel, Jed Donaldson, committed a typographical error when transposing the data from one document containing the results of the RCR III Auction into the draft Preliminary Sale Motion.

20. Originally, the identities of RCR III bidder's numbers were transposed in error as to the bidder's corresponding identity, dollar amount, and applicable parcel. Upon receipt of communications from certain of those bidders, the Debtors prepared and filed the Revised RCR III Schedule.

**B. The Good Faith Purchaser Issue**

21. The Holders' Response asserts that the Holders' are entitled to the protections of §§ 363(m) and (n) under the Bankruptcy Code, and such provisions should be contained in any order approving the sale of the Properties to the respective Holder.

22. The Debtors incorporate by reference, as though fully restated herein, the statements and facts contained in the Debtors *Motion For A Finding Of Civil Contempt* (the

6

"Contempt Motion"), filed with the Court on January 5, 2015.  (Doc. No. 289.)

23. The Holders claim that "[t]he incontrovertible evidence supports a finding that the Holders have engaged in these bankruptcy cases and the entire process for the sale of the Properties in the utmost good faith, fair dealing and in a manner entirely consistent with the desires and requests of the Debtors and the rules established by the Debtor[s], and approved by this Court, for the conduct of the Auction." (Holders' Resp., at 12, ¶19.)  Although the Debtors cannot know the Holders' subjective good faith, the Debtors' objective view of the Holders' known conduct does not comport with such a finding.

24. The Holders' unwillingness to provide an accurate payoff severely prejudiced the Debtors' efforts to sell the Properties and to obtain a stalking-horse bidder.  The Holders unlawfully ignored the Debtors' repeated requests for payoff details.  The Holders failed to abide by the terms of an Order of this Court.

25. As more fully set out in the Contempt Motion, the Holders' failure to provide a payoff for each of the loans impaired the sale process and the Debtors' efforts to obtain a stalking-horse bidder for their properties.  Absent correct payoff figures, RCR opted not to pursue an offer from a third-party purchaser willing to act as a stalking-horse bidder for the RCR Properties at a price of $32,000,000.00 with certain stalking-horse protections.  (Contempt Motion, at 10-11, ¶22.)

26. The Debtors submit that the Holders' failure to adhere to applicable law during the sale process and comply with the Credit Bid Order evinces a lack of good faith within the meaning of § 363(m).  The Debtors repeatedly stressed to the Holders and before the Court the critical need to have an accurate, current payoff to be able to appropriately weigh the merits of contracting with any stalking-horse offer.  The Debtors repeatedly, since before and after the

Petition Date, requested from the Holders an accurate, current payoff statement as to each Debtor's loan. The Holders repeatedly failed or refused to do so.

27.    Instead, the Holders produced to the Debtors an erroneous, overstated payoff *after* the deadline established by the Credit Bid Order. Exacerbating that noncompliance, the Holders first informed the Debtors of this error shortly before commencement of the Auction of the entire portfolio of each Debtor's Properties, when their representative presented revised, reduced payoff figures for each Debtor's loan, the Auction Update, as defined in the Contempt Motion.

28.    The figures in the Auction Update are $30,637,372.78 and $6,520,222.32, as to RCR and RCR III, respectively. (Doc. No. 289, at 7, Ex. C.) The Auction Update, as to RCR's figure, was subsequently revised on December 22, 2014, verbally, by the Holders to the amount of $30,887,372.78. A letter from the Holders affirms this revised figure as to RCR.

29.    To the extent that the Holders intend to put on evidence in support of these contentions, the Debtors have the right to conduct appropriate discovery as to that evidence, including a deposition of any person that will offer "testimonial evidence" as suggested by the Holders. (Holders' Resp., at 13, ¶21; Decl. of A. Killick, Doc. Nos. 326, 327; Decl. of R. Rahman, Doc. Nos. 328, 329.)

30.    Based on these facts, the Debtors will not concede that the Holders have acted in good faith, as any agreement, express or implicit, to such a finding by the Debtors would likely preclude claims and causes of action arising under applicable law in connection with the facts alleged in the Contempt Motion and perhaps all other claims.

