**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

_____

|  |  |  |
|---|---|---|
| *In re*: | ) | Chapter 11 |
|  | ) | (Joint Administration) |
| River City Renaissance, LC, & | ) |  |
| River City Renaissance III, LC[1], | ) |  |
|  | ) |  |
| *Debtors*. | ) | Case No. 14-34080-KLP |

_____)

**MOTION FOR ORDER AS TO RCR III (I) APPROVING SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

River City Renaissance, LC ("RCR") and River City Renaissance III, LC ("RCR III"; collectively, the "Debtors"), as debtors and debtors-in-possession, through counsel and pursuant to 11 U.S.C. §§ 105(a), 363, and 365 and Rules 2002, 3003, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), in accordance with the Sale & Bid Procedures, the Sale & Bid Procedures Order, the Assumption Procedures, the Assumption Procedures Order, the Credit Bid Order, and the Re-Solicitation Order, each as defined below, file this Motion for Order as to RCR III (I) Approving Sale Of Assets Free And Clear Of Liens, Claims, Encumbrances, And Interests; (II) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (III) Granting Related Relief the "Motion") seeking approval of the sale of all or substantially all of RCR III's real property assets, and associated personal property, free and clear of liens, claims, and encumbrances, pursuant to a proposed Order (the "RCR III Sale Order") to be filed with the Court shortly hereafter.  In support of this Motion, the Debtors state as follows:

---

[1] The final four digits of the federal tax ID numbers for River City Renaissance, LC and River City Renaissance III, LC, respectively, are 8910 and 8102.

## PRELIMINARY STATEMENT

1.      The Debtors filed these chapter 11 cases in order to pursue an orderly liquidation of their respective real property assets, comprised of 29 residential apartment buildings throughout the City of Richmond (collectively, the "Properties"[2]).  Through this Motion, which is premised, in part, on the relief granted in the Sale & Bid Procedures Order, the Assumption Procedures Order, the Credit Bid Order, and the Re-Solicitation Order, the Debtors seek approval of (i) the sale of the RCR III Properties to Bellona Arsenal Farm Associates, LLC (the "Buyer") pursuant to 11 U.S.C. § 363; and (ii) the assumption and assignment of the residential lease agreements (the "Leases") between RCR III and current tenants at the RCR III Properties (the "Tenants") pursuant to 11 U.S.C. § 365.

## BACKGROUND AND PROCEDURAL HISTORY

2.      On July 30, 2014 (the "Petition Date"), each Debtor filed with the Court a voluntary petition seeking relief pursuant to chapter 11 of title 11 of the United States Code (the "Code").

3.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O), and jurisdiction is proper before the Court pursuant to 28 U.S.C. § 1334(a).  Venue is proper before the Court pursuant to 11 U.S.C. §§ 1408 and 1409.

4.      The Debtors are each Virginia limited liability companies, registered with the Virginia State Corporation Commission to transact business within the Commonwealth of Virginia, each having a principal place of business in the City of Richmond, Virginia.  The Debtors remain in possession of their estates as debtors-in-possession pursuant to 11 U.S.C. §§

---

[2] **Schedule A**, attached hereto, provides a list of the Properties by address and legal description owned by RCR III, the "RCR III Properties".  As defined, the "RCR III Properties" shall include all associated personal property, fixtures, and appliances and warranties, located on, within, or used in connection with the Properties that are owned by RCR III.

1107 and 1108.  The Debtors incorporate by reference, as though fully restated herein, the facts and statements contained in the Declaration of Joseph J. Luzinski, the primary designee on behalf of the Debtors and a principal of the Debtors' Liquidating Representative (the "Liquidating Representative").  (Doc. Nos. 7, 37, as modified.)

5.    On information and belief, on or about January 4, 2006, RCR III executed a consolidated promissory note in favor of Wachovia Bank, N.A. in the principal sum of $6,300,000.00 (generally, the "RCR III Loan").  After assignments of the RCR III Loan, U.S. Bank National Association, as trustee, successor-in-interest to Bank of America, N.A., as trustee, successor to Wells Fargo Bank, N.A., as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C23 (the "RCR III Holder") is acting by and through CWCapital Asset Management LLC in its capacity as special servicer (the "Special Servicer").

6.    On October 15, 2014, the Court entered that certain "*Order Under 11 U.S.C. §§ 327(a) and 329 Authorizing Employment And Retention Of Development Specialists, Inc. As Liquidating Representative For The Debtors*", which, in part, approved the Debtors' retention of Development Specialists, Inc. for which Joseph J. Luzinski is the primary designee, as the Liquidating Representative.  (Doc. No. 148.)  The Liquidating Representative is authorized to make operational decisions on the Debtors' behalf, including, without limitation, review and approval of the Sale of the RCR III Properties.

7.    On November 6, 2014, the Court entered that certain "*Interim Order (I) Approving Sale And Bid Procedures; (II) Approving The Form And Manner Of Notice; And (III) Granting Related Relief*" (the "Sale & Bid Procedures Order"), which, in part, approved the Sale & Bid Procedures and the Sale Notice that governed the auction of the Debtors' Properties that

commenced on December 18, 2014 (the "<u>Auction</u>").  (Doc. No. 201.)

8.      On December 5, 2014, the Court entered that certain "*Order (I) Approving Lease Assumption And Assignment Procedures; (II) Approving The Form And Manner Of Notice; And (III) Granting Related Relief*" (the "<u>Assumption Procedures Order</u>"), which approved the Assumption Procedures, the Assumption, Assignment, & Cure Notice, and the Assignment Schedule, each as defined in the Assumption Procedures Order.  (Doc. No. 248.)

9.      On December 5, 2014, the Court entered that certain "*Order Determining Credit Bid Rights Of Holders*" (the "<u>Credit Bid Order</u>"), which, in part, determined, conditioned, and established the credit-bid rights of the Holders[3] at the Auction.  (Doc. No. 250.)

10.     On December 18, 2014, the Debtors commenced the Auction in order to facilitate the sale of all of the Debtors' Properties in accordance with the Sale & Bid Procedures and the Sale & Bid Procedures Order (generally, the "<u>Sale</u>").

11.     On January 16, 2015, the Court entered that certain "*Order (I) Authorizing Continuance; (II) Authorizing Amendment To Sale & Bid Procedures; And (III) Granting Related Relief*" (the "<u>Re-Solicitation Order</u>"), which granted to the Debtors the express authority to re-solicit bids for the purchase of the Properties in order to determine the market interest and willingness of interested parties to submit bids.  (Doc. No. 337, at 3.)

12.     The Debtors submit that, to date and to the extent applicable, the Debtors have complied with the Sale & Bid Procedures, the Sale & Bid Procedures Order, the Assumption Procedures, the Assumption Procedures Order, the Credit Bid Order, and the Re-Solicitation Order in all respects.

---

[3] The "<u>Holders</u>" are: (1) U.S. Bank National Association, as trustee, successor-in-interest to Bank of America, N.A., as trustee, successor to Wells Fargo Bank, N.A., as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2005-C22, by and through the Special Servicer; and (2) the RCR III Holder, by and through the Special Servicer, each as defined below.

