## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |  |
|---|---|---|
| *In re*: | ) | Chapter 11 |
|  | ) | (Joint Administration) |
| River City Renaissance, LC, & | ) |  |
| River City Renaissance III, LC[1], | ) |  |
|  | ) |  |
| *Debtors*. | ) | Case No. 14-34080-KLP |
|  | ) |  |

## MOTION FOR ORDER (I) APPROVING SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF

River City Renaissance, LC ("RCR") and River City Renaissance III, LC ("RCR III"; collectively, the "Debtors"), as debtors and debtors-in-possession, through counsel and pursuant to 11 U.S.C. §§ 105(a), 363, and 365 and Rules 2002, 3003, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), in accordance with the Sale & Bid Procedures, the Sale & Bid Procedures Order, as modified, the Assumption Procedures, and the Assumption Procedures Orders, the Credit Bid Order, the Re-Solicitation Order, and the Interim Sale Order, each as defined below, file this Motion for Order (I) Approving Sale Of Assets Free And Clear Of Liens, Claims, Encumbrances, And Interests; (II) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (III) Granting Related Relief (the "Motion" or the "Sale Approval Motion") seeking approval of the sale of all or

---

[1] The final four digits of the federal tax ID numbers for River City Renaissance, LC and River City Renaissance III, LC, respectively, are 8910 and 8102.

Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:        (804) 697-2000
Facsimile:        (804) 697-2100
*Counsel for the Debtors & Debtors-In-Possession*

substantially all of the Debtors' real property assets, including personal property, free and clear

of liens, claims, and encumbrances, substantially similar to the form of the proposed Order (the

"Sale Order").  (**Exhibit 1**, attached hereto.)  In support of this Motion, the Debtors state as

follows:

### PRELIMINARY STATEMENT

1.       The Debtors filed these chapter 11 cases in order to pursue an orderly liquidation

of their respective real property assets, comprised of 29 residential apartment buildings

throughout the City of Richmond (collectively, the "Properties"[2]).  The Debtors seek approval of

(i) the sale of each Debtor's Properties to DIV River City Renaissance, LLC (the "Buyer")

pursuant to 11 U.S.C. § 363 for an aggregate price of $37,350,000.00, with $30,825,000.00

apportioned to RCR and $6,525,000.00 apportioned to RCR III (generally, the "Purchase Price");

(ii) the assumption and assignment of the unexpired residential lease agreements (the "Leases")

between the Debtors and current tenants at the Properties (the "Properties") pursuant to 11

U.S.C. § 365; and (iii) granting related relief.  As of the filing of this Motion, the Debtors have

received confirmation from the Escrow Agent that the Buyer has posted its entire deposit, which

is ten (10%) percent of the Purchase Price or $3,735,000.

2.       In accordance with existing deadlines and related requirements, including the bid

deadline, the Buyer has presented to the Debtors the highest and/or best offer for the acquisition

and purchase of the Properties, as set forth in that certain Agreement For Purchase And Sale Of

Real Property and the First Amendment To Purchase And Sale Agreement (collectively, the

"Sale Agreement"), by and among the Debtors and the Buyer.  (Doc. Nos. 445, at 27, 470.)

---

[2] **Schedule A**, attached hereto, provides a list of the Properties by address and legal description owned by each, respective Debtor, the "RCR Properties" and the "RCR III Properties", respectively.  As defined, the "Properties" shall include all personal property, fixtures, and appliances and warranties, located on, within, or used in connection with the Properties that are owned by the Debtors.

3.    The Interim Sale Order, defined below, established April 13, 2015, at 2:00 PM, prevailing Eastern time as the Bid Deadline.  To date, the Debtors have received no Competing Bids on the Properties, other than those previously submitted by Bellona Arsenal Farm Associates, LLC ("Bellona") as to RCR III and Neighborhood Investments-RVA, LLC ("Neighborhood") as to both Debtors' Properties, as previously disclosed to the Court on the record at the Interim Hearing.  The Debtors, therefore, request that the Court dispense with and waive the requirement that a Bid Report be attached to this Motion, as required by the Interim Sale Order.  (Doc. No. 484, at 4.)  To the extent that parties submit Competing Bids prior to the Sale Hearing, then the Debtors will provide notice of such bids and material terms in their discretion and as expeditiously as possible.

4.    As to Neighborhood, which is designated a back-up bidder by the Interim Sale Order, the Debtors reserve all rights in connection with Neighborhood's status as a back-up bidder, as may be applicable and necessary, including, without limitation, the provisions of paragraph 12 of the Interim Sale Order.

5.    As to Bellona, the Debtors had previously requested relief in the DIV Sale Motion, defined below, in the form of up to a $25,000 expense reimbursement to be paid to Bellona in the event that it does not acquire the RCR III Properties.  (Doc. No. 445, at 4, 19-20.) The Debtors and Bellona had previously requested a continuance of that matter, and the Debtors intend to seek an additional continuance of that matter, so that it may be heard after the April 20, 2015 Sale Hearing.   Accordingly, the Debtors reserve all rights concerning that expense reimbursement and as to Bellona.

## BACKGROUND & PROCEDURAL HISTORY

6.    On July 30, 2014 (the "Petition Date"), each Debtor filed with the Court a

voluntary petition seeking relief pursuant to chapter 11 of title 11 of the United States Code (the "Code").

7.    This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O), and jurisdiction is proper before the Court pursuant to 28 U.S.C. § 1334(a).  Venue is proper before the Court pursuant to 11 U.S.C. §§ 1408 and 1409.

8.    The Debtors are each Virginia limited liability companies, registered with the Virginia State Corporation Commission to transact business within the Commonwealth of Virginia, each having a principal place of business in the City of Richmond, Virginia.  The Debtors remain in possession of their estates as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

9.    On October 15, 2014, the Court entered that certain "*Order Under 11 U.S.C. §§ 327(a) and 329 Authorizing Employment And Retention Of Development Specialists, Inc. As Liquidating Representative For The Debtors*", which, in part, approved the Debtors' retention of Development Specialists, Inc. for which Joseph J. Luzinsiki is the primary designee, as the Liquidating Representative (the "Liquidating Representative").    (Doc. No. 148.)    The Liquidating Representative is authorized to make operational decisions on the Debtors' behalf, including, without limitation, review and approval of the sale of the Properties.  The Debtors incorporate by reference, as though fully restated herein, the facts and statements contained in the Declaration of Joseph J. Luzinski.  (Doc. Nos. 7, 37, as modified.)

10.    On November 6, 2014, the Court entered that certain "*Interim Order (I) Approving Sale And Bid Procedures; (II) Approving The Form And Manner Of Notice; And (III) Granting Related Relief*" (the "Sale & Bid Procedures Order"), which, in part, approved the Sale & Bid Procedures and the Sale Notice that governed the auction of the Debtors' Properties that

commenced on December 18, 2014 (the "Auction").  (Doc. No. 201.)

11.      On December 5, 2014, the Court entered that certain "*Order (I) Approving Lease Assumption And Assignment Procedures; (II) Approving The Form And Manner Of Notice; And (III) Granting Related Relief*" (the "Initial Assumption Procedures Order"), which approved the Assumption Procedures, the Assumption, Assignment, & Cure Notice, and the Assignment Schedule, each as defined in the Initial Assumption Procedures Order.  (Doc. No. 248.)

12.      On December 5, 2014, the Court entered that certain "*Order Determining Credit Bid Rights Of Holders*" (the "Credit Bid Order"), which, in part, determined, conditioned, and established the credit-bid rights of the Holders[3] at the Auction.  (Doc. No. 250.)

13.      The Debtors' December 18, 2014 Auction did not result in a closed sale transaction between or among the Debtors and any bidders at the Auction.

14.      On January 16, 2015, the Court entered that certain "*Order (I) Authorizing Continuance; (II) Authorizing Amendment To Sale & Bid Procedures; And (III) Granting Related Relief*" (the "Re-Solicitation Order"), which, in part, granted to the Debtors the authority to re-solicit bids for the purchase of the Properties.  (Doc. No. 337.)

15.      On March 13, 2015, the Debtors filed with the Court that certain "*Motion For Order (I) Scheduling Interim And Final Hearings On Proposed Sale Of Debtors' Properties; (II) Approving Bid Increments And Bid Protections; (III) Establishing Notice Periods And Bid Deadlines; And (IV) Granting Related Relief*" (the "DIV Sale Motion").  (Doc. No. 445.)

---

[3] The "Holders" are: (1) U.S. Bank National Association, as trustee, successor-in-interest to Bank of America, N.A., as trustee, successor to Wells Fargo Bank, N.A., as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2005-C22 (the "RCR Holder"), by and through CWCapital Asset Management LLC, in its capacity as special servicer; and (2) U.S. Bank National Association, as trustee, successor-in-interest to Bank of America, N.A., as trustee, successor to Wells Fargo Bank, N.A., as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C23 (the "RCR III Holder"), by and through CWCapital Asset Management LLC, in its capacity as special servicer (the "Special Servicer" or "CWCapital").

16.    On March 27, 2015, the Court entered that certain "*Interim Order (I) Scheduling Interim And Final Hearings On Proposed Sale Of Debtors' Properties; (II) Approving Bid Increments And Bid Protections; (III) Establishing Notice Periods And Bid Deadlines; And (IV) Granting Related Relief*" (the "<u>Interim Sale Order</u>"), which granted interim relief, including, (i) designating the Buyer as a stalking-horse bidder at the Purchase Price; (ii) establishing bid deadlines; (iii) establishing notice procedures; and (iv) scheduling the Sale Hearing for April 20, 2015.  (Doc. Nos. 468, 470, 494.)

17.    On April 7, 2015, the Debtors filed with the Court a "*Motion Seeking Approval Of Settlement And Compromise*" (the "<u>Settlement Motion</u>"), which seeks the entry of an Order approving a global, mutual release and settlement agreement between and among the Debtors, the Holders, and CWCapital (the "<u>Settlement Agreement</u>").  (Doc. Nos. 503, 524.)

18.    On April 8, 2015, the Court entered that certain "*Order (I) Approving Supplemental Lease Assumption And Assignment Procedures; (II) Approving The Form And Manner Of Notice; And (III) Granting Related Relief*" (the "<u>Supplemental Assumption Procedures Order</u>", and with the Initial Assumption Procedures Order, collectively, the "<u>Assumption Procedures Orders</u>" ).  (Doc. No. 511.)

19.    The Debtors submit that, to date and to the extent applicable, the Debtors have complied with the Sale & Bid Procedures, the Sale & Bid Procedures Order, the Assumption Procedures, the Assumption Procedures Orders, the Credit Bid Order, the Re-Solicitation Order, and the Interim Sale Order in all respects.

## RELIEF REQUESTED

20.    Through this Motion, the Debtors seek entry of the Sale Order, substantially similar to the form of **Exhibit 1**, attached hereto, and approval of the sale of the Properties at the

April 20, 2015 hearing, including the following, material terms:

a. Approving the Debtors' execution of the Sale Agreement for sale of the Properties to the Buyer at the Purchase Price, and on the other terms and provisions of the Sale Agreement;

b. Approving the Debtors' sale of the Properties to the Buyer free and clear of all liens, claims, interests, and encumbrances pursuant to 11 U.S.C. § 363, except for Permitted Exceptions, as defined in the Sale Agreement;

c. Approving the Debtors' assumption of the Leases, and assignment of those Leases to the Buyer pursuant to 11 U.S.C. § 365, and approving the Cure Amount scheduled and due, if any, to any Tenant(s) for each unexpired Lease; and

d. Approving the payment of Customary and Reasonable Closing Costs, as defined in the Sale & Bid Procedures Order.