31.    Any finding of good faith by this Court, and the inclusion of such a finding in a sale order, likely precludes the Debtors' ability to assert and prosecute claims concerning the Holders' conduct in relation to the sale process and the Auction, including, without limitation,

8

the facts surrounding the Holders' failure to provide payoff figures to the Debtors. *See, e.g., West v. WRH Energy Partners LLC* (*In re Noram Resources, Inc.*), No. 08-38222, 2011 Bankr. LEXIS 5183 (Bankr. S.D. Tex. Dec. 30, 2011) (barring chapter 7 trustee from bring causes of action relating to defendant's conduct leading up to sale through *res judicata* where sale order found that defendant acted in good faith); *see also Hendrick v. Avent*, 891 F.2d 583, 589 (5th Cir. 1990), *cert. denied*, 498 U.S. 819 (1990) (holding that bankruptcy court order approving sale of assets is a final order for *res judicata* purposes); *Garcia v. Kirstien*, No. L-01-103, 2004 U.S. Dist. LEXIS 29751 (D. Md. Sept. 30, 2004); *cf. In re Grimm*, 168 B.R. 102 (Bankr. E.D. Va. 1994) (applying *res judicata* to order confirming chapter 11 debtor's plan of reorganization).

**C. The Tax Issue**

32. The Holders request that the "Holders [*sic*] should be required to reimburse the Holders in cash at the closing of the sale of the Properties" for the sum of $198,634.80, purportedly advanced by the Holders to municipal taxing authorities to satisfy 2014 Taxes, as defined in the Holders' Response. (Holders' Resp., at 5, 16.)

33. The Debtors have had little to no dialogue with the Holders concerning the issue raised in the Holders' Response regarding the 2014 Taxes, and, in light of the request for a continuance on the sale and these matters, any disposition as to the 2014 Taxes is necessarily not yet ripe. As such, the Debtors request that any ruling on the reimbursement of 2014 Taxes be held in abeyance.

**RELIEF REQUESTED**

34. Through this Reply, the Debtors seek the following relief, as set forth in the attached proposed Order:

  a. A continuance of the January 14, 2015 hearing until early February, 2015 (the "<u>Extension Period</u>"), at which time the Court would convene a status conference concerning the

    Preliminary Sale Motion and the three key issues raised by the Holders' Response;

b. Authorization for the Debtors and the Auctioneer to re-solicit bids, market the Properties, and seek offers from potential purchasers and/or potential stalking-horse bidders during the Extension Period; and

c. Authorization for the Debtors and the Auctioneer to represent to interested parties that the payoff figures for each respective Debtor are not greater than the following figures, through January 23, 2015:

    i) RCR:    $30,887,372.78, and

    ii) RCR III:   $6,520,222.32.

35. Through the Sale & Bid Procedures, as approved by the Court, the Debtors reserved their rights in the event that a situation such as this may arise, including "the right, in their business judgment to: (i) adjourn, continue, advance, or modify the dates and deadlines set forth in the Schedule, including the Sale Hearing; [and] (ii) terminate these Sale & Bid Procedures at any time to purse an alternative strategy for disposition of the Properties or reorganization of the Debtors that maximizes the value of the Debtors' estates . . . ." (Doc. No. 201, at 21-22.)

36. This relief is an exercise of the Debtors' fiduciary obligations to creditors and stakeholders and is warranted based on the facts and issues raised by the Holders' Response and this Reply. The Debtors submit that the Court has the authority to grant this relief, including, any modification to the Sale & Bid Procedures, because the Debtors are acting within the fiduciary responsibility to maximize the value of the Debtors' estates.

## **RESERVATION OF RIGHTS**

37. The Debtors reserve all rights concerning any and all claims, offsets, and defenses against the Holders, the Special Servicers, and any other parties-in-interest.

**WHEREFORE**, the Debtors respectfully request the entry of an Order awarding the relief requested in this Reply and granting such other and further relief as may be just and proper.

DATED: January 13, 2015                    RIVER CITY RENAISSANCE, LC
                                           RIVER CITY RENAISSANCE III, LC

                                           By: /s/ James K. Donaldson
                                                   Counsel

Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:    (804) 697-2000
Facsimile:    (804) 697-2100
*Counsel for the Debtors &*
*Debtors-In-Possession*

645247.v.4.doc

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 13, 2015 I caused to be served a copy of the foregoing to be served via electronic mail or notice on all parties that receive CM/ECF notification, including the following persons, including all necessary parties:

Robbin S. Rahman, Esq.  
Kilpatrick Townsend & Stockton LLP  
Peachtree Street, Suite 2800  
Atlanta, GA 30309

Mark D. Taylor, Esq.  
VLP Law Group  
1629 K. Street, NW, Suite 300  
Washington, DC 20006

Robert B. Van Arsdale, Esq.  
Office of the U.S. Trustee  
701 E. Broad St., Suite 4304  
Richmond, VA 23219

                        /s/ James K. Donaldson