## RELIEF REQUESTED

13.    Through this Motion, the Debtors seek entry of a sale order that includes standard terms and provisions, as well as the following:

a. Approving the Debtors' execution of the Agreement for Purchase and Sale of Real Property, River City Renaissance III, LC and that certain First Addendum to Agreement for Purchase and Sale of Real Property, River City Renaissance III, LC (the "Sale Agreement"; **Exhibit 1**, attached hereto) for the purchase and sale of the RCR III Properties to the Buyer, which Sale Agreement is and shall be subject to higher and better offers, in form substantially similar to the form attached to this Motion;

b. Approving the Debtors' sale of the RCR III Properties to the Buyer free and clear of all liens, claims, and encumbrances pursuant to 11 U.S.C. § 363, except for Permitted Exceptions, as defined in the Sale Agreement, with all liens, claims, interests, and encumbrances to attach to the proceeds thereof, except as set forth below in this paragraph;

c. Approving the Debtors' assumption of the Leases pertaining to the RCR III Properties, and assignment of those Leases to the Buyer pursuant to 11 U.S.C. § 365, and approving the Cure Amount scheduled and due, if any, for each of the Leases;

d. Approving the payment of Customary and Reasonable Closing Costs, as defined in the Sale & Bid Procedures Order;

e. In the event that the Debtors accept and consummate a sale of the RCR III Properties at a purchase price that exceeds Buyer's purchase price by an amount of no less than $25,000.00, then the Debtors seek Court approval, without notice or further hearing, of the payment of up to $25,000.00 to reimburse the Buyer's reasonable out-of-pocket costs and expenses incurred by Buyer, including, without limitation, appraisal and loan application fees; and

f. Approving payment to the RCR III Holder, at closing, of (i) the outstanding principal balance due under the RCR III Loan; (ii) outstanding non-default interest due on the RCR III Loan at the regular, contract rate of 5.72%; and (iii) any undisputed expenses, costs, and fees (the "Undisputed PPAs"[4]) incurred by the Special Servicer, defined below, as follows:

i)      Principal: $5,757,555.15;

ii)     Non-Default Interest: $437,631.52, as of February 17, 2015 with interest accruing thereafter on the principal amount at a rate of 5.72%; and

iii)    Undisputed PPAs: such expense amounts disclosed by the RCR III Holder to the Debtors and by the Debtors, thereafter, to the Court that are undisputed.

Except as may be set forth in the RCR III Sale Order, nothing herein, shall be construed as a request (1) for a waiver of any person's or entity's right to request disbursement of

---

[4] PPA is an acronym for "protective property advance."

the remaining proceeds for any purpose whatsoever; or (2) to enlarge or diminish the rights and claims of any person or entity as to the proceeds derived from the sale of the RCR III Properties.

## AUTHORITY

14.    The Debtors' decisions to sell the RCR III Properties free and clear to the Buyer and to assume and assign to the Buyer the Leases are subject to the business judgment rule, and each decision represents an exercise of the Debtors' sound business judgment.

### A. Authorization Of The Sale Under 11 U.S.C. § 363

15.    Section 363(b)(1) of the Code empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1).  A debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based on a sound business purpose.  *See Comm. Of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070-71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to § 363(b)); *In re W.A. Mallory Co.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales." (citing *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)).

16.    The business judgment rule is met "when the following elements are present: (1) a business decision, (2) disinterestedness, (3) due care, (4) good faith, and (5) according to some courts and commentators, no abuse of discretion or waste of corporate assets."  *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (internal quotations omitted); *see also W.A. Mallory Co.*, 214 B.R. at 836 (discussing similar requirements for a § 363(b) sale under the business judgment rule).  "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *Comm. of Asbestos-Related Litigants*

*and/or Creditors v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

17.    Courts in this and other circuits have opted not to interfere with corporate decisions "unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion." *Lubrizol Enters. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985) (applying business judgment rule to debtor's decision to reject executory contract); *see also In re Integrated Res. Inc.*, 147 B.R. at 656.  The Sale of the RCR III Properties to the Buyer will maximize creditor recoveries during these chapter 11 cases, which also helps to ensure that the completion of these chapter 11 cases in a timely manner.

18.    Under § 363(f), the debtor-in-possession may proceed with a sale under § 363(b) where only one of five possible elements is satisfied.  *See* 11 U.S.C. § 363(f)(1)-(5).   In particular, § 363(f)(2) states that "[t]he trustee may sell property under subsection (b) . . . free and clear of any interest in such property of an entity other than the estate, only if . . . such entity consents." 11 U.S.C. § 363(f)(2).

19.    On information and belief, the RCR III Holder, acting by and through CWCapital Asset Management LLC in its capacity as the Special Servicer,[5] will not object to the Sale of the RCR III Properties to the Buyer based on the price, terms, and provisions set forth in the Sale Agreement, and based on paragraph 13(f), above.

20.    In the event that the RCR III Holder, acting by and through the Special Servicer, does not consent or objects to the Sale of the RCR III Properties to the Buyer based on the price,

---

[5] The "RCR III Holder" is: U.S. Bank National Association, as trustee, successor-in-interest to Bank of America, N.A., as trustee, successor to Wells Fargo Bank, N.A., as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C23 ("2006 Trust"), by and through CWCapital Asset Management LLC, in its capacity as special servicer (the "Special Servicer").

terms, and provisions set forth in the Sale Agreement, and based on paragraph 13(f), above, the

Debtors submit that approval of the the Sale to the Buyer is justified and meets the requirements

of 11 U.S.C. § 363(f), including, without limitation, subsection (f)(4).

21.     The Sale of the RCR III Properties to the Buyer, thus, represents an exercise of

the Debtors' sound business judgment that comports with the applicable requirements of the

Bankruptcy Code, including, without limitation, 11 U.S.C. § 363(f).

22.     In the event that an offer for the acquisition of the RCR III Properties, which is

higher or better than the Buyer's offer and Sale Agreement, is presented to RCR III, RCR III

reserves all its rights consistent with its fiduciary obligations to review and consider such an

offer.

23.     Nothing in this Motion shall be construed as a modification, enlargement, or

diminution of the RCR III Holder's credit bid rights as established by Court order, including the

Credit Bid Order.

**B. Reimbursement Of Buyer's Expenses**

24.     Upon Court approval of the Sale Agreement and upon the consummation of a sale

to an entity other than the Buyer at a price in excess of $25,000.00 greater than the Buyer's

purchase price, which initial overbid must exceed the purchase price by no less than $50,000.00,

the Debtors request the authorization, but not the direction, to pay to the Buyer up to $25,000.00

directly from the proceeds of a sale to another purchaser for reimbursement of actual, reasonable,

out-of-pocket costs and expenses incurred by the Buyer.    Break-up fees, expense

reimbursements, and other forms of bid protections encourage potential purchasers to invest the

requisite time, money, and effort to negotiate with a debtor and perform the necessary due

diligence attendant to the acquisition of a debtor's assets, despite the inherent risks and

uncertainties of the chapter 11 process.  *See., e.g., In re Ryan*, 261 B.R. 867, 869 (Bankr. E.D. Va. 2001) ("Bankruptcy courts allow break-up fees and related compensation . . . [because] the initial offeror provides a valuable service by establishing a minimum price for the assets to be sold and in creating a market for the assets.").

25.     Bid protections benefit a debtor's estate in two instances.  First, a break-up fee or expense reimbursement may be necessary to preserve the value of the estate if assurance of the fee "promote[s] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited."  *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 537 (3d Cir. 1999).  Next, if the break-up fee and expense reimbursement induces a bidder to research the value of the debtor and convert that value to a dollar figure on which other bidders may rely, then the bidder may have provided to the estate a benefit by increasing the likelihood that the price at which the debtor is sold reflects its true worth.  *Id.*  The Debtors submit that an expenses reimbursement of up to $25,000.00 to be paid to the Buyer in the event that the Buyer's purchase price is topped will confer a benefit to the Debtors' estates.