## AUTHORITY

21.     The Debtors' decisions to sell the Properties free and clear to the Buyer and to assume and assign to the Buyer the Leases are subject to the business judgment rule, and each decision represents an exercise of the Debtors' sound business judgment, as exercised through the Liquidating Representative.

### A. Authorization Of The Sale Under 11 U.S.C. § 363

22.     Section 363(b)(1) of the Code empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  A debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based on a sound business purpose.  *See Comm. Of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070-71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to § 363(b)); *In re W.A. Mallory Co.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales." (citing *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)).

23.     The business judgment rule is met "when the following elements are present: (1) a business decision, (2) disinterestedness, (3) due care, (4) good faith, and (5) according to some

courts and commentators, no abuse of discretion or waste of corporate assets." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (internal quotations omitted); *see also W.A. Mallory Co.*, 214 B.R. at 836 (discussing similar requirements for a § 363(b) sale under the business judgment rule). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

24.     Each of the elements articulated in *Integrated Res.* is present in the Debtors' situation.  First, the choice to sell the Properties represents a business decision of the Debtors, as exercised by the Liquidating Representative.  Second, the Debtors have no prior or preexisting relationship or connection with the Buyer.  Third, the Debtors have exercised due care throughout the sale process and in reaching the decision to designate the Buyer as the stalking-horse and move forward with a sale of the Properties to the Buyer.  Fourth, the Debtors have acted in good faith throughout the sale process and negotiated these contemplated transactions at arms' length.  Finally, to the extent applicable, the Debtors have not abused their discretion or wasted any corporate assets through the sale process.  To the contrary, at all times, the Debtors submit that they have strived to attain the highest and / or best value for the Properties so as to benefit their estates, creditors, and stakeholders.

25.     Courts in this and other circuits have opted not to interfere with corporate decisions "unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion." *Lubrizol Enters. v. Richmond Metal*

*Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985) (applying business judgment rule to debtor's decision to reject executory contract); *see also Integrated Res.*, 147 B.R. at 656.  The sale of the Properties to the Buyer will maximize creditor recoveries during these chapter 11 cases, which also helps to ensure the completion of these chapter 11 cases in a timely manner.

26.     Under § 363(f), the debtor-in-possession may proceed with a sale under § 363(b) where only one of five possible elements is satisfied.  *See* 11 U.S.C. § 363(f)(1)-(5).   In particular, § 363(f)(2) states that "[t]he trustee may sell property under subsection (b) . . . free and clear of any interest in such property of an entity other than the estate, only if . . . such entity consents." 11 U.S.C. § 363(f)(2).

27.     As set forth in the Settlement Motion and the Settlement Agreement, each Holder has an interest in the respective Debtor's Properties, and the Debtors submit that based on (i) the agreed terms and provisions of the Settlement Agreement, and (ii) the Purchase Price, the Holders consent to the sale of the Properties to the Buyer at the Purchase Price.  Therefore, the Debtors meet the requirement of 11 U.S.C. § 363(f)(2).

28.     Assuming *arguendo*, that either Holder, acing by and through the Special Servicer, does not consent to the sale of the Properties to the Buyer, or such other higher and/or better offer(s), the Debtors submit that approval of the sale to the Buyer, or such other higher and/or better offer(s), is justified and meets the requirements of 11 U.S.C. § 363(f), including, without limitation, subsection (f)(4).  To the extent of any such objection, the Debtors request that the Court enter the Sale Order authorizing the sale, with the proceeds to be held in escrow with all liens, claims, interests, and encumbrances attaching to the proceeds, with the exception of Permitted Exceptions.

**B. Assumption And Assignment Of The Leases**

29.     The value and price of the Properties is maximized because the Properties are operating as going concerns with approximately 419 current Tenants occupying approximately 303 units across all the Properties.  The rents derived from the Leases and the Tenants comprise significant revenues that will inure to the benefit of the Buyer.  Thus, the assumption and assignment of the Leases to the Buyer ensures a continuing source of income from the Properties with minimal effect on the Tenants during any transition of ownership.  Therefore, the Debtors submit that there exists a sound business purpose to authorize assumption and assignment of the Leases to the Buyer, in accordance with the Bankruptcy Code and the Assumption Procedures Orders.

30.     Section 365(a) of the Code authorizes a debtor-in-possession to assume and assign an executory contract or unexpired lease subject to Court approval.  *See* 11 U.S.C. § 365(a).  Section 365(b) of the Code requires that the debtor-in-possession satisfy certain requirements at the time of assumption if a default exists under the contract to be assumed.  *See* 11 U.S.C. § 365(b).

31.     Section 365(a) of the Code provides, in pertinent part, that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  In enacting § 365, Congress intended to allow a debtor to assume those leases and contracts that benefit the estate and to reject those that are of no value or are burdensome to the estate.  *See In re Fas Mart Convenience Stores, Inc.*, 296 B.R. 414, 420 (Bankr. E.D. Va. 2002); *see also Cinicloa v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir. 2001); *In re Whitcomb & Keller Mortgage Co., Inc.*, 715 F.2d 375, 379 (7th Cir. 1983).  For the reasons set forth above, the assumption and assignment of the Leases enhances and maximizes the value

of the Debtors' bankruptcy estates through the sale.

32.     Section 365(b) of the Code requires, in pertinent part, that the debtor-in-possession cure any existing defaults, compensate or provide adequate assurance of compensation resulting from any cure obligation, and provide adequate assurance of future performance under the applicable contract or lease.  *See* 11 U.S.C. § 365(b)(1).

33.     As set forth in the Assumption, Assignment, & Cure Notices and the Cover Letters, each as defined in the Assumption Procedures Orders and as served on the Tenants, the proposed Cure Amount owed to each current Tenant is zero dollars ($0.00), due to the nature of the Debtors' obligations to the current Tenants, which is to provide access to an apartment unit and common areas.  Those obligations are not monetary in nature.

34.     Further, under the terms of any executed sale agreement the Buyer will assume all security deposit obligations that may be due in the future to the current Tenants, and the Buyer will provide adequate assurance, including the financial wherewithal, of such performance in accordance with the Bankruptcy Code.

35.     The decisions to assume or reject executory contracts or unexpired leases are matters within the "business judgment" of the debtor.  *See Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.* (*In re Lubrizol Enters.*), 756 F.2d 1043, 1046-47 (4th Cir. 1985) (when reviewing a debtor's decision to assume or reject a contract, courts "must start with the proposition that the bankrupt's decision . . . is to be accorded the deference mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate debtors") *cert. denied*, 475 U.S. 1057 (1986); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984).  Accordingly, courts approve the assumption or rejection of an executory contract or unexpired lease unless evidence is presented that the debtor's decision to

assume or reject was "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *Lubrizol Enters.*, 756 F.2d at 1047.

36.    Sufficient business justification exists to merit approval of the proposed assumption and assignment of the Leases.  The Debtors request that the Court approve the assumption and assignment of the Leases to the Buyer.

## REQUEST FOR WAIVER OF STAY

37.    Through this Motion, the Debtors seek a waiver of any stay imposed on the effectiveness of any order approving this Motion pursuant to any Bankruptcy Rule, Local Rule, or the Code, including, without limitation, Rules 6004 and 6006 of the Bankruptcy Rules.  The Debtors require, and thereby request, immediate relief in order to move forward expeditiously with the sale.  The Debtors submit that cause exists to justify a waiver of respective the 14-day stays imposed by Rule 6004 and 6006 and any other applicable rule or law.

## WAIVER OF MEMORANDUM OF LAW

38.    The Debtors request a waiver of Local Bankruptcy Rule 9013-1(G), which requires a separate memorandum of points and authorities to accompany a motion.

## NOTICE

39.    As set forth on the Certificate of Service, attached hereto, the Debtors will provide notice and service of this Motion in accordance with the Interim Sale Order on the following parties, or their counsel as applicable, only via e-mail: (a) the Office of the U.S. Trustee, (b) the Holders; (c) Chevron; (d) the Buyer; (e) Bellona; (f) any other parties that submit Competing Bids, as defined in the Interim Sale Order, for either or both Debtors' Properties; and (g) any parties-interest that request notice via e-mail.  (Doc. No. 494, at 4.)

40.    In accordance with the Interim Sale Order, any and all objections or responses

opposing the relief sought in this Sale Approval Motion and the entry of the Sale Order must be filed with the Court and served on the Debtors via e-mail no later than the earlier of either (i) forty-eight (48) hours after the date and time of the filing of this Motion, or (ii) April 17, 2015 at 2:00 PM.  (Doc. No. 494, at 4.)

41.    Further, all parties-in-interest having previously received prior notice of the Sale & Bid Procedures, the Sale & Bid Procedures Order, the Assumption Procedures, and the Assumption Procedures Orders, through the Sale Notice, the Assumption, Assignment, & Cure Notices, the Debtors submit that notice is adequate, proper, and sufficient under the circumstances, with no further notice being necessary.  To the extent applicable, the Debtors request relief from the requirements of Rule 2002 of the Bankruptcy Rules, and any other applicable Bankruptcy Rules or Local Rules of the Court.

**WHEREFORE**, the Debtors respectfully request the entry of the Sale Order granting the relief set forth in this Motion and granting such other and further relief as may be proper.


DATED: April 15, 2015                    RIVER CITY RENAISSANCE, LC
                                          RIVER CITY RENAISSANCE III, LC

                                          By: /s/ James K. Donaldson
                                                Counsel

Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:     (804) 697-2000
Facsimile:     (804) 697-2100
*Counsel for the Debtors &*
*Debtors-In-Possession*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2015, I caused a true and accurate copy of the foregoing to be served on all parties that receive CM/ECF notification and the following parties via e-mail:

| | |
|---|---|
| Robbin S. Rahman, Esq.<br>Kilpatrick Townsend & Stockton, LLP<br>1100 Peachtree Street NE, Suite 2800<br>Atlanta, GA 30309-4528<br>*Counsel for the Holders* | Mark D. Taylor, Esq.<br>VLP Law Group<br>1776 I Street, NW, Ninth Floor<br>Washington, DC 20006<br>*Counsel for the Holders* |
| Augustus C. Epps, Jr., Esq.<br>Christian & Barton, LLP<br>909 E. Main Street, Suite 1200<br>Richmond VA 23219<br>*Counsel for Chevron* | Robert B. Van Arsdale, Esq.<br>701 E. Broad Street, Suite 4304<br>Richmond VA 23219<br>*Office of the U.S. Trustee* |
| Jonathan L. Hauser, Esq.<br>Troutman Sanders LLP<br>222 Central Park Ave., Ste. 2000<br>Virginia Beach, VA 23462<br>*Counsel for DIV River City Renaissance, LLC* | Richard E. Hagerty, Esq.<br>Troutman Sanders LLP<br>1850 Towers Crescent Plaza, Suite 500<br>Tysons Corner, VA 22182<br>*Counsel for DIV River City Renaissance, LLC* |
| Elizabeth Godwin-Jones, Esq.<br>Godwin-Jones & Price, P.C.<br>20 South Auburn Avenue<br>Richmond, VA 23221<br>*Counsel for Bellona Arsenal Farm Assocs.* | Vernon E. Inge, Jr., Esq.<br>LeClairRyan<br>951 East Byrd Street, Eighth Floor<br>Richmond, VA 23219<br>*Counsel for Neighborhood Investments-RVA* |
| Gabrielle M. DuVall, Esq.<br>John T. Farnum, Esq.<br>Linowes and Blocher LLP<br>7200 Wisconsin Avenue, Suite 800<br>Bethesda, MD 20814<br>*Counsel for FCPFund II REIT Investor, LLC* | t0062429<br>1322 Floyd Avenue, Apartment 2<br>Richmond, VA 23220 |
| t0062725<br>805 N. Boulevard, Apartment 8<br>Richmond, VA 23220 | t0069466<br>2215 Monument Avenue, Apartment 5<br>Richmond, VA 23220 |
| t0062475<br>814 N. Garfield St.<br>Arlington, VA 22201 | t0062475-1<br>814 N. Garfield St.<br>Arlington, VA 22201 |