26.     Last, this reimbursement is fair and reasonable in amount.  There is no percentage break-up fee proportionate to the purchase price.  Here, the Debtors only propose to pay to the Buyer an amount not greater than $25,000.00 in order to reimburse the Buyer for out-of-pocket costs and expenses incurred in the event that the another purchaser submits a topping bid, which bid must exceed the purchase price by no less than $50,000.00 and result in a closed transaction.

## C. Assumption And Assignment Of The Leases

27.     The value and price of the RCR III Properties is maximized because the RCR III Properties are operating as going concerns with approximately 118 current Tenants occupying

approximately 77 units across all the RCR III Properties. The rents derived from the Leases and the Tenants comprise significant revenues that will inure to the benefit of the Buyer. Thus, the assumption and assignment of the Leases to the Buyer ensures a continuing source of income from the RCR III Properties with minimal effect on the Tenants during any transition of ownership. Therefore, the Debtors submit that there exists a sound business purpose to authorize assumption and assignment of the Leases to the Buyer, in accordance with the Bankruptcy Code and the Assumption Procedures Order.

28.    Section 365(a) of the Code authorizes a debtor-in-possession to assume and assign an executory contract or unexpired lease subject to Court approval. *See* 11 U.S.C. § 365(a). Section 365(b) of the Code requires that the debtor-in-possession satisfy certain requirements at the time of assumption if a default exists under the contract to be assumed. *See* 11 U.S.C. § 365(b).

29.    Section 365(a) of the Code provides, in pertinent part, that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). In enacting § 365, Congress intended to allow a debtor to assume those leases and contracts that benefit the estate and to reject those that are of no value or are burdensome to the estate. *See In re Fas Mart Convenience Stores, Inc.*, 296 B.R. 414, 420 (Bankr. E.D. Va. 2002); *see also Cinicloa v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir. 2001); *In re Whitcomb & Keller Mortgage Co., Inc.*, 715 F.2d 375, 379 (7th Cir. 1983). For the reasons set forth above, the assumption and assignment of the Leases enhances and maximizes the value of the Debtors' bankruptcy estates through the Sale.

30.    Section 365(b) requires, in pertinent part, that the debtor-in-possession cure any existing defaults, compensate or provide adequate assurance of compensation resulting from any

cure obligation, and provide adequate assurance of future performance under the applicable contract or lease.  *See* 11 U.S.C. § 365(b)(1).

31.     As set forth in the Assumption, Assignment, & Cure Notice and the Cover Letter, each as defined in the Assumption Procedures Order and as served on the Tenants, the proposed Cure Amount owed to each Tenant is zero dollars ($0.00), due to the nature of the Debtors' obligations to the Tenants, which is to provide access to an apartment unit and common areas. Those obligations are not monetary in nature.

32.     Under the terms of the Sale Agreement, the Buyer will assume all security deposit obligations that may be due in the future to the Tenants, and the Buyer has and will provide adequate assurance, including the financial wherewithal, of such performance in accordance with the Bankruptcy Code.  At or concurrent with closing, the Debtors request authority for RCR III or CompassRock Real Estate, LLC, as applicable, to transfer to the Buyer all funds held or maintained in connection with security deposits for leases at the RCR III Properties.

33.     The decisions to assume or reject executory contracts or unexpired leases are matters within the "business judgment" of the debtor.  *See Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.* (*In re Lubrizol Enters.*), 756 F.2d 1043, 1046-47 (4th Cir. 1985) (when reviewing a debtor's decision to assume or reject a contract, courts "must start with the proposition that the bankrupt's decision . . . is to be accorded the deference mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate debtors") *cert. denied*, 475 U.S. 1057 (1986); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984).  Accordingly, courts approve the assumption or rejection of an executory contract or unexpired lease unless evidence is presented that the debtor's decision to assume or reject was "so manifestly unreasonable that it could not be based on sound business

judgment, but only on bad faith, or whim or caprice." *Lubrizol Enters.*, 756 F.2d at 1047.

34.     Sufficient business justification exists to merit approval of the proposed assumption and assignment of the Leases.  The Debtors request that the Court approve the assumption and assignment of the Leases to the Buyer.

## REQUEST FOR WAIVER OF STAY

33.     Through this Motion, the Debtors seek a waiver of any stay imposed on the effectiveness of any order approving this Motion pursuant to any Bankruptcy Rule, Local Rule, or the Code, including, without limitation, Rules 6004 and 6006 of the Bankruptcy Rules.  The Debtors require, and thereby request, immediate relief in order to move forward expeditiously with the Sale.  The Debtors submit that cause exists to justify a waiver of respective the 14-day stays imposed by Rule 6004 and 6006 and any other applicable rule or law.

## WAIVER OF MEMORANDUM OF LAW

34.     The Debtors request a waiver of Local Bankruptcy Rule 9013-1(G), which requires a separate memorandum of points and authorities to accompany a motion.

## NOTICE

35.     The Debtors intend to provide separate Notice of this Motion and any subsequently scheduled hearing on all necessary parties and in accordance with the Sale & Bid Procedures, as applicable.

36.     Further, all parties-in-interest having previously received prior notice of the Sale & Bid Procedures, the Sale & Bid Procedures Order, the Assumption Procedures, and the Assumption Procedures Order, through the Sale Notice and the Assumption, Assignment, & Cure Notice, the Debtors submit that notice is adequate, proper, and sufficient under the circumstances, with no further notice being necessary.  To the extent applicable, the Debtors

request relief from the requirements of Rule 2002 of the Bankruptcy Rules, and any other applicable Bankruptcy Rules or Local Rules of the Court.

**WHEREFORE**, the Debtors respectfully request the entry of an Order granting the relief set forth in this Motion and granting such other and further relief as may be just and proper.

DATED: February 20, 2015                    RIVER CITY RENAISSANCE, LC
                                            RIVER CITY RENAISSANCE III, LC

                                            By: /s/ James K. Donaldson
                                                    Counsel

Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:     (804) 697-2000
Facsimile:     (804) 697-2100
*Counsel for the Debtors &*
*Debtors-In-Possession*

652750.v.6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 20, 2015, I caused to be served a true and accurate copy of the foregoing, via CM/ECF, or via e-mail, on the following parties:

Robbin S. Rahman, Esq.
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309-4528

Mark D. Taylor, Esq.
VLP Law Group
1629 K. Street, NW, Suite 300
Washington, DC 20006

Robert B. Van Arsdale, Esquire
Office of the U.S. Trustee
701 E. Broad St., Suite 4304
Richmond, VA 23219

/s/ James K. Donaldson

# SCHEDULE A - PROPERTY DESCRIPTIONS

## 110 NORTH BOULEVARD:

All that certain lot, piece or parcel of land, with improvements thereon and appurtenances thereto belonging, known as 'BELMONT APARTMENTS', lying and being in the City of Richmond, Virginia, situated on the western line of the Boulevard between Floyd and Grove Avenues, designated as No. 108-110 North Boulevard and being more particularly described as follows:

BEGINNING on the western line of the Boulevard, 118 feet North of the northern line of Floyd Avenue; thence running northwardly along the western line of Boulevard and fronting thereon 73 feet and 9 Inches; thence from said front extending back westwardly between parallel lines, 147 feet and 9 1/2 inches on the northern line and 148 feet and 3 1/2 inches on the southern line to a court and alley in the rear and being shown upon the map made Maya, 1921 by T. Crawford Redd & Bro., and recorded in the Clerk's Office of the Circuit Court of the City of Richmond, Division I, in Deed Book 273-B, Page 208.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, LLC., dated March 12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-5977.