/s/ James K. Donaldson

## SCHEDULE A - PROPERTIES LIST

Parcel 1: (2734-2736 W. Grace Street)

All those certain tracts or parcels of land, with all appurtenances thereto belotiging, lying
and being in the City of Richmond, Virginia, containing 0.169 acre, more particularly
described as follows:

BEGINNING at a rod found on the north line of West Grace Street, said point being
71.64 feet East of the east line of North Boulevard; thence leaving said Street, North 35
degrees 54 minutes 30 seconds East, a distance of 86.00 feet to a point on the terminus of
a 15 foot alley; thence along terminus of said alley, South 54 degrees 1 minute '42
seconds East, a distance of 8.00 feet to a point on the east line of said Alley; thence with
and along said alley, North 35 degrees 54 minutes 30 seconds East, a distance of 59.00
feet to a rod found on the south line of a 20 foot alley; thence with and along said alley,
South 53 degrees 59 minutes 58 seconds East, a distance of 46.00 feet to a rod found;
thence leaving said alley, South 35 degrees 54 minutes 30 seconds West, a distance of
145.00 feet to a lead hub found on the north line of West Grace Street; thence with and
along said Street, North 54 degrees West, 54.00 feet to the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a liability company,
by Deed from Donald K. Waybright and Teena H. Waybright, husband and wife, dated
February 3, 1998, recorded February 13, 1998, in the Clerk's Office, Circuit Court of the
City of Richmond, Virginia, as Instrument No. 98-3872.

Parcel 2: (706 N. Boulevard)

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying
and being in the City of Richmond, Virginia, containing 0.107 acre, more particularly
described as follows:

BEGINNING at a rod found on the west line of North Boulevard, said rod being 87.00
feet North of the north line of Monument Avenue; thence leaving said Boulevard, North
52 degrees 28 minutes 38 seconds West, a distance of 108.40 feet to a lead hub found;
thence North 37 degrees 31 minutes 22 seconds East, a distance of 45.31 feet to a lead
hub found on the south line of a 15 foot alley; thence with and along said alley, South 52
degrees 28 minutes 38 seconds east, a distance of 97.71 feet to a rod found on the west
line of North Boulevard; thence with and along said Boulevard, South 24 degrees 15
minutes 00 seconds West, a distance of 46.56 feet to the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited
liability company by Deed from Ivry Thompson, married and Bradley Coker, unmarried,
dated January 16, 1998, recorded January 30, 1998, in the Clerk's Office, Circuit Court
of the City of Richmond, Virginia, as Instrument No. 98-2724.

Parcel 3: (801-803 N. Boulevard)

All those certain tracts or parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.100 acre, more particularly described as follows:

BEGINNING at a stone found on the north east corner of North Boulevard and West Grace Street; thence with and along the east line of North Boulevard, North 22 degrees 43 minutes 30 seconds East to a nail hole found; thence leaving said Boulevard, South 54 degrees East to a PK Nail found on the west line of a 7 foot alley in common; thence southwardly along said alley, South 35 degrees 54 minutes 30 seconds West, a distance of 1.38 feet to a rod found at the terminus of said alley; thence Southeasterly along the terminus of said 7 foot alley, South 54 degrees East, a distance of 7.00 feet to a rod found; thence leaving said alley, South 35 degrees 54 minutes 30 seconds West, a distance of 54.26 feet to a rod found on the north line of West Grace Street; thence along said Street, North 54 degrees West, a distance of 71.64 feet to the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited liability company, by Deed from P & S Ltd, Partnership, a Maryland limited partnership, dated January 12, 1998, recorded January 15, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument 98-1376.

Parcel 4: (2225 Monument)

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.084 acre and more particularly described as follows:

BEGINNING at a nail found on the south line of Monument Avenue; said nail being 363.25 feet West of the west line of Allison Street; thence leaving said Avenue, South 36 degrees 54 minutes 34 seconds West, a distance of 130.0 feet to a point on the north line of a 15 foot alley; thence along said Alley, North 53 degrees 05 minutes 26 seconds West, a distance of 28.00 feet to a rod found; thence leaving said alley, North 36 degrees 54 minutes 34 seconds East, a distance of 130.00 feet to a nail found on the south line of Monument Avenue; thence with and along the south line of said Avenue, South 53 degrees 05 minutes 26 seconds East, 28.00 feet to the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited liability company, by Deed dated October 9, 1998, recorded October 16, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 98-27715.

Parcel 5: (2215 Monument)

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.196 acre, more particularly described as follows:

BEGINNING at a "X" cut found on the south line of Monument Avenue; said "X" cut being 213.55 feet West of the west line of Allison Street; thence leaving said Avenue, South 35 degrees 07 minutes 00 seconds West, a distance of 130.00 feet to a rod round on the north line of 15 foot alley; thence along said alley, North 54 degrees 53 minutes 00 seconds West a distance of 65.37 feet to a rod found on the North line of said Alley; thence leaving said alley, North 35 degrees 07 minutes 00 seconds East, a distance of 130.00 feet to a drill hole found on the south line of Monument Avenue; thence with and along said Avenue, South 54 degrees 53 minutes 00 seconds East a distance of 65.87 feet to a "X" cut found, being the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited liability company, by Deed dated April 9, 1998, recorded April 13, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 98-9308.

Parcel 6: (811 N. Boulevard)

All those certain tracts or parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.071 acre, more particularly described as follows:

BEGINNING at a nail found on the east line of North Boulevard, said point being 115.59 feet North of the north line of West Grace Street; thence with and along the East line of said North Boulevard, North 22 degrees 43 minutes 30 seconds east, a distance of 33.39 feet to a rod found on the south line of a 20 foot alley; thence with and along said alley, South 53 degrees 59 minutes 58 seconds East a distance of 98.62 feet to a rod found on the west line of a 15 foot alley; thence with and along said alley, South 35 degrees 54 minutes 30 seconds West, a distance of 32.50 feet to a rod found; thence leaving said alley, North 54 degrees West, a distance of 91.00 feet to the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited liability company, by Deed from Wayne L. Sullivan and Elvie I. Sullivan, husband and wife, dated March 18, 1998, recorded March 23, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 98-7104.

Parcel 7: (2730 W. Grace)

All those certain tracts or parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.131 acre, more particularly described as follows:

BEGINNING at a lead hub found on the north line of West Grace Street, said point being 125.64 feet East of the east line of North Boulevard; thence leaving said Street, North 35 degrees 54 minutes 30 seconds East, a distance of 145.00 feet to a rod found on the west line of a 20 foot alley; thence along said alley, South 53 degrees 59 minutes 58 seconds East, a distance of 39.50 feet to a R.R. spike set on the west line of said alley; thence leaving said alley, South 35 degrees 54 minutes 30 seconds West, a distance of 145.00 feet to an "X" in concrete found on the north line of West Grace Street; thence with and along said street, North 54 degrees 00 minutes 00 seconds a distance of 39.50 feet to a lead hub, being Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a liability company, by Deed from Fred D. Goodwin, III and Katheryn K. Goodwin, husband and wife, and Russell D. Stone and Mary J. Stone, husband and wife, dated May 8, 1998, recorded May 15, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 98-12494.

Parcel 8: (805-807 N. Boulevard)

All those certain tracts or parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.110 acre, more particularly described as follows:

BEGINNING at a nail hole found on the East line of North Boulevard, said point being 57.17 feet west of the north line of West Grace Street; thence with and along the west line of said Boulevard, North 22 degrees 43 minutes 30 seconds East, a distance of 58.42 feet to a nail found; thence leaving said Boulevard, South 54 degrees 00 minutes 00 seconds East, a distance of 91.00 feet to a rod found on the west line of a 15 foot alley in common; thence southwardly with and along said alley, South 35 degrees 54 minutes 30 seconds West a distance of 56.86 feet to a pk nail found on the centerline of a 2.75 foot alley in common; thence with and along said alley, North 54 degrees 00 minutes 00 seconds West, a distance of 77.68 feet to a nail hole found, being the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited liability company, by Deed from Patricia Inglesby Thomas, dated May 13, 1998, recorded May 15, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 98-12493.

Parcel 9: (622 N. Boulevard)

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.167 acre, more particularly described as follows:

BEGINNING at a nail set at the intersection of the west line of North Boulevard and the
south line of Monument Avenue; thence along said Boulevard, South 23 degrees 17
minutes 39 seconds West, a distance of 50.00 feet to a nail set; thence leaving said
Boulevard, North 53 degrees 26 minutes 11 seconds West, a distance of 150.00 feet to a
rod found on the east line of a 15 foot alley; thence along said alley, North 23 degrees 17
minutes 39 seconds East a distance of 50.00 feet to a nail set; thence leaving said alley,
South 53 degrees 26 minutes 11 seconds East, a distance of 150.00 feet to a nail set on
the west line of North Boulevard, being the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia
limited liability Company, by Deed from River City Renaissance II, LC, a Virginia
limited liability company, dated September 13, 2002, recorded October 1, 2002, in the
Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-
030846.

Parcel 10: (709-711 N. Boulevard)
All those certain tracts or parcels of land, with all appurtenances thereto belonging, lying
and being in the City of Richmond, Virginia, containing 0.170 acre, more particularly
described as follows:

BEGINNING at a stone found at the intersection of the south line of West Grace Street
and the east line of North Boulevard; thence with and along the south line of West Grace
Street, South 51 degrees East, a distance of 110.78 feet to a pk nail found; thence leaving
said Street, South 39 degrees 00 minutes 49 seconds West a distance of 72.49 feet to a
rod found at the terminus of a 5 foot alley; thence leaving said alley, North 51 degrees
West, a distance of 93.62 feet to a "X" found on the east line of North Boulevard; thence
with and along said Boulevard, North 25 degrees 41 minutes 28 seconds East, a distance
of 74.49 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia
limited liability Company, by Deed from River City Renaissance II, LC, a Virginia
limited liability company, dated September 18, 2002, recorded October 1, 2002, in the
Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-
030846

Parcel 11: (308 N. Boulevard)

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying
and being in the City of Richmond, Virginia, containing 0.145 acre, more particularly
described as follows:

BEGINNING at a punch hole found on the west line of North Boulevard, said punch hole
being 136.59 feet north of the north line of West Grace Street; thence leaving said
Boulevard, North 45 degrees 00 minutes 00 seconds West a distance of 150.00 feet to a
rod found on the east line of a 15 foot alley; thence along said alley, North 31 degrees 42
minutes 03 seconds East a distance of 43.41 feet to a pk nail found; thence leaving said
alley, South 45 degrees 00 minutes 00 seconds East a distance of 150.00 feet to a rod
found on the west line of North Boulevard; thence with and along said Boulevard, South
31 degrees 42 minutes 03 seconds West a distance of 43.41 feet to the Point of
Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia
limited liability Company, by Deed from River City Renaissance II, LC, a Virginia
limited liability company, dated September 18, 2002, recorded October 1, 2002, in the
Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-
030846.