## 705 -707 NORTH BOULEVARD:

All that certain lot, piece or parcel of land, lying and being in the City of Richmond, Virginia, together with all improvements thereon and appurtenances thereto related and generally known as No. 705 and 707 North Boulevard,and more particularly shown by plat of survey prepared by Charles H. Fleet and Assoc., Certified Surveyors, dated March 13, 1973, recorded in Deed Book 682-D, Page 78, as follows:

Commencing at a point along the eastern line of North Boulevard, which point is 74.49 feet southwardly from the intersection of the eastern line of North Boulevard and the southern line of West Grace Street. thence eastwardly through an alley in common, 103.63 feet to a rod along the northern line of an alley, 10 feet wide, (which rod is 72.5 feet southwardly from the south line of West Grace Street); thence along the said alley southwardly 57.50 feet to a point marking the intersection of the western line of said 10 foot alley with the northern line of a 15 foot alley; thence along the northern line of said 15 foot alley, 90.03 feet to a spike marking the intersection of the northern line of said 15 foot alley with the eastern line of North Boulevard; thence along the eastern line of North Boulevard 59.08 feet to the Point of Commencement.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, LLC., dated March 12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-5977.

## 2903 MONUMENT AVENUE:

All that certain piece or parcel of land, lying and being in the City of Richmond, State of Virginia, together with all improvements thereon and appurtenances thereto belonging, known as 2903 Monument Avenue and more particularly described as follows, to wit:

Beginning at a point on the south line of Monument Avenue, 30 feet west of Colonial Avenue (formerly Deep Run Street); thence running westwardly along the south line of Monument Avenue and fronting thereon 44 feet; thence running back southerly from said front between parallel lines to a distance of 130 feet, more or less, to a public alley in the rear.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, LLC., dated March12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-5977.

## 3224 STUART AVENUE:

All that certain lot, piece or parcel of land, lying and being in the City of Richmond, Virginia, together with all the Improvements thereon known as "The Hayes Apartment", and designated as 3224 Stuart Avenue, and more particularly described as follows:

Beginning on the north line of Stuart Avenue 57.5 feet east of Tilden Street, thence running eastwardly along and fronting on the north line of Stuart Avenue 57.5 feet; thence extending back between nearly parallel lines 130 feet to an alley, 12 feet wide, on which it fronts 57.49 feet.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, LLC., dated March12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-597

**3228 STUART AVENUE**:

That parcel of land in the City of Richmond, Virginia, situated on the northern line of Stuart Avenue and on the eastern line of Tilden Avenue, together with all improvements on said parcel and appurtenances thereto belonging, known as "The Tilden Apartments", also known as No. 3228 Stuart Avenue, and bounded as follows, to wit:

Beginning at the northeast corner of Stuart Avenue and Tilden Street, thence running eastwardly along and fronting on the northern line of Stuart Avenue, 57.5 feet; thence extending back northwardly between the eastern line of Tilden Street and a line parallel therewith 130 feet to an alley 12 feet wide.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, LLC., dated March12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-5977.

**3408 PARK AVENUE**:

That certain parcel of land with improvements thereon situated in the City of Richmond, Virginia, known as 3408 Park Avenue, and further described as follows:

Commencing at a point on the north line of Park Avenue 272.36 feet west of the western line of Roseneath Road; thence running westwardly along and fronting on the northern line of Park Avenue, 61.58 feet; thence extending back northwardly from said front between parallel lines 140 feet to an alley in the rear, 15 feet wide.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, LLC., dated March 12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-5977

## **EXHIBIT 1 - SALE AGREEMENT**

## AGREEMENT FOR PURCHASE AND SALE OF REAL PROPERTY

### RIVER CITY RENAISSANCE III, LC

THIS AGREEMENT FOR PURCHASE AND SALE OF REAL PROPERTY (this "Agreement") is made as of the 9th day of February, 2015 (the "Effective Date"), by and between RIVER CITY RENAISSANCE III, LC, a Virginia limited liability company ("Seller"), and Bellona Arsenal Farm Associates, LLC, a Virginia Limited Liability Company ("Purchaser"), provides as follows

### RECITALS

A.      Seller owns certain parcels of real property located in the City of Richmond, Virginia, described on the attached Exhibit A, together with any and all improvements thereon and any and all rights, interests, easements, and appurtenances now or hereafter belonging thereto (collectively, the "Property") and briefly described as follows:

| Address: | GPIN: |
|----------|-------|
| 110 North Boulevard | W0001245009 |
| 3408 Park Avenue | W0001619020 |
| 705 - 707 North Boulevard | W0001210001 |
| 3228 Stuart Avenue | W0001464036 |
| 3224 Stuart Avenue | W0001464034 |
| 2903 Monument Avenue | W0001290007 |

B.      Seller is a debtor-in-possession in a chapter 11 case now pending in the United States Bankruptcy Court for the Eastern District of Virginia (the "Court"). On October 22, 2014, the Debtors filed with the Court their amended motion (the "Motion") seeking entry of an Order (I) Approving Sale And Bid Procedures; (II) Approving The Form And Manner Of Notice; And (III) Granting Related Relief pursuant to 11 U.S.C. §§ 105(a) and 363 and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure and Local Rule 6004-2 of the Local Rules for the Court. (Doc. No. 159.)

C.      On November 6, 2014, the Court entered an Order granting the Motion and authorized the Debtors to conduct a sale and marketing process designed to procure a Sale of the Debtors' real properties pursuant to the Sale and Bid Procedures attached to the Order (the "Sale & Bid Procedures"). (Doc. No. 201.) The Sale & Bid Procedures are incorporated herein by reference and Purchaser acknowledges receipt of a copy of the Sale & Bid Procedures.

D.      On January 16, 2015, the Court entered an Order (i) Authorizing Continuance; (ii) Authorizing Amendment to Sale & Bid Procedures; and (iii) Granting Related Relief (the "Resolicitation Order").

E.      As provided in the Sale & Bid Procedures, Purchaser has signed, and delivered to Seller, a confidentiality and indemnity agreement which is incorporated herein by reference.

Exhibit A – Page 1

F.      Pursuant to the Sale & Bid Procedures and the Resolicitation Order, Seller desires to sell the Property to Purchaser and Purchaser desires to purchase the Property from Seller on the terms and conditions set forth hereinafter.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and for other good and valuable consideration, including the recitals above, the receipt and sufficiency of which are hereby mutually acknowledged, the parties hereto covenant and agree as follows:

1.      _Purchase Price_.  Subject to adjustments as hereinafter provided, the purchase price (the "**Purchase Price**") for the Property shall be Six Million, Four Hundred Thousand and 00/100 Dollars ($6,400,000.00).  The Purchase Price shall be payable in United States currency by way of federal wire transfer or other immediately available funds at Closing (as hereinafter defined).