Parcel 12: (3115 Monument Avenue)

All those two certain tracts or parcels of land, with all appurtenances thereto belonging,
lying and being in the City of Richmond, Virginia, containing 0.187 acres, more
particularly described as follows:

BEGINNING at a pk nail found on the south line of Monument Avenue, said nail being
232.27 feet east of the east line of Cleveland Street; thence with and along said Avenue,
South 53 degrees 57 minutes 23 seconds East, a distance of 160.96 feet to a rod found;
thence South 15 degrees 15 minutes 02 seconds West, a distance of 25.31 feet to a lead
hub found on the north line of West Franklin Street; thence with and along the north line
of said Street, North 75 degrees West, a distance of 149.92 feet to a pk nail found; said
nail being 225.08 feet east of the east line of Cleveland street; thence leaving said West
Franklin Street, North 14 degrees 51 minutes 58 seconds East, a distance of 83.11 feet to
the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia
limited liability Company, by Deed from River City Renaissance II, LC, a Virginia

limited liability company, dated September 18, 2002, recorded October 1, 2002, in the
Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-
030846.

Parcel 13: (2726 W. Grace)

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.188 acre, more particularly described as follows:

BEGINNING at a "X" found on the north line of West Grace Street, said point being 165.14 feet east of the east line of North Boulevard; thence leaving said Street, North 35 degrees 54 minutes 30 seconds East, a distance of 145.00 feet to a point on the south line of a 20 foot alley; thence eastwardly along said alley, South 53 degrees 59 minutes 58" East, a distance of 56.50 feet to a rod found; thence leaving south line of said Alley, South 35 degrees 54 minutes 30 seconds West, a distance of 145.00 feet to a "X" found on the north line of West Grace Street; thence along said Street, North 54 degrees West, 56.50 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability Company, by Deed from River City Renaissance II, LC, a Virginia limited liability company, dated September 18, 2002, recorded October 1, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-030846.

Parcel 14: (2217 Monument)

All those certain tracts of parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.064 acre, more particularly described as follows:

BEGINNING at a drill hole found on the south line of Monument Avenue, said drill hole being 279.42 feet West of the west line of Allison Street; thence leaving said Avenue, South 35 degrees 07 minutes West, a distance of 130.00 feet to a rod found on the north line of a 15 foot alley; thence along said alley, North 54 degrees 53 minutes West, a distance of 21.33 feet to a nail found; thence leaving said Alley, North 35 degrees 07 minutes East, a distance of 130.00 feet to a point on the south line of Monument Avenue; thence with and along the south line of said Avenue, South 54 degrees 53 minutes East, 21.33 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability Company, by Deed from River City Renaissance II, LC, a Virginia limited liability company, dated September 18, 2002, recorded October 1, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-030846.

Parcel 15: (2233 Monument)

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.075 acre, more particularly described as follows:

BEGINNING at a point on the south line of Monument Avenue, said point being 51.00 feet east of the east line of Addison Street; thence Easterly with and along the south line of Monument Avenue, South 53 degrees 05 minutes 26 seconds East, a distance of 25.00 feet to a point; thence leaving said Avenue, South 36 degrees 54 minutes 34 seconds West, a distance of 130.00 feet to a rod found on the north line of a 15 foot alley; thence along said alley, North 53 degrees 05 minutes 26 seconds West, a distance of 25.00 feet to a rod found; thence leaving said alley, North 36 degrees 54 minutes 34 seconds East, a distance of 130.00 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability Company, by Deed from River City Renaissance II, LC, a Virginia limited liability company, dated September 13, 2002, recorded October 1, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-030846.

Parcel 16: (2700 W. Grace)

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.110 acre more particularly described as follows:

BEGINNING at a stone found on the northwest corner of Mulberry Street and West Grace Street; thence Westwardly along the north line of West Grace Street, North 54 degrees West, a distance of 33.00 feet to a punch hole found; thence leaving said Street, North 35 degrees 55 minutes 19 seconds East, a distance of 145.00 feet to a rod found on the south line of a 20 foot alley; thence eastwardly along said alley, South 53 degrees 59 minutes 53 seconds East, a distance of 33.00 feet to a punch hole found on the west line of Mulberry Street; thence along said Street, South 35 degrees 55 minutes 19 seconds West a distance of 145.00 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability Company, by Deed from River City Renaissance II, LC, a Virginia limited liability company, dated September 13, 2002, recorded October 1, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-030846.

Parcel 17: (3501 Stuart Avenue and 306 N. Nansemond)

All those two certain tracts of parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 4.926 acres, and 0.120 acres, more particularly described as follows:

**4.926 Acre Parcel**
BEGINNING at a monument found on the northeast corner of Thompson Street and Hanover Avenue; thence along the east line of Thompson Street, North 40 degrees 43 minutes 27 seconds East, a distance of 396.78 feet to a monument on the southwest corner of Thompson Street and Stuart Avenue; thence along the south line of Stuart Avenue, South 66 degrees East, a distance of 567.05 feet to a monument found in the northwest corner of Stuart Avenue and Nansemond Street; thence along the west line of Nansemond Street, South 23 degrees 24 minutes 15 seconds West a distance of 179.86 feet to a nail found on the north line of a 20 foot alley; thence along said alley, North 66 degrees 3 minutes 49 seconds West, 126.00 feet to a nail set on the west line of a 16 foot alley; thence along said alley, South 23 degrees 24 minutes 12 seconds West, a distance of 82.55 feet to a nail set on the south line of a 15 foot alley; thence along said alley, South 66 degrees 00 minutes 33 seconds East, a distance of 16.01 feet to a rod found; thence leaving said alley, South 23 degrees 23 minutes 39 seconds West, a distance of 117.38 feet to a nail found on the north line of Hanover Avenue; thence along said Avenue, North 66 degrees 00 minutes 33 seconds West, a distance of 575.21 feet (erroneously stated as 685.18 feet in prior conveyances) to the Point of Beginning.

**0.120-Acre Parcel**
BEGINNING at a rod found on the northwest corner of Nansemond Street and a 15 foot alley, said point being 132.38 feet north of the north line of Hanover Street; thence along said alley, North 65 degrees 56 minutes 48 seconds West, 110.00 feet to a nail set on the east line of a 16 foot alley; thence along said alley, North 23 degrees 24 minutes 15 seconds East a distance of 47.50 feet to a rod found on the south line of a 20 foot alley; thence along said alley, South 65 degrees 56 minutes 48 seconds East, a distance of 110.00 feet to a nail found on the west line of Nansemond Street; thence along said Street, South 23 degrees 24 minutes 15 seconds West, a distance of 47.50 feet to the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited liability company, by Deed from River City Renaissance IV, LC, a Virginia limited liability company, dated September 18, 2002, recorded October 1, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 02-030345.

Parcel 18:   (25 N. Boulevard)

All that certain lot, piece or parcel of land, lying and being in the City of Richmond,
Virginia, together with all improvements thereon and all appurtenances thereto relating,
known as No.25 North Boulevard or "Dakota Apartments", more particularly described
as follows:

COMMENCING at a stone marking the intersection of the eastern line of North
Boulevard and the southern line of Floyd Avenue; thence southwardly along the eastern
line of North Boulevard, 38.0 feet to a nail; thence back eastwardly between parallel
lines, the northernmost one of which is the southern line of Floyd Avenue, a distance of
131.66 feet to a cross cut marking the western line of alley and the southern one of which
is 131.55 feet to a nail marking the western line of an alley, said Lot having a rear line of
38 feet abutting upon said alley as shown on the plat of survey prepared by J.K. Timmons
& Associates, Incorporated, Engineers, Surveyors and Planners, dated July 1, 1985,
attached to and made a part of that certain Deed of Trust recorded in Deed Book 48, Page
620.

Being the same property conveyed to River City Renaissance III, LC, a Virginia limited
liability company by Deed from Delores K. Montalbano, dated November 27, 2000,
recorded December 4, 2000, in the Clerk's Office of the Circuit Court of the City of
Richmond, Virginia as Instrument No. 00-23439.

Parcel 19:   (2810 Monument Avenue)

All that certain lot, piece or parcel of land, with all improvements thereon and
appurtenances thereunto belonging, lying and being in the City of Richmond, Virginia,
known as "The Greenwood Apartments", and numbered 2810 Monument Avenue, and
being more particularly bounded and described in accordance with the plat of survey by
Foster & Miller, Certified Surveyors, dated December 8, 1976, and entitled, "Plat of No.
2810 Monument Avenue, Richmond, Virginia", and described as follows:

BEGINNING at a point marked by a lead hub in the northern line of Monument Avenue,
said Point being distant thereon 162.62 feet from the western line of North Boulevard;
thence running in a westerly direction along and fronting on the northern line of
Monument Avenue, 49 feet to a lead hub; thence back from said front, in a northerly
direction between parallel lines a distance of 130 feet to a 15 foot alley in the rear, the
northwestern corner being marked by a rod and the northeastern corner being the corner
of the garage on the east, said Lot having a width of 49 feet along said alley.

Being the same property conveyed to River City Renaissance, III, LC, a Virginia limited
liability company, by Deed from Net Corp, L.L.C., a Virginia limited liability company,
dated January 7, 2000, recorded January 19, 2000, in the Clerk's Office, Circuit Court of
the City of Richmond, Virginia, as Instrument No. 00-01317.

Parcel 20: (2714-2716 W. Grace)

All that certain lot, piece or parcel of land with all improvements thereon and appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, all as shown on the plat of survey made by Potts, Minter and Associates, P.C., Engineers, Land Surveyors, Land Planners, dated January 24, 2000, entitled, "PLAT SHOWING IMPROVEMENTS ON NOS. 2714 AND 2716 W. GRACE STREET, IN THE CITY OF RICHMOND, VIRGINIA", a copy of which is recorded with deed recorded in Instrument # 00003353 in the Clerk's Office of the Circuit Court of the City of Richmond, Virginia.

Being the same property conveyed to River City Renaissance III, LC, a Virginia limited liability company, by Deed from Stephen H. Catlett and Margaret S. Catlett, husband and wife, dated February 3, 2000, recorded February 15, 2000, in the Clerk's Office of the Circuit Court of the City of Richmond, Virginia, as Instrument No. 00-003353.


Parcel 21: (2516, 2518 W. Grace and 803 and 805 N. Robinson)

All that certain real estate situated, lying and being in the City of Richmond, Virginia, with the improvements thereon, known as No. 2516 (formerly 2520), No 2518 (formerly 2522) West Grace Street and Nos. 803, 805, 807 and 809 North Robinson Street (formerly, erroneously referred to as 803 and 805 North Robinson Street), as more particularly shown and designated upon plat of Phillip H. Brooks, C.L.S., dated June 15, 1973 which is attached to and recorded with that certain Deed in Deed Book 685B, Page 89 and as further shown and designated on plat of survey by Potts, Minter and Associates, P.C., dated October 22, 1999, revised November 11, 1999, attached to and recorded with Deed recorded in Instrument # 99-33764 in the Clerk's Office of the Circuit Court of the City of Richmond, Virginia.

Being the same property conveyed to River City Renaissance III, LC, a Virginia limited liability company, by Deed from Carson L. Milam a/k/a Carson Lee Milam, a married man, dated November 9, 1999, recorded December 15, 1999, in the Clerk's Office of the Circuit Court of the City of Richmond, Virginia as Instrument No. 99-33764.