2.      _Deposit_.  Purchaser has delivered to Fidelity National Title Insurance Company (the "Escrow Agent"), by way of federal wire transfer (or, if approved by the Seller, other immediately available funds), the sum of ~~Three~~ Hundred Thousand and 00/100 Dollars ~~($300,000.00)~~ as an earnest money deposit and partial down payment of the Purchase Price for the Property (the "Deposit").  Escrow Agent shall hold the Deposit in a separate, non-interest-bearing federally-insured account.  If the Closing occurs as contemplated herein, Purchaser will receive the benefit of the Deposit as a credit against the Purchase Price at Closing.  Otherwise, the Deposit shall be delivered to Seller or refunded to Purchaser by Escrow Agent in accordance with the terms of this Agreement.

3.      _Due Diligence Materials; Title Matters_.  Pursuant to the confidentiality and indemnity agreement, Seller has had access to certain due diligence materials and confidential information contained in the Data Room (as defined in the Sale & Bid Procedures), including a commitment for an ALTA policy of owner's title insurance covering the Property issued by Fidelity National Title Insurance Company and having an effective date of December 1, 2014 (the "Title Commitment"; **Exhibit B**, attached hereto).  Seller has completed any and all due diligence on the Property including, but not limited to, any environmental assessments or investigations, and is ready to proceed to Closing, without objection to the title, including without objection to the "Special Exceptions" noted on the Title Commitment and all properly recorded and enforceable easements, rights of way, permissive or restrictive covenants, and all valid tenancies (collectively, the "Permitted Exceptions").

4.      _Conveyance of the Property to Purchaser_.  Conveyance of the Property by Seller to Purchaser shall be by a special warranty deed (the "Deed") conveying to Purchaser good and marketable fee simple and insurable title to the Property, without exception except as to (i) the lien of local real estate taxes and assessments not yet due and payable, and (ii) the Permitted Exceptions. The Deed shall convey and describe the Property using the same legal description by which Seller obtained title to the Property.  The form of the Deed is attached hereto as **Exhibit C** and made a part hereof.

5.    <u>Closing</u>.  Consummation of the sale by Seller and the purchase by Purchaser of the Property (the "Closing") shall take place (i) by wire transfer and overnight mail, or (ii) at the offices of Seller's attorney or at such other location as the parties may mutually agree upon by the date which is no later than March 26, 2015, TIME BEING OF THE ESSENCE unless otherwise agreed to in writing by the parties.  Possession of the Property shall be delivered to Purchaser at Closing, subject to the rights of tenants in possession to use of the Property.  At Closing, Purchaser shall pay to Seller the Purchase Price for the Property, less the Deposit, and Seller shall deliver to Purchaser (i) the Deed, (ii) an executed 1099 real estate information form, (iii) an executed standard certificate as to non-foreign status in compliance with Section 1445 of the Internal Revenue Code, and (iv) such additional documents and information as may be customary in real estate transactions in the Commonwealth of Virginia, but not an affidavit as to mechanic's liens and possession.

6.    <u>Costs</u>.  Each party hereto shall pay all of its own costs and expenses in connection with this transaction, with Seller to pay the costs of preparing the Deed, the grantor's tax imposed on the Deed pursuant to the Virginia Code, and its own attorneys' fees.  Purchaser shall pay all costs and expenses it incurs in connection with this transaction, including, without limitation, its own attorneys' fees, the cost of performing any inspections of the Property, any title insurance premiums, the grantee's taxes, and any other transfer taxes or fees other than the grantor's tax imposed on the Deed pursuant to the Virginia Code, and any other recording fees associated with the recordation of the Deed.  All real estate taxes and assessments, both general and special, and any other sums normally and usually prorated between sellers and purchasers in real estate transactions in the Commonwealth of Virginia, including without limitation, any prepaid leasing commissions, and utility charges shall be prorated between Purchaser and Seller as of the date of Closing, with Seller being deemed the owner until midnight the day before the Closing date, and Purchaser being the owner on the day of Closing; provided however, that rents shall not be prorated and Seller shall retain any and all rental amounts received prior to Closing. The provisions of this paragraph shall survive the Closing.

7.    <u>Risk of Loss</u>.  All risk of loss as a result of any exercise of the power of eminent domain or by reason of fire or other casualty shall remain on Seller until Closing.  In the event of any taking of the Property or any part thereof by an exercise of the power of eminent domain or by purchase in lieu thereof, or in the event of any loss or damage to the Property by reason of fire or other casualty, Purchaser may, at its option, either (i) terminate this Agreement and receive a refund of the Deposit from the Escrow Agent or (ii) waive the foregoing right to terminate this Agreement and purchase the Property as provided herein, in which event Seller shall assign to Purchaser its right to receive any and all condemnation awards or insurance proceeds relating to the Property, as applicable.

8.    <u>Representations and Warranties of Seller</u>.  Seller represents and warrants to Purchaser that (a) Seller is a limited liability company duly organized and validly existing under the laws of the Commonwealth of Virginia, (b) Seller has the appropriate limited liability company power and authority to enter into, execute and deliver this Agreement and to perform all of its duties and obligations under this Agreement, subject to the entry of the Sale Order; (c) subject to the entry of the Sale Order, neither the execution nor the delivery of this Agreement, nor the consummation of the purchase and sale contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement conflict with or will result in the

breach of any of the terms, conditions, or provisions of any agreement or instrument to which Seller is a party or by which Seller or any of its assets is bound, and (d) upon the entry of the Sale Order, this Agreement will be the legal, valid and binding obligation of Seller and will be enforceable against Seller in accordance with its terms, the Sale Order, or any other order entered by the Bankruptcy Court.

9.    Representations and Warranties of Purchaser. Purchaser represents and warrants to Seller that (a) Purchaser is a limited liability company duly organized and validly existing under the laws of the Commonwealth of Virginia, (b) Purchaser is authorized to do business in the Commonwealth of Virginia, (c) Purchaser has the power and authority to enter into, execute and deliver this Agreement and to perform all of its duties and obligations under this Agreement, (d) neither the execution nor the delivery of this Agreement, nor the consummation of the purchase and sale contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement conflict with or will result in the breach of any of the terms, conditions, or provisions of any agreement or instrument to which Purchaser is a party or by which Purchaser or any of its assets is bound, and (e) this Agreement is the legal, valid and binding obligation of Purchaser and is enforceable against Purchaser in accordance with its terms.

10.    Default by Purchaser. The parties hereto acknowledge and agree that, in the event Purchaser fails to close on the purchase of the Property in accordance with this Agreement or otherwise fails to comply in any material respect with any of its obligations under this Agreement to be performed before the Closing, Purchaser shall be responsible to Seller, at Seller's election, for (1) specific performance or Seller's actual damages resulting from Purchaser's breach of the Agreement and (2) all of Sellers resulting reasonable fees and costs, including reasonable legal fees; in which event the Deposit shall be applied to such damages, fees and costs. Except for a default by Purchaser under this Section 10, the Deposit shall be promptly returned to Purchaser in all other events (except to the extent it is to be applied to the Purchase Price hereunder).

11.    Default by Seller.  The parties hereto acknowledge and agree that, in the event Seller fails to close on the sale of the Property in accordance with this Agreement or otherwise fails to comply in any material respect with any of its other obligations under this Agreement to be performed before the Closing, Purchaser, as its sole and exclusive remedy, may elect to (i) terminate this Agreement and receive a refund of the Deposit from Escrow Agent; or (ii) subject to the entry of the Sale Order, bring an action for specific performance.