Parcel I: (110 North Boulevard)

All that certain lot, piece or parcel of land, with improvements thereon and appurtenances
thereto belonging, known as "BELMONT APARTMENTS", lying and being in the City
of Richmond, Virginia, situated on the western line of the Boulevard between Floyd and
Grove Avenues, designated as No. 108-110 North Boulevard and being more particularly
described as follows:

BEGINNING on the western line of the Boulevard, 118 feet North of the northern line of
Floyd Avenue; thence running northwardly along the western line of Boulevard and
fronting thereon 73 feet and 9 inches; thence from said front extending back westwardly
between parallel lines, 147 feet and 9 1/2 inches on the northern line and 148 feet and
3 1/2 inches on the southern line to a court and alley in the rear and being shown upon the
map made May 6, 1921 by T. Crawford Redd & Bro., and recorded in the Clerk's Office
of the Circuit Court of the City of Richmond, Division I, in Deed Book 273-B, Page 208.


Parcel II: (3408 Park Avenue)

That certain parcel of land with improvements thereon situated in the City of Richmond,
Virginia, known as 3408 Park Avenue, and further described as follows:

Commencing at a point on the north line of Park Avenue 272.36 feet west of the western
line of Roseneath Road; thence running westwardly along and fronting on the northern
line of Park Avenue, 61.58 feet; thence extending back northwardly from said front
between parallel lines 140 feet to an alley in the rear, 15 feet wide.


Parcel III: (705 and 707 North Boulevard)

All that certain lot, piece or parcel of land, lying and being in the City of Richmond,
Virginia, together with all improvements thereon and appurtenances thereto related and
generally known as No. 705 and 707 North Boulevard, and more particularly shown by
plat of survey prepared by Charles H. Fleet and Assoc., Certified Surveyors, dated
March 13, 1973, recorded in Deed Book 682-D, Page 78, as follows:

Commencing at a point along the eastern line of North Boulevard, which point is 74.49
feet southwardly from the intersection of the eastern line of North Boulevard and the
southern line of West Grace Street, thence eastwardly through an alley in common,
103.63 feet to a rod along the northern line of an alley, 10 feet wide, (which rod is 72.5
feet southwardly from the south line of West Grace Street); thence along the said alley
southwardly 57.50 feet to a point marking the intersection of the western line of said 10
foot alley with the northern line of a 15 foot alley; thence along the northern line of said

15 foot alley, 90.03 feet to a spike marking the intersection of the northern line of said 15
foot alley with the eastern line of North Boulevard; thence along the eastern line of
North Boulevard 59.08 feet to the Point of Commencement.

Parcel IV: (3228 Stuart Avenue)

That parcel of land in the City of Richmond, Virginia, situated on the northern line of
Stuart Avenue and on the eastern line of Tilden Avenue, together with all improvements
on said parcel and appurtenances thereto belonging, known as "The Tilden Apartments",
also known as No. 3228 Stuart Avenue, and bounded as follows, to wit:

Beginning at the northeast corner of Stuart Avenue and Tilden Street, thence running
eastwardly along and fronting on the northern line of Stuart Avenue, 57.5 feet; thence
extending back northwardly between the eastern line of Tilden Street and a line parallel
therewith 130 feet to an alley 12 feet wide.

Parcel V: (3224 Stuart Avenue)

All that certain lot, piece or parcel of land, lying and being in the City of Richmond,
Virginia, together with all the improvements thereon known as "The Hayes Apartment",
and designated as 3224 Stuart Avenue, and more particularly described as follows:

Beginning on the north line of Stuart Avenue 57.5 feet east of Tilden Street, thence
running eastwardly along and fronting on the north line of Stuart Avenue 57.5 feet;
thence extending back between nearly parallel lines 130 feet to an alley, 12 feet wide, on
which it fronts 57.49 feet.

Parcel VI: (2903 Monument Avenue)

All that certain piece or parcel of land, lying and being in the City of Richmond, State of
Virginia, together with all improvements thereon and appurtenances thereto belonging,
known as 2903 Monument Avenue and more particularly described as follows, to wit:

Beginning at a point on the south line of Monument Avenue, 30 feet west of Colonial
Avenue (formerly Deep Run Street); thence running westwardly along the south line of
Monument Avenue and fronting thereon 44 feet; thence running back southerly from said
front between parallel lines to a distance of 130 feet, more or less, to a public alley in the
rear.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a
Virginia limited liability company, by deed from Tuffy Properties, L.L.C., dated March
12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of
Richmond, Virginia, as Instrument No. 01-5977.

**<ins>EXHIBIT 1 - PROPOSED SALE ORDER</ins>**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

_____

*In re*:

River City Renaissance, LC, &
River City Renaissance III, LC,

   *Debtors*.
_____

)
)
)
)
)
)
)
)
)

Chapter 11
(Joint Administration)



Case No. 14-34080-KLP

## <u>ORDER (I) APPROVING SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF</u>

On (A) the modified motion of River City Renaissance, LC ("<u>RCR</u>") and River City Renaissance III, LC ("<u>RCR III</u>"; collectively, the "<u>Debtors</u>"; each a "<u>Debtor</u>"), as debtors and debtors-in-possession, through counsel and pursuant to 11 U.S.C. §§ 105(a), 363, and 365 and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), seeking (i) approval of the procedures (the "<u>Sale & Bid Procedures</u>", as modified), to be employed with respect to the proposed sales of all or substantially all of the Debtors' Properties; (ii) approving the form and manner of notice thereof; and (iii) granting related relief (the "<u>Sale Procedures Motion</u>"); on (B) the motion (the "Initial <u>Lease Motion</u>") of the Debtors, through counsel and pursuant to 11 U.S.C. §§ 105(a) and 365 and Rules 2002 and 6006 of the Bankruptcy Rules, seeking (i) approval of the procedures (the "<u>Initial Assumption Procedures</u>") to be employed with respect to the assumption and assignment of the unexpired residential lease

_____

Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:  (804) 697-2000
Facsimile:  (804) 697-2100
*Counsel for the Debtors & Debtors-In-Possession*

agreements (the "<u>Leases</u>") between the Debtors and the current tenants in the Debtors'
apartments located on the Properties (the "<u>Tenants</u>"); (ii) approving the form and manner of
notice thereof (the "Initial <u>Assumption, Assignment, & Cure Notice</u>" and the "Initial <u>Assignment
Schedule</u>", each as defined in the Lease Motion); and (iii) granting related relief as is just and
proper, as more fully described in the Lease Motion; on (C) the motion (the "<u>Supplemental Lease
Motion</u>", and with the Initial Lease Motion, collectively, the "<u>Lease Motions</u>") of the Debtors,
through counsel and pursuant to 11 U.S.C. §§ 105(a) and 365 and Rules 2002 and 6006 of the
Bankruptcy Rules, seeking (i) approval of the procedures (the "<u>Supplemental Assumption
Procedures</u>"; and with the Initial Assumption Procedures, collectively, the "<u>Assumption
Procedures</u>") to be employed with respect to the assumption and assignment of the Leases
between the Debtors and the Additional Tenants, as defined in the Supplemental Lease Motion;
(ii) approving the form and manner of notice thereof (the "<u>Supplemental Assumption,
Assignment, & Cure Notice,</u>" and with the Initial <u>Assumption, Assignment, & Cure Notice</u>,
collectively, the "<u>Assumption, Assignment, & Cure Notices</u>", and the "<u>Amended Assignment
Schedule,</u>" and with the Initial Assignment Schedule, collectively, the "<u>Assignment Schedules</u>");
and (iii) granting related relief as is just and proper, as more fully described in the Supplemental
Lease Motion and on (D) the motion seeking approval of the sale of the Properties and the
Agreement For Purchase And Sale Of Real Property (the "<u>Sale Agreement</u>"), as amended,
entered into by and among the Debtors DIV River City Renaissance, LLC (the "<u>Buyer</u>"), filed
with the Court on March   13, 2015 (the "<u>DIV Sale Motion</u>", and together with the Sale
Procedures Motion and the Lease Motions, the "<u>Motions</u>"); and due and proper notice of the
Motions having been provided; and no other or further notice needing to be provided; and the
relief requested in the Motions being in the best interests of the Debtors, their bankruptcy estates,

their creditors, and parties-in-interest; and the Court having reviewed the Motions and having

held a hearing on April 20, 2015 (the "Sale Hearing"), at which parties-in-interest appeared; and

the Court having determined that the legal and factual bases set forth in the Motions and at the

Sale Hearing establish just cause for the relief granted herein, and upon all of the proceedings

had before the Court; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND DETERMINES THAT**:

      A.      On July 30, 2014, each Debtor filed with the Court a voluntary petition seeking

relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 through 1532

(the "Bankruptcy Code").

      B.      On October 15, 2014, the Court entered that certain "*Order Under 11 U.S.C. §§*

*327(a) and 329 Authorizing Employment And Retention Of Development Specialists, Inc. As*

*Liquidating Representative For The Debtors*", which approved the Debtors' retention of

Development Specialists, Inc. for which Joseph J. Luzinski is the primary designee, as their

liquidating representative (the "Liquidating Representative").  (Doc. No. 148.)

      C.      On November 6, 2014, the Court entered that certain "*Interim Order (I)*

*Approving Sale And Bid Procedures; (II) Approving The Form And Manner Of Notice; And (III)*

*Granting Related Relief*" (the "Sale & Bid Procedures Order"), which approved the Sale & Bid

Procedures that governed the auction of the Debtors' Properties that commenced on or about

December 18, 2014 (the "Auction").  (Doc. No. 201.)

      D.      On December 5, 2014, the Court entered that certain "*Order (I) Approving Lease*

*Assumption And Assignment Procedures; (II) Approving The Form And Manner Of Notice; And*

*(III) Granting Related Relief*" (the "Initial Assumption Procedures Order").  (Doc. No. 248.)

      E.      On December 5, 2014, the Court entered that certain "*Order Determining Credit*

*Bid Rights Of Holders*" (the "Credit Bid Order"), which determined, conditioned, and established

the credit-bid rights of the RCR III Holder at the Auction.  (Doc. No. 250.)

F.    On December 18, 2014, the Debtors commenced the Auction in order to facilitate

the sale of all of the Debtors' Properties in accordance with the Sale & Bid Procedures Order.

G.    On January 16, 2015, the Court entered that certain "*Order (I) Authorizing*

*Continuance; (II) Authorizing Amendment To Sale & Bid Procedures; And (III) Granting*

*Related Relief*" (the "Re-Solicitation Order"), which granted to the Debtors the express authority

to re-solicit bids for the purchase of the Properties in order to determine the market interest and

willingness of interested parties to submit bids.  (Doc. No. 337, at 3.)

H.    On March 13, 2015, the Debtors filed with the Court that certain "*Motion For*

*Order (I) Scheduling Interim And Final Hearings On Proposed Sale Of Debtors' Properties; (II)*

*Approving Bid Increments And Bid Protections; (III) Establishing Notice Periods And Bid*

*Deadlines; And (IV) Granting Related Relief*" (the "DIV Sale Motion"), which sought interim

and final relief, ultimately, to convey the Properties at an aggregate price of $37.1 million for

each Debtor's portfolios of Properties to the Buyer subject to higher and/or better offers.  (Doc.

No. 445.)

I.    On March 19, 2015, the Court presided over a hearing on the DIV Sale Motion

(the "Interim Hearing"), and on March 27, 2015, the Court entered that certain "*Interim Order (I)*

*Scheduling Interim And Final Hearings On Proposed Sale Of Debtors' Properties; (II)*

*Approving Bid Increments And Bid Protections; (III) Establishing Notice Periods And Bid*

*Deadlines; And (IV) Granting Related Relief*" (the "Interim Sale Order"), which granted interim

relief requested in the DIV Sale Motion, including, (i) designating the Buyer as a stalking-horse

bidder to acquire the Properties at an increased, aggregate price of $37,350,000.00, with

$30,825,000.00 apportioned to RCR and $6,525,000.00 apportioned to RCR III; (ii) establishing

bid deadlines; (iii) establishing notice procedures; and (iv) scheduling the Sale Hearing for April

20, 2015.  (Doc. Nos. 468, 470, 494.)