12.    Brokerage Commissions.    Subject to Court approval, Seller will pay a commission to Sperry Van Ness Auction Services, LLC and its affiliates (the "Seller's Broker"). Buyer has been represented by N/A (the "Buyer's Broker"). Seller and Purchaser represent and warrant each to the other that, except for the Seller's Brokers, they have not dealt with any brokers or other parties in connection with this transaction. In the event any other broker or other party makes a claim for a commission or finder's fee based upon the transaction contemplated by this Agreement, the party through whom said broker or other party makes its claim shall indemnify, defend and hold harmless the other party from said claims and all liabilities, costs and expenses related thereto, including reasonable attorneys' fees, which may be incurred by such other party in connection with such claim. The foregoing indemnification

obligations of each party shall survive Closing.

13.   Assignment.   This Agreement may only be assigned by Purchaser with the express consent of Seller, which consent shall not be unreasonably withheld if the assignee is an affiliate of Purchaser, and the Purchaser remains liable for the performance of this Agreement.

14.   Condition of the Property.   Purchaser acknowledges and agrees that Purchaser has agreed to acquire the Property from Seller in its current "AS IS, WHERE IS, WITH ALL FAULTS" condition, without any representation or warranty by Seller regarding the condition of the Property or the suitability of the Property for any purpose, either express or implied, subject to casualty and the condition of title required hereunder.   Notwithstanding anything to the contrary, Seller hereby agrees, through the Closing and at Seller's sole cost and expense, to provide all services and to continue to operate, manage and maintain the Property in the ordinary course of its business, so that the Property shall be in generally the same condition on the Closing as on the date hereof, reasonable wear and tear and damages from casualty excepted, and Seller further agrees not to enter into any leases or occupancy agreements, other than leases entered into in the ordinary course of business, nor create or permit any liens or encumbrances after the Effective Date, without Purchaser's prior written consent, in Purchaser's sole discretion.

15.   Notices.   All notices, demands, requests and other communications required or permitted hereunder shall be in writing and shall be delivered in person or sent by overnight courier or by First Class mail, return receipt requested, postage prepaid, and by email to the persons and at the addresses set forth below or to such other persons or addresses as the party entitled to such notice shall have specified by at least five (5) days' prior written notice given to the other party herein.

(i)   To Purchaser:

Bellona Arsenal Farm Associates, LLC
3816 Old Gun Road West
Midlothian, Virginia 23113
Phone:  (804) 320-1483; Fax: _____
Email:  ibewelsey@msn.com

With a copy to:

Old Republic National Title Insurance Company
1245 Mall Drive
North Chesterfield, Virginia 23229
Phone: (804) 897-5499; Fax: (804) 897-9679
Email:  kcreasman@oldrepublictitle.com
Attention: Kay M. Creasman

    (ii)    To Seller:

Development Specialists, Inc.
200 South Biscayne Boulevard, Suite 1818
Miami, Florida 33131
Phone: (305) 374-2717 ext. 1429; Fax: (305) 374-2718
Email: jluzinski@dsi.biz
Attention: Joseph J. Luzinski, Senior Vice President

With a copy to:

Robert H. Chappell, III, Esq.
Spotts Fain PC
411 E. Franklin Street, Suite 600
Richmond, Virginia 23219
Phone: (804) 697-2025; Fax: (804) 697-2125
Email: rchappell@spottsfain.com

All such notices, demands, requests and other communications shall be deemed to have been given upon the earlier of (i) delivery at the appropriate address specified above or (ii) the postmark date of mailing if sent by mail. Rejection or other refusal to accept or the inability to deliver because of a changed address of which no notice was given shall not invalidate the effectiveness of any notice, demand, request or other communication.

16.    <u>Escrow Agent Responsibilities</u>.

    A.    As provided in Paragraph 2 above, the Deposit shall be held by Escrow Agent in a separate, non-interest-bearing federally-insured account and shall not be commingled with escrow funds of others.

    B.    Without limitation, except for Escrow Agent's own negligence or willful misconduct, Escrow Agent shall not be liable for any loss or damage resulting from the following:

    (i)    The default, error, action or omission of any other party to the escrow;

    (ii)    Any loss or impairment of funds that have been deposited in escrow while those funds are in the course of collection or while those funds are on deposit in a financial institution if such loss or impairment results from the failure, insolvency or suspension of a financial institution; and

    (iii)    Any defects or conditions of title to any property that is the subject of this escrow, provided however that this limitation of liability does not limit or affect the liability of Escrow Agent under any title insurance policy which it has issued or may issue and that no title insurance liability is created by this agreement.

C.   In the event any party to the transaction that is the subject matter of this escrow shall tender any performance after the time when such performance was due, Escrow Agent may nevertheless proceed with its function under this escrow, including, without limitation, the delivery of documents and the disbursement of funds unless one of the parties to this escrow shall give to Escrow Agent a written direction to stop the further performance of Escrow Agent's functions hereunder. Except as otherwise provided herein, in the event of written notice of default, non-performance or dispute is given to Escrow Agent by any party, Escrow Agent will promptly notify all other parties of such notice. Thereafter, Escrow Agent is entitled to decline to disburse funds or to deliver any instrument or otherwise continue to perform its escrow functions, except on receipt of a mutual agreement of the parties in writing or upon an appropriate order of court and Escrow Agent may interplead the funds to the Court.

D.   Escrow Agent shall account to the parties for all funds received and disbursed hereunder at the time of final settlement and closing of this escrow. Upon completion of the disbursement of funds and delivery of instruments, Escrow Agent shall be released and discharged of its escrow obligations hereunder.

E.   In the event that litigation is initiated relating to this escrow, the parties hereto agree that Escrow Agent shall be held harmless from any reasonable attorneys' fees, court costs and expenses relating to that litigation to the extent that litigation does not arise as a result of Escrow Agent's fault. To that end, the parties hereto agree to indemnify Escrow Agent from all such reasonable attorneys' fees, court costs and expenses.

17.   Bankruptcy Issues.

A.   The obligation of Seller to sell and convey the Property to Purchaser, and the obligation of Purchaser to purchase the Property from Seller, are subject to the condition precedent that the Court shall have entered an order in the Bankruptcy Case (the "Sale Order") (i) approving this Agreement and the sale of the Property to Purchaser, free and clear of liens, claims and encumbrances other than the Permitted Exceptions, and (ii) authorizing and directing Seller to consummate the transactions contemplated by this Agreement. Promptly following the execution by the parties of this Agreement and the delivery by Purchaser to Escrow Agent of the Deposit, Seller shall designate Purchaser as the Prevailing Bidder and Seller will seek Court approval, pursuant to Section 363 of the Bankruptcy Code and the Sale & Bid Procedures, of this Agreement and the consummation of the transactions contemplated hereby and entry of the Sale Order. Purchaser shall cooperate with Seller in good faith to obtain entry by the Court of the Sale Order as soon as reasonably practicable. Purchaser acknowledges that, as required by applicable Bankruptcy law, until entry of the Sale Order this Agreement is subject to higher and better offers that Seller may obtain for the Property.

B.   To the extent of any inconsistency between this Agreement and the Sale & Bid Procedures and the Resolicitation Order, the Sale & Bid Procedures and Resolicitation Order shall govern.

18.    Irrevocability.  This Agreement shall be considered a Bid as provided in the Sale & Bid Procedures and shall be irrevocable through the conclusion of the final hearing on the Sale Order.

19.    Miscellaneous.

A.    Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and permitted assigns.

B.    Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the parties with respect to the transactions contemplated hereby and supersedes all prior agreements, arrangements and understandings relating to the subject matter hereof.