      J.      On April 7, 2015, the Debtors filed with the Court a "*Motion Seeking Approval Of*

*Settlement And Compromise*" (the "Settlement Motion"), which seeks the entry of an Order

approving a global, mutual release and settlement agreement between and among the Debtors,

the Holders, and CWCapital Asset Management, LLC (the "Settlement Agreement").  (Doc.

Nos. 503, 524.)  On April [_], 2015, the Court entered that certain "*Order*" (the "Settlement

Hearing Order"), which shortened and limited notice concerning the Settlement Motion and

scheduled an expedited hearing on the Settlement Motion for April 20, 2015 at 2:00 PM.  On

April 8, 2015, the Court entered that certain "*Order (I) Approving Supplemental Lease*

*Assumption And Assignment Procedures; (II) Approving The Form And Manner Of Notice; And*

*(III) Granting Related Relief*" (the "Supplemental Assumption Procedures Order", and with the

Initial Assumption Procedures Order, collectively, the "Assumption Procedures Orders" ).  (Doc.

No. 511.)

      K.      This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157(b) and

1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

      L.      Venue of the Debtors' chapter 11 proceedings and the Motions before this Court

in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

      M.      As evidenced by the affidavits and certificates of service filed with the Court and

based on the representations of counsel at the Sale Hearing, due and sufficient notice of the Sale

Procedures Motion, the Lease Motions, the DIV Sale Motion, the Assumption, Assignment, &

Cure Notices, the Interim Hearing, the Sale Hearing, and the relief granted herein has been

provided under 11 U.S.C. §§ 105(a), 363, and 365 and Rules 2002, 6004, and 6006 of the Bankruptcy Rules, and the Debtors have complied in all respects with the procedures and notice requirements, as may be applicable, set forth in the Sale & Bid Procedures, as modified, the Sale & Bid Procedures Order, the Assumption Procedures, the Assumption Procedures Orders, the Re-Solicitation Order, and the Interim Sale Order, and no other or further notice need be given.

N.      A reasonable opportunity to object and be heard with respect to the DIV Sale Motion, the Sale Procedures Motion, and the Lease Motions has been afforded to all interested persons and entities, including, without limitation, the Tenants and/or any non-Debtor counterparties to any Leases, as applicable.

O.      As evidenced by the testimony and other evidence proffered or adduced at the Sale Hearing and based on the representations of counsel at the Sale Hearing, the Debtors marketed the Properties and conducted the sale in compliance with the Sale & Bid Procedures, as modified, the Sale & Bid Procedures Order, the Re-Solicitation Order, and the Interim Sale Order, as each may be applicable.

P.      The Debtors, through the Liquidating Representative, have demonstrated good, sufficient, and sound business purpose and justification for the sale of the Properties to the Buyer because, among other things, the Debtors diligently and in good faith analyzed all other available options in connection with the disposition of the Properties and determined that: (a) the terms and conditions set forth in the Sale Agreement between the Debtors and the Buyer; (b) the transfer to the Buyer of the Properties pursuant thereto; and (c) the Purchase Price are all fair and reasonable and together constitute the highest and best value that may be obtained for the Properties under the circumstances.

Q.      The Properties constitute property of each respective Debtor's bankruptcy estate

and title thereto is vested in their bankruptcy estates within the meaning of 11 U.S.C. § 541.

RCR is the sole and lawful owner of the fee simple interests in the RCR Properties, which

includes any right, title, and interest in all associated personal property, fixtures, and appliances

and warranties, located on, within, or used in connection with the RCR Properties that are owned

by RCR. RCR III is the sole and lawful owner of the fee simple interests in the RCR III

Properties, which includes any right, title, and interest in all associated personal property,

fixtures, and appliances and warranties, located on, within, or used in connection with the RCR

III Properties that are owned by RCR III.

R.      The Buyer is not an "insider" of either Debtor as that term is defined in 11 U.S.C.

§ 101(31).

S.      The Buyer has acted in good faith under 11 U.S.C. § 363(m).

T.      The Buyer has not colluded or otherwise acted in manner that would implicate 11

U.S.C. § 363(n).

U.      The consideration provided by the Buyer for the Properties pursuant to the Sale

Agreement: (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Properties;

(iii) will maximize the recovery for the Debtors' creditors, bankruptcy estates, equity security

holders, stakeholders, and other parties-in-interest; and (iv) constitutes reasonably equivalent

value and fair consideration under the Bankruptcy Code and under the laws of the United States,

any state, commonwealth, or possession thereof, or the District of Columbia.

V.      The sale of the Properties must be approved and consummated promptly to obtain

the value provided under the terms of the Sale Agreement.

W.      The transfer of the Properties to the Buyer is a legal, valid, and effective transfer

of the Properties, and shall vest the Buyer with all right, title, and interest of the Debtors to the

Properties, such transfer is free and clear of any lien, claim, or interest in the Properties of any entity other than the applicable Debtor's bankruptcy estate, including, without limitation, mortgages, deeds of trust, tax liens and any statutory or common law liens, possessory or otherwise, charge, pledge, security interest, option or other encumbrance, including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction, and any monetary amounts which are secured by any liens (collectively, the "Liens"), except for those items defined in the Sale Agreement, and which are referred to hereinafter as the "Permitted Exceptions".

X.       If the sale of the Properties by the Debtor were not free and clear of any and all Liens, except for the Permitted Exceptions, as set forth in the Sale Agreement and this Order, or if the Buyer would, or in the future could, be liable for any of the Liens, the Buyer would not have entered into the Sale Agreement or submitted an offer for the Properties and would not consummate the Sale contemplated by the Sale Agreement, thus adversely affecting the Debtors, their bankruptcy estates, their creditors, their equity security holders, their stakeholders, and other parties-in-interest.

Y.       The Debtor may sell its interest in the Properties free and clear of all Liens, except the Permitted Exceptions, because in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) is satisfied.  All holders of any Liens that did not object to the Sale Procedures Motion, the Lease Motions, the Auction, or the DIV Sale Motion, or that withdrew their objections thereto, are deemed to have consented to the sale of the Properties pursuant to 11 U.S.C. § 363(f)(2) and all holders of Liens are adequately protected within the meaning of 11 U.S.C. § 363(e) by having their Liens attach to the cash proceeds of the sale ultimately attributable to the property against or in which they claim an interest with the same priority,

validity, force, and effect as they were attached to such property immediately before the closing of the sale.

Z.    The sale of the Properties to the Buyer meets a contingency of the Settlement Agreement because the sale of the Properties is to a third-party, cash buyer for a gross price of no less than $30,825,000.00 for the RCR Properties and $6,525,000.00 for the RCR III Properties, which shall close on or before May 15, 2015, or the Extension Period, as defined in the Settlement Agreement.  The Holders, therefore, consent to the sale of the Properties to the Buyer in accordance with 11 U.S.C. § 363(f)(2).

AA.    Subject to entry of this Order, each Debtor has full corporate power and authority to execute and deliver the Sale Agreement and to perform all of their respective obligations thereunder, and the sale of the Properties and assumption and assignment of the Assumed and Assigned Leases has been duly and validly authorized by all corporate authority necessary to consummate the sale.  No consents or approvals, other than as expressly provided for in the Sale Agreement and the entry of this Order, are required by the Debtors to consummate the sale.

BB.    The assumption of the Assumed and Assigned Leases by the Debtors and the assignment thereof to the Buyer, as applicable, pursuant to the terms of the Assumption Procedures Orders and this Order, is integral to the Sale Agreement and is in the best interests of the Debtors, their bankruptcy estates, their creditors, their equity security holders, their stakeholders, and other parties-in-interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors, exercised through the Liquidating Representative. Accordingly, such assumption and assignment is reasonable and enhances the value of the Debtors' bankruptcy estates.  No provision of any Assumed and Assigned Lease that purports to prohibit, restrict, or condition the assignment of any such Assumed and Assigned Lease in

connection with the sale shall have any force or effect.  Pursuant to 11 U.S.C. § 365(f), the

Assumed and Assigned Leases shall be assigned and transferred to, and remain in full force and

effect for the benefit of the Buyer.

CC.    The Debtors have met all requirements of 11 U.S.C. § 365(b) for each of the

Assumed and Assigned Leases.  The Debtors have provided adequate assurance of cure of any

default, if any, existing prior to the Closing Date under any of the Assumed and Assigned

Leases, within the meaning of 11 U.S.C. § 365(b)(1)(A), and provided adequate assurance of

compensation to any party for any actual pecuniary loss to such party resulting from such default

under any of the Assumed and Assigned Leases within the meaning of 11 U.S.C. § 365(b)(1)(B).

DD.    The Buyer has provided adequate assurance of its future performance of and

under the Assumed and Assigned Leases, within the meaning of 11 U.S.C. § 365(b)(1)(C), to the

extent applicable, including, without limitation, any  provisions, obligations, and responsibilities

concerning Tenants' security deposits and related refund obligations.  The Buyer shall be

obligated to the Tenants to perform all duties, obligations, and responsibilities as lessor and

landlord under the terms of the Assumed and Assigned Leases, including, without limitation, any

provisions, obligations, and responsibilities concerning Tenants' security deposits and related

refund obligations.  At Closing, the Debtor or CompassRock Real Estate, LLC, in its capacity as

the court appointed receiver for the Properties, as may be applicable, shall transfer to the Buyer

all funds held in escrow or maintained in other accounts that constitute the Tenants' security

deposits.

EE.    The Tenants and other non-Debtor counterparties to the Assumed and Assigned

Leases were provided with notice and the opportunity to object and be heard with respect to the

sale, the Assumption, Assignment, & Cure Notices, and the Assignment Schedules, in

accordance with the Assumption Procedures and the Assumption Procedures Orders, and are deemed to have consented to assumption and assignment pursuant to 11 U.S.C. § 363(f)(2). Except as expressly set forth in the Sale Agreement and in this Order, the transfer of the Assumed and Assigned Leases will not subject the Buyer to any liability whatsoever prior to the Closing Date, or by reason of such transfer under the laws of the United States, any state, commonwealth, territory, or possession thereof, or the District of Columbia, based, in whole or in part, on any theory of law or equity.

FF.    The Sale is not for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, commonwealth, territory, or possession thereof, or the District of Columbia.  Each of the Debtors and the Buyer are not and will not be entering into the Sale Agreement fraudulently.

GG.    The sale and assignment of the Properties outside of a plan of reorganization pursuant to the Sale Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  The sale of the Properties and the Sale Agreement do not constitute a *sub rosa* chapter 11 plan.

HH.    Time is of the essence in consummating the sale of the Properties.  In order to maximize the value of the Properties, it is essential that the sale and assignment of the Properties and the Assumed and Assigned Leases occur within the time constraints set forth in the Sale Agreement.  The sale must be approved and consummated promptly in order to preserve the viability of the Properties as going concerns, to maximize the value to the Debtors, their bankruptcy estates, their creditors, their equity security holders, their stakeholders, and parties-in-interest.  There exists cause to lift any applicable stay that would delay the effectiveness of the

entry of this Order, including, without limitation, the stays imposed by Rules 6004 and 6006 of the Bankruptcy Rules and any Local Rules of the Court.