C.    Governing Law.  This Agreement shall be governed by, construed and enforced in accordance with, the laws of the Commonwealth of Virginia.

D.    Amendments.  This Agreement shall not be amended, supplemented or otherwise modified unless done by written agreement and executed by all of the parties.

E.    Interpretation.  For purposes of this Agreement, unless the context otherwise indicates, words in the singular number shall include words in the plural number, and vice versa, and words in one gender shall be deemed to include words in the other gender.  Paragraph headings used herein are for convenience only and neither limit nor amplify the terms of this Agreement.  In the event of a dispute, no inference shall be drawn as to this Agreement having been prepared by one party as opposed to the other party, nor shall this Agreement be construed against any party.

F.    Further Assurances.  Each party will execute and deliver to the other such documents and will take such other action as may be reasonably requested to consummate the transactions contemplated herein, to confirm or effectuate the sale of the Property pursuant to this Agreement, or to carry out the purposes of this Agreement.

G.    Counterparts.  This Agreement may be executed in any number of counterparts, signed by facsimile or electronic means, each of which shall be an original and all of which together shall constitute but one and the same instrument.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, each of the parties hereto has affixed its signature on the date(s) noted below.

SELLER:    RIVER CITY RENAISSANCE III, LC
a Virginia limited liability company

By: _____
Name: Development Specialists, Inc.
Title:  Liquidating Representative,
By:    Joseph J. Luzinski
Title:  Senior Vice President

Date: _____2/20/15_____

PURCHASER:    BELLONA ARSENAL FARM ASSOCIATES, LLC,
a Virginia limited liability company

By: _____
Name: _____
Title: _____

Date: ____2/16/15_____

The Escrow Agent is executing this Agreement for the sole purpose of acknowledging and agreeing to be bound by the terms of Paragraph 16 hereof.

ESCROW AGENT:    Fidelity National Title Insurance Company

By: _____
Name: _____
Title: _____

## EXHIBIT A TO AGREEMENT
## FOR PURCHASE AND SALE OF REAL PROPERTY

**110 NORTH BOULEVARD:** All that certain lot, piece or parcel of land, with improvements thereon and appurtenances thereto belonging, known as 'BELMONT APARTMENTS', lying and being in the City of Richmond, Virginia, situated on the western line of the Boulevard between Floyd and Grove Avenues, designated as No. 108-110 North Boulevard and being more particularly described as follows:

BEGINNING on the western line of the Boulevard, 118 feet North of the northern line of Floyd Avenue; thence running northwardly along the western line of Boulevard and fronting thereon 73 feet and 9 Inches; thence from said front extending back westwardly between parallel lines, 147 feet and 9 1/2 inches on the northern line and 148 feet and 3 1/2 inches on the southern line to a court and alley in the rear and being shown upon the map made Maya, 1921 by T. Crawford Redd & Bro., and recorded in the Clerk's Office of the Circuit Court of the City of Richmond, Division I, in Deed Book 273-B, Page 208.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, LLC., dated March 12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-5977.

**705 -707 NORTH BOULEVARD:** All that certain lot, piece or parcel of land, lying and being in the City of Richmond, Virginia, together with all improvements thereon and appurtenances thereto related and generally known as No. 705 and 707 North Boulevard,and more particularly shown by plat of survey prepared by Charles H. Fleet and Assoc., Certified Surveyors, dated March 13, 1973, recorded in Deed Book 682-D, Page 78, as follows:

Commencing at a point along the eastern line of North Boulevard, which point is 74.49 feet southwardly from the intersection of the eastern line of North Boulevard and the southern line of West Grace Street. thence eastwardly through an alley in common, 103.63 feet to a rod along the northern line of an alley, 10 feet wide, (which rod is 72.5 feet southwardly from the south line of West Grace Street); thence along the said alley southwardly 57.50 feet to a point marking the intersection of the western line of said 10 foot alley with the northern line of a 15 foot alley; thence along the northern line of said 15 foot alley, 90.03 feet to a spike marking the intersection of the northern line of said 15 foot alley with the eastern line of North Boulevard; thence along the eastern line of North Boulevard 59.08 feet to the Point of Commencement.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, LLC., dated March 12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-5977.

Exhibit C – Page 1

**2903 MONUMENT AVENUE:** All that certain piece or parcel of land, lying and being in the City of Richmond, State of Virginia, together with all improvements thereon and appurtenances thereto belonging, known as 2903 Monument Avenue and more particularly described as follows, to wit:

Beginning at a point on the south line of Monument Avenue, 30 feet west of Colonial Avenue (formerly Deep Run Street); thence running westwardly along the south line of Monument Avenue and fronting thereon 44 feet; thence running back southerly from said front between parallel lines to a distance of 130 feet, more or less, to a public alley in the rear.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, LLC., dated March12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-5977.

**3224 STUART AVENUE:** All that certain lot, piece or parcel of land, lying and being in the City of Richmond, Virginia, together with all the Improvements thereon known as "The Hayes Apartment", and designated as 3224 Stuart Avenue, and more particularly described as follows:

Beginning on the north line of Stuart Avenue 57.5 feet east of Tilden Street, thence running eastwardly along and fronting on the north line of Stuart Avenue 57.5 feet; thence extending back between nearly parallel lines 130 feet to an alley, 12 feet wide, on which it fronts 57.49 feet.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, LLC., dated March12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-597

**3228 STUART AVENUE:** That parcel of land in the City of Richmond, Virginia, situated on the northern line of Stuart Avenue and on the eastern line of Tilden Avenue, together with all improvements on said parcel and appurtenances thereto belonging, known as "The Tilden Apartments", also known as No. 3228 Stuart Avenue, and bounded as follows, to wit:

Beginning at the northeast corner of Stuart Avenue and Tilden Street, thence running eastwardly along and fronting on the northern line of Stuart Avenue, 57.5 feet; thence extending back northwardly between the eastern line of Tilden Street and a line parallel therewith 130 feet to an alley 12 feet wide.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, LLC., dated March12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-5977.

Exhibit C – Page 2

**3408 PARK AVENUE**:  That certain parcel of land with improvements thereon situated in the City of Richmond, Virginia, known as 3408 Park Avenue, and further described as follows:

Commencing at a point on the north line of Park Avenue 272.36 feet west of the western line of Roseneath Road; thence running westwardly along and fronting on the northern line of Park Avenue, 61.58 feet; thence extending back northwardly from said front between parallel lines 140 feet to an alley in the rear, 15 feet wide.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, LLC., dated March 12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-5977

Exhibit C – Page 3

## EXHIBIT B TO AGREEMENT

## TITLE COMMITMENT

[To Be Inserted]

Exhibit C – Page 1

## EXHIBIT C TO AGREEMENT
## FOR PURCHASE AND SALE OF REAL PROPERTY

### FORM OF DEED - RIVER CITY RENAISSANCE III, LC

This document prepared by:

Robert H. Chappell, III, Esquire
(VSB # 31698)
Spotts Fain PC
411 E. Franklin St., Ste. 600
Richmond, Virginia 23219

Tax Parcel No.: _____
Consideration: $_____
Assessed Value: $_____

### DEED

This Deed is made as of this _____day of _____, 2015, by and between RIVER CITY RENAISSANCE III, LC, a Virginia limited liability company (the "Grantor"), and BELLONA ARSENAL FARM ASSOCIATES, LLC, a Virginia limited liability company (the "Grantee").