II.      The Debtors' decision to enter into the Sale Agreement is a reasonable exercise of the Debtors' business judgment, exercised through the Liquidating Representative, and is in the best interests of the Debtors, their bankruptcy estates, their creditors, their equity security holders, their stakeholders, and all other parties-in-interest; therefore

**THE COURT HEREBY ORDERS, ADJUDGES, AND DECREES THAT**:

1.      The Motions are GRANTED as to the Debtors and the Properties, as modified by the terms of this Order.

2.      All objections to the Motions, the Sale & Bid Procedures Order, and the Assumption Procedures Orders, the Interim Sale Order, and this Order, or the relief granted herein, that have not been overruled, withdrawn, waived, settled, or otherwise resolved, are hereby overruled and denied on the merits with prejudice.

3.      The Court's findings of fact and conclusions of law in each of the Sale & Bid Procedures Order, and the Assumption Procedures Orders, the Re-Solicitation Order, and the Interim Sale Order, as well as the records of the Interim Hearing and the Sale Hearing, and any other hearings related thereto, are expressly incorporated herein by reference.

4.      Pursuant to 11 U.S.C. § 363, the Sale Agreement and each of the transactions contemplated thereby are approved in their entirety, and the Debtors are authorized, empowered, and directed to enter into and perform its obligations under the Sale Agreement, and to execute and perform such agreements or documents and take any other actions as necessary and desirable to effectuate the terms of the Sale Agreement.

5.      At Closing, the Debtors are authorized to pay and disburse Customary and

12

Reasonable Closing Costs, as defined in the Sale & Bid Procedures Order, as modified.  Subject to Court approval, at Closing, the Debtors are authorized to pay and disburse proceeds in accordance with the terms of the Settlement Agreement, as directed and authorized by an Order approving the Settlement Agreement.

6.      Pursuant 11 U.S.C. §§ 105, 363(b), and 363(f), the sale of the Properties to the Buyer, free and clear of all Liens other than the Permitted Exceptions, is approved.  Upon consummation and closing of the Sale Agreement, the Debtors' rights, title, and interest in and to the Properties shall be transferred to the Buyer free and clear of all Liens other than Permitted Exceptions, with all such Liens, including, without limitation, any and all "claims" as defined in 11 U.S.C. § 101(5), to attach to amounts payable to the Debtors under the Sale Agreement with same validity, force, and effect as the same had with respect to the assets and the Properties at issue prior to the sale.

7.      The Debtors are authorized, empowered, and directed to have assumed and assigned the Assumed and Assigned Leases to the Buyer.  The Buyer is authorized, empowered, and directed to perform all of the Debtors' obligations, responsibilities, and duties under the terms and provisions of the Assumed and Assigned Leases, including, without limitation, any and all obligations, responsibilities, and duties related to the Tenants' security deposits and the refunding of security deposits.  At Closing, the Debtors or CompassRock Real Estate, LLC, in its capacity as the court appointed receiver for the Properties, as may be applicable, shall transfer to the Buyer all funds held in escrow or maintained in other accounts that constitute the Tenants' security deposits.

8.      If any creditor, person, or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Liens on or against

the Properties shall not have delivered to the Debtors prior to the Closing of the Sale, in proper

form for filing and executed by the appropriate parties, termination statements, instruments of

satisfaction, releases of all Liens that the person or entity has with respect to the Properties, or

otherwise, then (a) the Debtors are hereby authorized to execute and file such statements,

instruments, releases, and other documents on behalf of the person or entity with respect to the

Properties; and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified

copy of this Order, which, when filed, registered, or otherwise recorded, shall constitute

conclusive evidence of the release of all Liens on or against the Properties of any kind or nature

whatsoever except for the Permitted Exceptions.

9.      This Order (a) shall be effective as a determination that, upon the Closing of the

sale, all Liens of any kind or nature whatsoever existing as to either Debtor or the Properties

prior to the Closing of the sale, except for the Permitted Exceptions, have been unconditionally

released, discharged, and terminated, other than any surviving obligations, and that the

conveyances described herein have been effected; and (b) shall be binding upon and shall govern

the acts of all entities including, without limitation, all filing agents, filing officers, title agents,

title companies, recorders of mortgages, clerks of court, recorders of deeds, registrars of deeds,

administrative agencies, governmental departments, secretaries of state, federal, state, and local

officials, and all other persons and entities who may be required by operation of law, the duties

of their office, or contract, to accept, file, register, or otherwise record or release any documents

or instruments, or who may be required to report or insure any title or state of title in or to the

Properties, or any portions thereof.

10.      All persons and entities, including, without limitation, all debt security holders, all

equity security holders, governmental, tax, and regulatory authorities, lenders, trade stakeholders,

and other stakeholders, holding Liens of any kind or nature whatsoever against or in the Debtors

or the Properties, except the Permitted Exceptions, whether legal or equitable, secured or

unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated, arising

under or out of, in connection with, or in any way relating to the Properties prior to the Closing

of the sale, the transfer of the Properties to the Buyer, hereby are forever barred, estopped, and

permanently enjoined from asserting such persons' or entities' Liens against the Buyer, its

successors or assigns, its property, or the Properties, such persons' or entities' Liens.

11.    The consideration provided by the Buyer for the Properties under the Sale

Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy

Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under

the laws of the United States, and any state, commonwealth, territory, or possession thereof, or

the District of Columbia.  Accordingly, the sale of the Properties may not be avoided under 11

U.S.C. § 363(n) or any other provision of the Bankruptcy Code.

12.    Upon the Closing of the sale, this Order shall be construed as and shall constitute,

for any and all purposes, a full and complete general assignment, conveyance, and transfer of the

Properties or a bill of sale transferring good and marketable title in the Properties to the Buyer

pursuant to the terms of the Sale Agreement.

13.    The Sale Agreement and any related agreements, documents, or other instruments

may be modified, amended, or supplemented by the parties thereto, only in a writing signed by

such parties, and in accordance with the terms thereof, without further order of the Court,

provided that any such modification, amendment, or supplement does not have a material

adverse effect on the Debtors or their bankruptcy estates.  The Debtors and the Buyer are

expressly authorized, without further order of this Court, to execute amendments to the Sale

Agreement to provide for the Closing to occur on or before the Closing Date.  Any modification,

amendment, or supplement to the Sale Agreement that has a materially adverse effect on the

Debtors or their bankruptcy estates must be approved by order of the Court following the filing

of a motion to approve such proposed modification, amendment, or supplement, and notice

thereof and an opportunity to be heard by all interested parties.

14.     The failure specifically to include any particular provisions of the Sale

Agreement, which is expressly incorporated herein by reference, in this Order shall not diminish

or impair the effectiveness of such provisions, it being the intent of the Court that the Sale

Agreement is hereby authorized and approved in its entirety, as it may be amended or

supplemented in accordance with its terms and this Order.

15.     This Order and the Sale Agreement shall be binding in all respects upon the

Debtors, all stakeholders of the Debtors, whether known or unknown, and any subsequent

trustees appointed in either Debtor's chapter 11 proceeding or upon a conversion of either

proceeding to a case under chapter 7 of the Bankruptcy Code.

16.     Unless expressly stated in either this Order or the Sale Agreement, the Buyer and

its respective affiliates, predecessors, successors, assigns, members, partners, officers, directors,

principals, and shareholders, or the equivalent, are not and shall not be (i) deemed a "successor"

in any respect to the Debtors or their bankruptcy estates as a result of the consummation of the

sale, or the transactions contemplated thereby, or the Sale Agreement or any other event

occurring in the Debtors' chapter 11 proceedings under any theory of law or equity; (ii) deemed

to have *de facto*, or otherwise, merged, or consolidated with or into the Debtors or their

bankruptcy estates; (iii) deemed to have a common identity with either Debtor; (iv) deemed to

have a continuity of enterprise with the Debtors; or (v) deemed to be a continuation or substantial

16

continuation of the Debtors or any enterprise of the Debtors.  Except for any liabilities relating to the Assumed and Assigned Leases, including the security deposit refund obligations due to Tenants, the Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors or their bankruptcy estates, including, without limitation, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability, except as otherwise expressly provided in the Sale Agreement.  The Motions contain sufficient notice of such limitation in accordance with the Bankruptcy Rules and any applicable Local Rule of the Court. Except as otherwise provided in this Order or the Sale Agreement, the transfer and assignment of the Properties and the Assumed and Assigned Leases to a Buyer, as applicable, under the Sale Agreement shall not result in the Buyer, or its respective affiliates, predecessors, successors, assigns, members, partners, officers, directors, principals, vendors, professionals, and shareholders, or the equivalent (i) having any liability or responsibility for any claim against the Debtors or against an insider of the Debtors; (ii) having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Liens; or (iii) having any liability or responsibility to the Debtors except as is expressly set forth in the Sale Agreement.

17.    Under 11 U.S.C. §§ 105(a), 363, and 365, and subject to and conditioned upon the consummation and Closing of the sale, the Debtors' assumption of the Assumed and Assigned Leases and assignment thereof to the Buyer, free and clear of any and all Liens pursuant to the terms set forth in the Sale Agreement, is expressly approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f)(2), to the extent applicable, with respect thereto are deemed satisfied. Each Tenant and each non-Debtor counterparty to an Assumed and Assigned Lease is hereby

forever barred, estopped, and permanently enjoined from raising or asserting against the Debtors, the Buyer, or the property or assets of any of such parties, any assignment fee, default, breach, claim, pecuniary loss, liability, or obligation, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinate, arising out of, in connection with, or in any way related to the Assumed and Assigned Leases existing as of the Closing Date or arising by reason of the assumption, assignment, sale, and/or Closing.   Notwithstanding the foregoing, pursuant to the terms and provisions of the Sale Agreement, the Buyer shall be liable for all obligations arising after the Closing Date under the Assumed and Assigned Leases, including, without limitation, any and all liabilities, responsibilities, duties, and obligations relating to the refund of security deposit obligations due to Tenants, and the Debtors shall not be liable for any such liabilities, responsibilities, duties, and obligations.

18.   The Assumed and Assigned Leases shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms.   Upon the Closing, in accordance with 11 U.S.C. §§ 363 and 365, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Assumed and Assigned Leases.   The assignment of each Assumed Lease is deemed to be made in good faith under, and entitled to the protection of, 11 U.S.C. § 363(m).

19.   The Buyer has provided adequate assurance of its future performance under the relevant Assumed and Assigned Leases within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B), as well as 11 U.S.C. § 365(b)(3) to the extent applicable.   All other requirements and conditions under 11 U.S.C. §§ 363 and 365 for the assumption by the Debtors and assignment to the Buyer of the Assumed and Assigned Leases have been satisfied.

20.    No sections or provisions of the Assumed and Assigned Leases that purport to (a) prohibit, restrict, or condition the Debtors' assignment of the Assumed and Assigned Leases, including, without limitation, the conditioning of such assignment on the consent of the Tenant or non-Debtor counterparty to such Assumed and Assigned Leases; (b) authorize the termination, cancellation, or modification of the Assumed and Assigned Leases based on the filing of a bankruptcy case, the financial condition of the Debtors, or similar circumstances; (c) declare a breach or default as a result of a change in control in respect of the Debtors; or (d) provide for additional payments, penalties, conditions, renewals, extensions, charges, other financial accommodations in favor of the non-Debtor third party to the Assumed and Assigned Leases, or modification of any term or condition upon the assignment of an Assumed Lease or the occurrence of the conditions set forth in subsection (b) above, shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions under 11 U.S.C. § 365(f) and/or are otherwise unenforceable under 11 U.S.C. § 365(e).  The entry of this Order constitutes the consent of the respective Tenants and non-Debtor parties to the Assumed and Assigned Leases to the assumption and assignment of such agreements without the necessity of obtaining such party's consent, written or otherwise, to such assumption or assignment.  All Assumed and Assigned Leases shall remain in full force and effect, without existing default(s), subject only to payment of the applicable Cure Amount, if any, as set forth on the Assumption, Assignment, & Cure Notices filed with the Court on or about December 10, 2014 and April 10, 2015, in accordance with the Sale Agreement.