### WITNESSETH:

Pursuant to the Order of the United States Bankruptcy Court of the Eastern District of Virginia attached hereto as Exhibit C and in consideration of the sum of ten Dollars ($10.00) cash in hand paid by the Grantee to the Grantor and other good and valuable consideration, the receipt of which is hereby acknowledged, the Grantor hereby grants and conveys unto the Grantee, with Special Warranty of Title, that certain parcel or those certain parcels of real property more particularly described on Exhibit A attached hereto and incorporated herein by this reference, together with any and all improvements thereon and any and all rights, interests, easements and appurtenances thereunto belonging (collectively, the "Property").

Exhibit C – Page 1

This conveyance is made subject to (i) the lien of local real estate taxes and assessments not yet due and payable, and (ii) those matters listed on Exhibit B attached hereto and incorporated herein by this reference, including without limitation, all easements, agreements, covenants, conditions and restrictions of record, to the extent that the same may lawfully apply to the property conveyed hereby.

The property conveyed hereby is conveyed to the Grantee AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED.

WITNESS the following signature and seal:

> GRANTOR:
>
> RIVER CITY RENAISSANCE III, LC,
> a Virginia limited liability company
>
> By: _____(SEAL)
> Name: _____
> Title: _____

COMMONWEALTH OF VIRGINIA

CITY/COUNTY OF _____, to wit:

The foregoing instrument was acknowledged before me this _____ day of _____ _____, 20__, by _____, as _____ of RIVER CITY RENAISSANCE, LC, a Virginia limited liability company, on behalf of such limited liability company.

My Commission Expires: _____

Notarial Registration Number: _____

_____
Notary Public

[NOTARIAL SEAL]

Exhibit C – Page 2

Grantee's Address:

Bellona Arsenal Farm Associates, LLC
3816 Old Gun Road West
Midlothian, Virginia 23113

Exhibit C – Page 3

EXHIBIT A TO FORM OF DEED

Legal Description

[TO BE ADDED]

Exhibit C – Page 4

EXHIBIT B TO FORM OF DEED

Permitted Exceptions

[TO BE ADDED]

Exhibit C – Page 5

EXHIBIT C TO FORM OF DEED

Bankruptcy Court Order

[TO BE ADDED]

Exhibit C – Page 6

## FIRST ADDENDUM TO AGREEMENT FOR PURCHASE AND SALE OF
## REAL PROPERTY OF RIVER CITY RENAISSANCE III, LC

THIS FIRST ADDENDUM TO AGREEMENT FOR PURCHASE AND SALE OF REAL PROPERTY (this "First Addendum") is made as of the __19__ day of February, 2015 (the "Effective Date"), by and between RIVER CITY RENAISSANCE III, LC, a Virginia limited liability company ("Seller"), and Bellona Arsenal Farm Associates, LLC, a Virginia Limited Liability Company ("Purchaser"), and provides as follows:

### Recitals:

R-1.    Seller and Purchaser have entered or are entering into a certain Agreement for Purchase and Sale of Real Property dated February 9, 2015 (the "Purchase Agreement") for the sale and purchase of certain real property located in the City of Richmond and commonly known as 110 North Boulevard, 3408 Park Avenue, 705-707 North Boulevard, 3228 Stuart Avenue, 3224 Stuart Avenue and 2903 Monument Avenue (collectively the "Property").

R-2.    The Purchase Agreement does not include a "breakup fee" provision to allow the transaction contemplated by the Purchase Agreement to be approved by the U. S. Bankruptcy Court for the Eastern District of Virginia in Richmond, Virginia, and the parties desire to include the same in and as a part of the Purchase Agreement, as set forth below.

R-3.    Purchaser intends to utilize the services of Old Republic National Title Insurance Company for its settlement agent in relation to the transaction contemplated by the Agreement, and the parties desire to clarify the distinction between the Escrow Agent under the Agreement and the Purchaser's settlement agent.

### Addendum:

For good and valuable consideration, including without limitation, the Deposit under the Agreement, the parties desire to enter into and execute this First Addendum and agree to the inclusion of the following provisions as a part of the Purchase Agreement:

1.    The Recitals are incorporated into this First Addendum as an integral part hereof and not as mere recitals.

2.    Notwithstanding the statement contained in Section 5 of the Purchase Agreement setting forth that Closing shall occur no later than March 26, 2015, TIME BEING OF THE ESSENCE, the parties hereto agree that Closing may occur on or before the expiration of six (6) weeks from the approval of the Purchase Agreement, as modified and amended by this First Addendum and any subsequent addenda or amendments, and the entry of the Sale Order by the U. S. Bankruptcy Court for the Eastern District of Virginia in Richmond, Virginia

3.    The following language is added to the Purchase Agreement as Paragraph C under Section 17 - Bankruptcy Issues:

C.    Subject to Bankruptcy Court approval, in consideration of Purchaser conducting its due diligence and entering into this Agreement, which is subject to higher and better offers: (1) Seller agrees to pay Purchaser without the necessity of notice and a hearing, directly from the proceeds of a sale to another purchaser a break-up fee of up to $25,000.00 for reimbursement of actual, reasonable out-of-pocket expenses incurred by Purchaser in obtaining a loan to close on the Properties, for items such as appraisals and loan application fees (the "Break Up Fee") and (2) any overbid must exceed the sum of the Purchase Price and the Break Up Fee by at least $25,000.00.  If the Court does not approve this Agreement and issue the Sale Order but the property is sold to another purchaser, Seller agrees to petition the Court for approval for payment of up to $25,000.00 for reimbursement of such actual, reasonable out-of-pocket expenses incurred by Purchaser in obtaining a loan to close on the Properties and shall diligently pursue such approval.  Nothing herein shall make the Purchaser's obligations under this Agreement contingent upon obtaining a loan or financing.

4.    To the extent that the term Escrow Agent is used in the Purchase Agreement in relation to functions that are performed by a settlement agent acting on behalf of the Purchaser in the transaction contemplated by the Purchase Agreement, the term Escrow Agent shall mean Old Republic National Title Insurance Company. Nothing contained herein shall be deemed to otherwise alter the rights, duties and obligations of Fidelity National Title Insurance Company as the Escrow Agent under the Purchase Agreement, it being the intention of the parties by the addition of this provision to treat Old Republic National Title Insurance Company as a settlement agent for and on behalf of the Purchaser.

5.    All terms, conditions and provisions of the Purchase Agreement shall continue in full force and effect except to the extent modified by this First Addendum.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

[SIGNATURE PAGE FOLLOWS]

2

IN WITNESS WHEREOF, each of the parties hereto has affixed its signature on the date(s) noted below.

SELLER:            RIVER CITY RENAISSANCE III, LC
                   a Virginia limited liability company

                   By: _____
                   Name: Development Specialists, Inc.
                   Title:  Liquidating Representative,
                   By:     Joseph J. Luzinski
                   Title:  Senior Vice President

                   Date: _____2/20/15_____


PURCHASER:         BELLONA ARSENAL FARM ASSOCIATES, LLC,
                   a Virginia limited liability company

                   By: _____
                   Name: _John Fitzhy<_____
                   Title: _manager_____
                   Date: _____2/19/15_____


The Escrow Agent is executing this First Addendum for the sole purpose of acknowledging and agreeing to be bound by the terms of Paragraph 16 of the Purchase Agreement as modified and/or amended by this First Addendum.

ESCROW AGENT:      Fidelity National Title Insurance Company

                   By: _____
                   Name: _____
                   Title: _____

                   Date: _____


3