21.    There shall be no rent accelerations, assignment fees, increases, or any other fees charged to the Buyer, its successors or assigns, or the Debtors as a result of the assumption and assignment of the Assumed and Assigned Leases.

22.     Payment of the Cure Amounts, if any, set forth in the Assumption, Assignment, & Cure Notices, or such other amount as may be agreed to by the Debtors and the Tenant and/or the non-Debtor counterparty to the applicable Assumed and Assigned Lease, in accordance with the Sale Agreement is hereby authorized.  All defaults or other obligations of the Debtor shall be deemed cured and shall no longer exist upon the payment, or other satisfaction, of the Cure Amounts set forth in the Assumption, Assignment, & Cure Notices against which no timely objections are properly filed and served in accordance with the Assumption Procedures and the Assumption Procedures Orders, or such other amount as may be agreed to by the Debtors and the Tenant and/or non-Debtor counterparty to the applicable or Assumed and Assigned Lease. Except for the Cure Amounts set forth in the Assumption, Assignment, & Cure Notices against which no timely objections are properly filed and served in accordance with the Assumption Procedures and the Assumption Procedures Orders, or such other amount as may be agreed to by the Debtors and the Tenant and/or non-Debtor counterparty to the applicable Assumed and Assigned Lease, there shall be no defaults existing under the Assumed and Assigned Leases, nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

23.     In accordance with the Assumption Procedures and the Assumption Procedures Orders, the Debtors have served on all of the Tenants and/or non-Debtor counterparties to the Assumed and Assigned Leases, identified on the Assumption, Assignment, & Cure Notices, as filed with the Court, that included (i) the contracts and/or leases that are to be assumed by the Debtors and assigned to the Buyer in connection with the sale of the Properties; (ii) the Tenant Identifier and address of the respective Tenant under the Assumed and Assigned Lease; (iii) any applicable Cure Amounts; and (iv) the deadline by which any Tenant was required to have filed

20

and served an objection to the proposed, applicable Cure Amounts. No other or further notice is required.

24.    In accordance with the Assumption Procedures and the Assumption Procedures Orders, the Debtors have served and filed with the Court, and the Assignment Schedules, that included (i) the name of the Buyer; (ii) the contracts and/or leases that are to be assumed by the Debtors and assigned to the Buyer in connection with the sale of the Properties; (iii) the Tenant Identifier and address of the respective Tenant under the Assumed Lease; (v) the proposed effective date of the assignment; (vi) a statement as to the ability of the Buyer, to perform the Debtors' obligations under such contracts and/or leases; and (vii) the deadline by which any Tenant was required to have filed and served an objection to the proposed assumption and assignment of the applicable Assumed and Assigned Leases. No other or further notice is required.

25.    To the extent that the Buyer seeks to include additional contracts or leases on the schedule of Assumed and Assigned Leases (the "Additional Contracts"), the Debtors shall file with the Court and serve on each non-Debtor counterparty, including Tenants as applicable, to such Additional Contracts an Assumption, Assignment, & Cure Notice in accordance with the Assumption Procedures and the Assumption Procedures Orders. The counterparty shall have until 4:00 p.m. prevailing Eastern Time on the date that is seven (7) days from the service of such Assumption, Assignment, & Cure Notice to file and serve any objection to the assumption and assignment of the Additional Contract and proposed Cure Amount, if any, in accordance with the Assumption Procedures. If no objection is timely filed and served in accordance with the Assumption Procedures, such Additional Contract shall be deemed an Assumed Lease, then the payment of the proposed Cure Amount, or such other amount as may be agreed between the

Debtors and the Tenant and/or non-Debtor counterparty, if any, shall be authorized, and the

assumption and assignment of such Assumed Lease shall be hereby approved pursuant to this

Order.

26.     Any Tenant and/or non-Debtor counterparty to an Assumed and Assigned Lease

designated to be assumed and assigned to the Buyer who has not timely filed and served an

objection in accordance with the Assumption Procedures and the Assumption Procedures Orders

shall thereafter be barred from objecting or asserting monetary or non-monetary defaults with

respect to any such Assumed and Assigned Lease, and such Assumed and Assigned Lease shall

be deemed assumed by the Debtors and assigned to the Buyer on the Closing Date pursuant to

this Order.

27.     Notwithstanding anything to the contrary herein or in the Assumption Procedures,

the Assumption Procedures Order, the Sale & Bid Procedures, as modified, or the Sale & Bid

Procedures Order, no executory contract or lease shall be considered an Assumed and Assigned

Lease under this Order unless and until such executory contract or lease shall have been assumed

and assigned by the Debtors to the Buyer in accordance with the Assumption Procedures and the

Assumption Procedures Order.

28.     Any objection to the assumption and assignment of any Assumed and Assigned

Lease, including any Additional Contract, and/or proposed Cure Amount, if any, related thereto

that is filed and served in accordance with the Assumption Procedures and the Assumption

Procedures Order that has not been resolved, withdrawn, or overruled on or prior to the Closing

Date may be heard at a later date as set by the Court after the Closing of the Sale, provided,

however, that the Debtors may, in their sole discretion, settle any objections to proposed Cure

Amounts without any further notice to or action by any party or order of the Court, including,

without limitation, the payment of any agreed Cure Amount; provided that notice to and consent

of the Buyer shall be required to the extent, if any, that a Buyer is liable for such Cure Amount

pursuant to the Sale Agreement as may be modified by this Order.

29.    All Tenants and/or non-Debtor counterparties to the Assumed and Assigned

Leases shall cooperate and expeditiously execute and deliver, upon the reasonable request of the

Buyer, and shall not charge the Debtors or the Buyer for any instruments, applications, consents,

or other documents that may be required or requested to effectuate the applicable transfers and

assignments in connection with the Sale and the transactions contemplated thereby.

30.    Nothing in this Order, the Motions, the Assumption, Assignment, & Cure Notices,

the Assignment Schedules, or any other notice or other document is or shall be deemed to be an

admission by the Debtors that any contract or lease is an executory contract or must be assumed

and assigned pursuant to a Sale Agreement or in order to consummate and close the Sale and the

transactions contemplated thereby.

31.    The failure of the Debtors or the Buyer to enforce at any time one or more terms

or conditions of any Assumed and Assigned Leases shall not constitute a waiver of any such

terms or conditions, or of the Debtors' or Buyer's rights to enforce every term and condition of

an Assumed and Assigned Lease.

32.    Except as expressly provided in this Order or the Sale Agreement, nothing in this

Order shall be deemed to waive, release, extinguish, or estop the Debtors or their bankruptcy

estates from asserting, or otherwise impair or diminish any right, including, without limitation

any right of recoupment, claim, cause of action, defense, offset, or counterclaim.

33.    The failure to include specifically or expressly in this Order any particular

provisions of a Sale Agreement or related or ancillary agreements, which are expressly

incorporated herein by reference, shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors, and the Buyer that the Sale Agreement and any related or ancillary agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order.  All of the provisions of this Order are nonseverable and mutually dependent.

34.    In the event of any inconsistency between this Order, the Motions, the Sale & Bid Procedures, as modified, Sale & Bid Procedures Order, the Assumption Procedures, the Assumption Procedures Orders, the Re-Solicitation Order, and the Interim Sale Order, as well as any other or prior order, motion, or pleading filed or entered in these bankruptcy cases, this Order shall govern in all respects.

35.    To the extent that this Order is inconsistent with any provisions or terms of the Sale Agreement, including, without limitation, any ancillary documents executed in connection with a Sale Agreement, this Order shall govern in all respects.

36.    The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

37.    The requirement under Local Bankruptcy Rule 9013-1(G), of a separate memorandum of points and authorities to accompany a motion, is hereby waived with respect to the Motions.

38.    Notice of: (i) the Motions, (ii) the assumption and assignment of the Assumed and Assigned Leases, (iii) the Assumption, Assignment, & Cure Notices, (iv) the Assignment Schedules, (v) the Auction, (vi) the Sale Hearing, and (vii) the sale, and all other hearings transactions contemplated thereby and related orders of this Court, was proper, fair, and equitable under the circumstances and complied in all respects with the Sale & Bid Procedures,

24

as modified, Sale & Bid Procedures Order, the Assumption Procedures, the Assumption

Procedures Orders, and the Interim Sale Order, as applicable, as well as all applicable

Bankruptcy Rules, the Local Rules of the Court, and the Bankruptcy Code.

39.    Notwithstanding any Bankruptcy Rule, including, without limitation, Rules 4001,

6004, and 6006, or any Local Rules of the Court that may otherwise delay the effectiveness of

this Order, the requirements of each of which are hereby waived; the terms and conditions of this

Order shall be effective and enforceable immediately upon entry on the Court's docket.  Time is

of the essence and the Debtors and the Buyer intend to close the sale as soon as practicable.  Any

party objecting to this Order must exercise due diligence in filing an appeal, pursuing a stay, and

obtaining a stay prior to the Closing, or risk its appeal being foreclosed as moot.

40.    As to only acts necessary to, and in furtherance of, the Closing of the sale, the

automatic stay of 11 U.S.C. § 362 is hereby lifted with respect to the Debtors only to the extent

necessary, without further order of the Court, to allow the Buyer to deliver any notice provided

for in the Sale Agreement and allow the Buyer to take any and all actions under the Sale

Agreement.

41.    This Court shall retain exclusive jurisdiction to (a) interpret, implement, and

enforce the terms and provisions of this Order, the Sale & Bid Procedures, as modified, the

Assumption Procedures, the Assumption Procedures Orders, the Re-Solicitation Order, the

Interim Sale Order, and the Sale Agreement, including all amendments thereto and any waivers

and consents thereunder and each of the agreements executed in connection therewith, in all

respects; (b) decide any disputes concerning this Order and the Sale Agreement, or the rights and

duties of the parties hereunder or thereunder or any issues relating to the Sale Agreement and this

Order including, without limitation, the interpretation of the terms, conditions, and provisions

hereof and thereof, the status, nature, and extent of the Properties and any Assumed and Assigned Leases and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens; and (c) enforce the injunctions set forth herein.

42.    Nothing contained in any chapter 11 plan confirmed in either Debtor's chapter 11 case or any order confirming such a plan or any other order in the Debtors' chapter 11 cases, including, without limitation, any order entered converting either of these chapter 11 cases to a case proceeding under chapter 7 of the Bankruptcy Code or after such a conversion, shall alter, conflict with, or derogate from, the provisions of this Order or the Sale Agreement, and to the extent of any such alteration, conflict, or derogation, the terms of this Order and the Sale Agreement shall control.

43.    As necessary and as may be requested by the other, the Debtors and the Buyer, as well as CompassRock Real Estate, LLC, in its capacity as the court-appointed receiver for the Properties, each as may be applicable, shall execute and deliver, or cause to be executed and delivered, all such documents or instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate and close the sale, including, without limitation, such actions as may be necessary to vest, perfect, or confirm, record or otherwise, in the Buyer, its right, title, and interest in and to the Properties and the Assumed and Assigned Leases.


DATED:

_____
United States Bankruptcy Judge

ENTERED ON DOCKET:

*I Ask For This*:

/s/
Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:      (804) 697-2000
Facsimile:      (804) 697-2100
*Counsel for the Debtors &*
*Debtors-In-Possession*

## CERTIFICATION

The undersigned certifies that the foregoing Order has been endorsed by or served on all necessary parties as required by Local Bankruptcy Rule 9022(C)(1).

April [X], 2015                                        /s/
Date                                                   Counsel

668801.v.3.doc