# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

_____
                                        )
*In re*:                                )          Chapter 11
                                        )          (Joint Administration)
River City Renaissance, LC, &           )
River City Renaissance III, LC[1],      )
                                        )
          *Debtors*.                    )          Case No. 14-34080-KLP
_____)

## ORDER (I) APPROVING SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF

On (A) the modified motion of River City Renaissance, LC ("RCR") and River City Renaissance III, LC ("RCR III"; collectively, the "Debtors"; each a "Debtor"), as debtors and debtors-in-possession, through counsel and pursuant to 11 U.S.C. §§ 105(a), 363, and 365 and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking (i) approval of the procedures (the "Sale & Bid Procedures", as modified), to be employed with respect to the proposed sales of all or substantially all of the Debtors' Properties[2]; (ii) approving the form and manner of notice thereof; and (iii) granting related relief (the "Sale Procedures Motion"); on (B) the motion (the "Initial Lease Motion") of the Debtors, through counsel and pursuant to 11 U.S.C. §§ 105(a) and 365 and Rules 2002 and 6006 of the Bankruptcy

---

[1] The final four digits of the federal tax ID numbers for River City Renaissance, LC and River City Renaissance III, LC, respectively, are 8910 and 8102.

[2] **Schedule A**, attached hereto, provides a list of the "Properties" by address and legal description owned by the Debtors.

_____
Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:        (804) 697-2000
Facsimile:        (804) 697-2100
*Counsel for the Debtors & Debtors-In-Possession*

Rules, seeking (i) approval of the procedures (the "Initial Assumption Procedures") to be employed with respect to the assumption and assignment of the unexpired residential lease agreements (the "Leases") between the Debtors and the current tenants in the Debtors' apartments located on the Properties (the "Tenants"); (ii) approving the form and manner of notice thereof (the "Initial Assumption, Assignment, & Cure Notice" and the "Initial Assignment Schedule", each as defined in the Lease Motion); and (iii) granting related relief as is just and proper, as more fully described in the Lease Motion; on (C) the motion (the "Supplemental Lease Motion", and with the Initial Lease Motion, collectively, the "Lease Motions") of the Debtors, through counsel and pursuant to 11 U.S.C. §§ 105(a) and 365 and Rules 2002 and 6006 of the Bankruptcy Rules, seeking (i) approval of the procedures (the "Supplemental Assumption Procedures"; and with the Initial Assumption Procedures, collectively, the "Assumption Procedures") to be employed with respect to the assumption and assignment of the Leases between the Debtors and the Additional Tenants, as defined in the Supplemental Lease Motion; (ii) approving the form and manner of notice thereof (the "Supplemental Assumption, Assignment, & Cure Notice," and with the Initial Assumption, Assignment, & Cure Notice, collectively, the "Assumption, Assignment, & Cure Notices", and the "Amended Assignment Schedule," and with the Initial Assignment Schedule, collectively, the "Assignment Schedules"); and (iii) granting related relief as is just and proper, as more fully described in the Supplemental Lease Motion and on (D) the motion seeking approval of the sale of the Properties and the Agreement For Purchase And Sale Of Real Property (the "Sale Agreement"), as amended, entered into by and among the Debtors DIV River City Renaissance, LLC (the "Buyer"), filed with the Court on March 13, 2015 (the "DIV Sale Motion", and together with the Sale Procedures Motion and the Lease Motions, the "Motions"); and due and proper notice of the Motions having been provided; and no other or further notice needing to be provided;

and the relief requested in the Motions being in the best interests of the Debtors, their bankruptcy estates, their creditors, and parties-in-interest; and the Court having reviewed the Motions and having held a hearing on April 20, 2015 (the "Sale Hearing"), at which parties-in-interest appeared; and the Court having determined that the legal and factual bases set forth in the Motions and at the Sale Hearing establish just cause for the relief granted herein, and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND DETERMINES THAT**:

A.     On July 30, 2014, each Debtor filed with the Court a voluntary petition seeking relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 through 1532 (the "Bankruptcy Code").

B.     On October 15, 2014, the Court entered that certain "*Order Under 11 U.S.C. §§ 327(a) and 329 Authorizing Employment And Retention Of Development Specialists, Inc. As Liquidating Representative For The Debtors*", which approved the Debtors' retention of Development Specialists, Inc. for which Joseph J. Luzinski is the primary designee, as their liquidating representative (the "Liquidating Representative").  (Doc. No. 148.)

C.     On November 6, 2014, the Court entered that certain "*Interim Order (I) Approving Sale And Bid Procedures; (II) Approving The Form And Manner Of Notice; And (III) Granting Related Relief*" (the "Sale & Bid Procedures Order"), which approved the Sale & Bid Procedures that governed the auction of the Debtors' Properties that commenced on or about December 18, 2014 (the "Auction").  (Doc. No. 201.)

D.     On December 5, 2014, the Court entered that certain "*Order (I) Approving Lease Assumption And Assignment Procedures; (II) Approving The Form And Manner Of Notice; And*

*(III) Granting Related Relief*" (the "<u>Initial Assumption Procedures Order</u>").  (Doc. No. 248.)

E.  On December 5, 2014, the Court entered that certain "*Order Determining Credit Bid Rights Of Holders*" (the "<u>Credit Bid Order</u>"), which determined, conditioned, and established the credit-bid rights of the RCR III Holder at the Auction.  (Doc. No. 250.)

F.  On December 18, 2014, the Debtors commenced the Auction in order to facilitate the sale of all of the Debtors' Properties in accordance with the Sale & Bid Procedures Order.

G.  On January 16, 2015, the Court entered that certain "*Order (I) Authorizing Continuance; (II) Authorizing Amendment To Sale & Bid Procedures; And (III) Granting Related Relief*" (the "<u>Re-Solicitation Order</u>"), which granted to the Debtors the express authority to re-solicit bids for the purchase of the Properties in order to determine the market interest and willingness of interested parties to submit bids.  (Doc. No. 337, at 3.)

H.  On March 13, 2015, the Debtors filed with the Court that certain "*Motion For Order (I) Scheduling Interim And Final Hearings On Proposed Sale Of Debtors' Properties; (II) Approving Bid Increments And Bid Protections; (III) Establishing Notice Periods And Bid Deadlines; And (IV) Granting Related Relief*" (the "<u>DIV Sale Motion</u>"), which sought interim and final relief, ultimately, to convey the Properties at an aggregate price of $37.1 million for each Debtor's portfolios of Properties to the Buyer subject to higher and/or better offers.  (Doc. No. 445.)

I.  On March 19, 2015, the Court presided over a hearing on the DIV Sale Motion (the "<u>Interim Hearing</u>"), and on March 27, 2015, the Court entered that certain "*Interim Order (I) Scheduling Interim And Final Hearings On Proposed Sale Of Debtors' Properties; (II) Approving Bid Increments And Bid Protections; (III) Establishing Notice Periods And Bid Deadlines; And (IV) Granting Related Relief*" (the "<u>Interim Sale Order</u>"), which granted interim relief requested in

4

the DIV Sale Motion, including, (i) designating the Buyer as a stalking-horse bidder to acquire the Properties at an increased, aggregate price of $37,350,000.00, with $30,825,000.00 apportioned to RCR and $6,525,000.00 apportioned to RCR III; (ii) establishing bid deadlines; (iii) establishing notice procedures; and (iv) scheduling the Sale Hearing for April 20, 2015.  (Doc. Nos. 468, 470, 494.)

J.      On April 7, 2015, the Debtors filed with the Court a "*Motion Seeking Approval Of Settlement And Compromise*" (the "Settlement Motion"), which seeks the entry of an Order approving a global, mutual release and settlement agreement between and among the Debtors, the Holders, and CWCapital Asset Management, LLC (the "Settlement Agreement").  (Doc. Nos. 503, 524.)  On April 15, 2015, the Court entered that certain "*Order Granting Motion For Expedited Hearing And To Shorten And Limit Notice Pertaining To Debtors' Settlement Motion*" (the "Settlement Hearing Order"), which shortened and limited notice concerning the Settlement Motion and scheduled an expedited hearing on the Settlement Motion for April 20, 2015 at 2:00 PM.  (Doc. No. 530.)

K.      On April 8, 2015, the Court entered that certain "*Order (I) Approving Supplemental Lease Assumption And Assignment Procedures; (II) Approving The Form And Manner Of Notice; And (III) Granting Related Relief*" (the "Supplemental Assumption Procedures Order", and with the Initial Assumption Procedures Order, collectively, the "Assumption Procedures Orders" ).  (Doc. No. 511.)

L.      This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157(b) and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

M.      Venue of the Debtors' chapter 11 proceedings and the Motions before this Court in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

N.      As evidenced by the affidavits and certificates of service filed with the Court and based on the representations of counsel at the Sale Hearing, due and sufficient notice of the Sale Procedures Motion, the Lease Motions, the DIV Sale Motion, the Assumption, Assignment, & Cure Notices, the Interim Hearing, the Sale Hearing, and the relief granted herein has been provided under 11 U.S.C. §§ 105(a), 363, and 365 and Rules 2002, 6004, and 6006 of the Bankruptcy Rules, and the Debtors have complied in all respects with the procedures and notice requirements, as may be applicable, set forth in the Sale & Bid Procedures, as modified, the Sale & Bid Procedures Order, the Assumption Procedures, the Assumption Procedures Orders, the Re-Solicitation Order, and the Interim Sale Order, and no other or further notice need be given.

O.      A reasonable opportunity to object and be heard with respect to the DIV Sale Motion, the Sale Procedures Motion, and the Lease Motions has been afforded to all interested persons and entities, including, without limitation, the Tenants and/or any non-Debtor counterparties to any Leases, as applicable.

P.      As evidenced by the testimony and other evidence proffered or adduced at the Sale Hearing and based on the representations of counsel at the Sale Hearing, the Debtors marketed the Properties and conducted the sale in compliance with the Sale & Bid Procedures, as modified, the Sale & Bid Procedures Order, the Re-Solicitation Order, and the Interim Sale Order, as each may be applicable.

Q.      The Debtors, through the Liquidating Representative, have demonstrated good, sufficient, and sound business purpose and justification for the sale of the Properties to the Buyer because, among other things, the Debtors diligently and in good faith analyzed all other available options in connection with the disposition of the Properties and determined that: (a) the terms and conditions set forth in the Sale Agreement between the Debtors and the Buyer; (b) the transfer to

the Buyer of the Properties pursuant thereto; and (c) the Purchase Price are all fair and reasonable and together constitute the highest and best value that may be obtained for the Properties under the circumstances.

R.    The Properties constitute property of each respective Debtor's bankruptcy estate and title thereto is vested in their bankruptcy estates within the meaning of 11 U.S.C. § 541.  RCR is the sole and lawful owner of the fee simple interests in the RCR Properties, which includes any right, title, and interest in all associated personal property, fixtures, and appliances and warranties, located on, within, or used in connection with the RCR Properties that are owned by RCR. RCR III is the sole and lawful owner of the fee simple interests in the RCR III Properties, which includes any right, title, and interest in all associated personal property, fixtures, and appliances and warranties, located on, within, or used in connection with the RCR III Properties that are owned by RCR III.

S.    The Buyer is not an "insider" of either Debtor as that term is defined in 11 U.S.C. § 101(31).

T.    The Buyer has acted in good faith under 11 U.S.C. § 363(m).

U.    The Buyer has not colluded or otherwise acted in manner that would implicate 11 U.S.C. § 363(n).

V.    The consideration provided by the Buyer for the Properties pursuant to the Sale Agreement: (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Properties; (iii) will maximize the recovery for the Debtors' creditors, bankruptcy estates, equity security holders, stakeholders, and other parties-in-interest; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, commonwealth, or possession thereof, or the District of Columbia.

W.    The sale of the Properties must be approved and consummated promptly to obtain the value provided under the terms of the Sale Agreement.

X.    The transfer of the Properties to the Buyer is a legal, valid, and effective transfer of the Properties, and shall vest the Buyer with all right, title, and interest of the Debtors to the Properties, such transfer is free and clear of any lien, claim, or interest in the Properties of any entity other than the applicable Debtor's bankruptcy estate, including, without limitation, mortgages, deeds of trust, tax liens and any statutory or common law liens, possessory or otherwise, charge, pledge, security interest, option or other encumbrance, including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction, and any monetary amounts which are secured by any liens (collectively, the "Liens"), except for those items defined in the Sale Agreement, and which are referred to hereinafter as the "Permitted Exceptions".

Y.    If the sale of the Properties by the Debtor were not free and clear of any and all Liens, except for the Permitted Exceptions, as set forth in the Sale Agreement and this Order, or if the Buyer would, or in the future could, be liable for any of the Liens, the Buyer would not have entered into the Sale Agreement or submitted an offer for the Properties and would not consummate the Sale contemplated by the Sale Agreement, thus adversely affecting the Debtors, their bankruptcy estates, their creditors, their equity security holders, their stakeholders, and other parties-in-interest.

Z.    The Debtor may sell its interest in the Properties free and clear of all Liens, except the Permitted Exceptions, because in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) is satisfied.  All holders of any Liens that did not object to the Sale Procedures Motion, the Lease Motions, the Auction, or the DIV Sale Motion, or that withdrew their objections

thereto, are deemed to have consented to the sale of the Properties pursuant to 11 U.S.C. § 363(f)

(2) and all holders of Liens are adequately protected within the meaning of 11 U.S.C. § 363(e) by

having their Liens attach to the cash proceeds of the sale ultimately attributable to the property

against or in which they claim an interest with the same priority, validity, force, and effect as they

were attached to such property immediately before the closing of the sale.

AA.    The sale of the Properties to the Buyer meets a contingency of the Settlement

Agreement because the sale of the Properties is to a third-party, cash buyer for a gross price of no

less than $30,825,000.00 for the RCR Properties and $6,525,000.00 for the RCR III Properties,

which shall close on or before May 15, 2015, or the Extension Period, as defined in the Settlement

Agreement.    The Holders, therefore, consent to the sale of the Properties to the Buyer in

accordance with 11 U.S.C. § 363(f)(2).

BB.    Subject to entry of this Order, each Debtor has full corporate power and authority to

execute and deliver the Sale Agreement and to perform all of their respective obligations

thereunder, and the sale of the Properties and assumption and assignment of the Assumed and

Assigned Leases has been duly and validly authorized by all corporate authority necessary to

consummate the sale.    No consents or approvals, other than as expressly provided for in the Sale

Agreement and the entry of this Order, are required by the Debtors to consummate the sale.

CC.    The assumption of the Assumed and Assigned Leases by the Debtors and the

assignment thereof to the Buyer, as applicable, pursuant to the terms of the Assumption Procedures

Orders and this Order, is integral to the Sale Agreement and is in the best interests of the Debtors,

their bankruptcy estates, their creditors, their equity security holders, their stakeholders, and other

parties-in-interest, and represents the reasonable exercise of sound and prudent business judgment

by the Debtors, exercised through the Liquidating Representative.    Accordingly, such assumption

and assignment is reasonable and enhances the value of the Debtors' bankruptcy estates.  No provision of any Assumed and Assigned Lease that purports to prohibit, restrict, or condition the assignment of any such Assumed and Assigned Lease in connection with the sale shall have any force or effect.  Pursuant to 11 U.S.C. § 365(f), the Assumed and Assigned Leases shall be assigned and transferred to, and remain in full force and effect for the benefit of the Buyer.

DD.    The Debtors have met all requirements of 11 U.S.C. § 365(b) for each of the Assumed and Assigned Leases.  The Debtors have provided adequate assurance of cure of any default, if any, existing prior to the Closing Date under any of the Assumed and Assigned Leases, within the meaning of 11 U.S.C. § 365(b)(1)(A), and provided adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from such default under any of the Assumed and Assigned Leases within the meaning of 11 U.S.C. § 365(b)(1)(B).

EE.    The Buyer has provided adequate assurance of its future performance of and under the Assumed and Assigned Leases, within the meaning of 11 U.S.C. § 365(b)(1)(C), to the extent applicable, including, without limitation, any  provisions, obligations, and responsibilities concerning Tenants' security deposits and related refund obligations.  The Buyer shall be obligated to the Tenants to perform all duties, obligations, and responsibilities as lessor and landlord under the terms of the Assumed and Assigned Leases, including, without limitation, any provisions, obligations, and responsibilities concerning Tenants' security deposits and related refund obligations.  At Closing, the Debtor or CompassRock Real Estate, LLC, in its capacity as the court appointed receiver for the Properties, as may be applicable, shall transfer to the Buyer all funds held in escrow or maintained in other accounts that constitute the Tenants' security deposits.

FF.    The Tenants and other non-Debtor counterparties to the Assumed and Assigned Leases were provided with notice and the opportunity to object and be heard with respect to the

sale, the Assumption, Assignment, & Cure Notices, and the Assignment Schedules, in accordance with the Assumption Procedures and the Assumption Procedures Orders, and are deemed to have consented to assumption and assignment pursuant to 11 U.S.C. § 363(f)(2). Except as expressly set forth in the Sale Agreement and in this Order, the transfer of the Assumed and Assigned Leases will not subject the Buyer to any liability whatsoever prior to the Closing Date, or by reason of such transfer under the laws of the United States, any state, commonwealth, territory, or possession thereof, or the District of Columbia, based, in whole or in part, on any theory of law or equity.

GG.    The Sale is not for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, commonwealth, territory, or possession thereof, or the District of Columbia. Each of the Debtors and the Buyer are not and will not be entering into the Sale Agreement fraudulently.

HH.    The sale and assignment of the Properties outside of a plan of reorganization pursuant to the Sale Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The sale of the Properties and the Sale Agreement do not constitute a *sub rosa* chapter 11 plan.

II.    Time is of the essence in consummating the sale of the Properties. In order to maximize the value of the Properties, it is essential that the sale and assignment of the Properties and the Assumed and Assigned Leases occur within the time constraints set forth in the Sale Agreement. The sale must be approved and consummated promptly in order to preserve the viability of the Properties as going concerns, to maximize the value to the Debtors, their bankruptcy estates, their creditors, their equity security holders, their stakeholders, and parties-in-interest. There exists cause to lift any applicable stay that would delay the effectiveness of the

11

entry of this Order, including, without limitation, the stays imposed by Rules 6004 and 6006 of the

Bankruptcy Rules and any Local Rules of the Court.

JJ.    The Debtors' decision to enter into the Sale Agreement is a reasonable exercise of

the Debtors' business judgment, exercised through the Liquidating Representative, and is in the

best interests of the Debtors, their bankruptcy estates, their creditors, their equity security holders,

their stakeholders, and all other parties-in-interest; therefore

**THE COURT HEREBY ORDERS, ADJUDGES, AND DECREES THAT**:

1.    The Motions are GRANTED as to the Debtors and the Properties, as modified by

the terms of this Order.

2.    All objections to the Motions, the Sale & Bid Procedures Order, and the

Assumption Procedures Orders, the Interim Sale Order, and this Order, or the relief granted herein,

that have not been overruled, withdrawn, waived, settled, or otherwise resolved, are hereby

overruled and denied on the merits with prejudice.

3.    The Court's findings of fact and conclusions of law in each of the Sale & Bid

Procedures Order, and the Assumption Procedures Orders, the Re-Solicitation Order, and the

Interim Sale Order, as well as the records of the Interim Hearing and the Sale Hearing, and any

other hearings related thereto, are expressly incorporated herein by reference.

4.    Pursuant to 11 U.S.C. § 363, the Sale Agreement and each of the transactions

contemplated thereby are approved in their entirety, and the Debtors are authorized, empowered,

and directed to enter into and perform its obligations under the Sale Agreement, and to execute and

perform such agreements or documents and take any other actions as necessary and desirable to

effectuate the terms of the Sale Agreement.

5.    At Closing, the Debtors are authorized to pay and disburse Customary and

Reasonable Closing Costs, as defined in the Sale & Bid Procedures Order, as modified.  Subject to

Court approval, at Closing, the Debtors are authorized to pay and disburse proceeds in accordance

with the terms of the Settlement Agreement, as directed and authorized by an Order approving the

Settlement Agreement.

6.       Pursuant 11 U.S.C. §§ 105, 363(b), and 363(f), the sale of the Properties to the

Buyer, free and clear of all Liens other than the Permitted Exceptions, is approved.   Upon

consummation and closing of the Sale Agreement, the Debtors' rights, title, and interest in and to

the Properties shall be transferred to the Buyer free and clear of all Liens other than Permitted

Exceptions, with all such Liens, including, without limitation, any and all "claims" as defined in 11

U.S.C. § 101(5), to attach to amounts payable to the Debtors under the Sale Agreement with same

validity, force, and effect as the same had with respect to the assets and the Properties at issue prior

to the sale.

7.       The Debtors are authorized, empowered, and directed to have assumed and

assigned the Assumed and Assigned Leases to the Buyer.  The Buyer is authorized, empowered,

and directed to perform all of the Debtors' obligations, responsibilities, and duties under the terms

and provisions of the Assumed and Assigned Leases, including, without limitation, any and all

obligations, responsibilities, and duties related to the Tenants' security deposits and the refunding

of security deposits.  At Closing, the Debtors or CompassRock Real Estate, LLC, in its capacity as

the court appointed receiver for the Properties, as may be applicable, shall transfer to the Buyer all

funds held in escrow or maintained in other accounts that constitute the Tenants' security deposits.

8.       If any creditor, person, or entity that has filed financing statements, mortgages,

mechanic's liens, *lis pendens*, or other documents or agreements evidencing Liens on or against the

Properties shall not have delivered to the Debtors prior to the Closing of the Sale, in proper form

for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens that the person or entity has with respect to the Properties, or otherwise, then (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Properties; and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, when filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens on or against the Properties of any kind or nature whatsoever except for the Permitted Exceptions.

9.      This Order (a) shall be effective as a determination that, upon the Closing of the sale, all Liens of any kind or nature whatsoever existing as to either Debtor or the Properties prior to the Closing of the sale, except for the Permitted Exceptions, have been unconditionally released, discharged, and terminated, other than any surviving obligations, and that the conveyances described herein have been effected; and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, clerks of court, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Properties, or any portions thereof.

10.     All persons and entities, including, without limitation, all debt security holders, all equity security holders, governmental, tax, and regulatory authorities, lenders, trade stakeholders, and other stakeholders, holding Liens of any kind or nature whatsoever against or in the Debtors or

the Properties, except the Permitted Exceptions, whether legal or equitable, secured or unsecured,

matured or unmatured, contingent or non-contingent, senior or subordinated, arising under or out

of, in connection with, or in any way relating to the Properties prior to the Closing of the sale, the

transfer of the Properties to the Buyer, hereby are forever barred, estopped, and permanently

enjoined from asserting such persons' or entities' Liens against the Buyer, its successors or

assigns, its property, or the Properties, such persons' or entities' Liens.

11.    The consideration provided by the Buyer for the Properties under the Sale

Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy

Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under

the laws of the United States, and any state, commonwealth, territory, or possession thereof, or the

District of Columbia.  Accordingly, the sale of the Properties may not be avoided under 11 U.S.C.

§ 363(n) or any other provision of the Bankruptcy Code.

12.    Upon the Closing of the sale, this Order shall be construed as and shall constitute,

for any and all purposes, a full and complete general assignment, conveyance, and transfer of the

Properties or a bill of sale transferring good and marketable title in the Properties to the Buyer

pursuant to the terms of the Sale Agreement.

13.    The Sale Agreement and any related agreements, documents, or other instruments

may be modified, amended, or supplemented by the parties thereto, only in a writing signed by

such parties, and in accordance with the terms thereof, without further order of the Court, provided

that any such modification, amendment, or supplement does not have a material adverse effect on

the Debtors or their bankruptcy estates.  The Debtors and the Buyer are expressly authorized,

without further order of this Court, to execute amendments to the Sale Agreement to provide for

the Closing to occur on or before the Closing Date.  Any modification, amendment, or supplement

to the Sale Agreement that has a materially adverse effect on the Debtors or their bankruptcy estates must be approved by order of the Court following the filing of a motion to approve such proposed modification, amendment, or supplement, and notice thereof and an opportunity to be heard by all interested parties.

14.     The failure specifically to include any particular provisions of the Sale Agreement, which is expressly incorporated herein by reference, in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Sale Agreement is hereby authorized and approved in its entirety, as it may be amended or supplemented in accordance with its terms and this Order.

15.     This Order and the Sale Agreement shall be binding in all respects upon the Debtors, all stakeholders of the Debtors, whether known or unknown, and any subsequent trustees appointed in either Debtor's chapter 11 proceeding or upon a conversion of either proceeding to a case under chapter 7 of the Bankruptcy Code.

16.     Unless expressly stated in either this Order or the Sale Agreement, the Buyer and its respective affiliates, predecessors, successors, assigns, members, partners, officers, directors, principals, and shareholders, or the equivalent, are not and shall not be (i) deemed a "successor" in any respect to the Debtors or their bankruptcy estates as a result of the consummation of the sale, or the transactions contemplated thereby, or the Sale Agreement or any other event occurring in the Debtors' chapter 11 proceedings under any theory of law or equity; (ii) deemed to have *de facto*, or otherwise, merged, or consolidated with or into the Debtors or their bankruptcy estates; (iii) deemed to have a common identity with either Debtor; (iv) deemed to have a continuity of enterprise with the Debtors; or (v) deemed to be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors.  Except for any liabilities relating to the Assumed and

Assigned Leases, including the security deposit refund obligations due to Tenants, the Buyer shall

not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation

of any of the Debtors or their bankruptcy estates, including, without limitation, any bulk sales law,

successor liability, liability or responsibility for any claim against the Debtors or against an insider

of the Debtors, or similar liability, except as otherwise expressly provided in the Sale Agreement.

The Motions contain sufficient notice of such limitation in accordance with the Bankruptcy Rules

and any applicable Local Rule of the Court.  Except as otherwise provided in this Order or the Sale

Agreement, the transfer and assignment of the Properties and the Assumed and Assigned Leases to

a Buyer, as applicable, under the Sale Agreement shall not result in the Buyer, or its respective

affiliates, predecessors, successors, assigns, members, partners, officers, directors, principals,

vendors, professionals, and shareholders, or the equivalent (i) having any liability or responsibility

for any claim against the Debtors or against an insider of the Debtors; (ii) having any liability

whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity,

whether by payment, setoff or otherwise, directly or indirectly, any Liens; or (iii) having any

liability or responsibility to the Debtors except as is expressly set forth in the Sale Agreement.

      17.    Under 11 U.S.C. §§ 105(a), 363, and 365, and subject to and conditioned upon the

consummation and Closing of the sale, the Debtors' assumption of the Assumed and Assigned

Leases and assignment thereof to the Buyer, free and clear of any and all Liens pursuant to the

terms set forth in the Sale Agreement, is expressly approved, and the requirements of 11 U.S.C. §§

365(b)(1) and 365(f)(2), to the extent applicable, with respect thereto are deemed satisfied.  Each

Tenant and each non-Debtor counterparty to an Assumed and Assigned Lease is hereby forever

barred, estopped, and permanently enjoined from raising or asserting against the Debtors, the

Buyer, or the property or assets of any of such parties, any assignment fee, default, breach, claim,

pecuniary loss, liability, or obligation, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinate, arising out of, in connection with, or in any way related to the Assumed and Assigned Leases existing as of the Closing Date or arising by reason of the assumption, assignment, sale, and/or Closing.  Notwithstanding the foregoing, pursuant to the terms and provisions of the Sale Agreement, the Buyer shall be liable for all obligations arising after the Closing Date under the Assumed and Assigned Leases, including, without limitation, any and all liabilities, responsibilities, duties, and obligations relating to the refund of security deposit obligations due to Tenants, and the Debtors shall not be liable for any such liabilities, responsibilities, duties, and obligations.

18.     The Assumed and Assigned Leases shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms.  Upon the Closing, in accordance with 11 U.S.C. §§ 363 and 365, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Assumed and Assigned Leases.  The assignment of each Assumed Lease is deemed to be made in good faith under, and entitled to the protection of, 11 U.S.C. § 363(m).

19.     The Buyer has provided adequate assurance of its future performance under the relevant Assumed and Assigned Leases within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B), as well as 11 U.S.C. § 365(b)(3) to the extent applicable.  All other requirements and conditions under 11 U.S.C. §§ 363 and 365 for the assumption by the Debtors and assignment to the Buyer of the Assumed and Assigned Leases have been satisfied.

20.     No sections or provisions of the Assumed and Assigned Leases that purport to (a) prohibit, restrict, or condition the Debtors' assignment of the Assumed and Assigned Leases,

including, without limitation, the conditioning of such assignment on the consent of the Tenant or non-Debtor counterparty to such Assumed and Assigned Leases; (b) authorize the termination, cancellation, or modification of the Assumed and Assigned Leases based on the filing of a bankruptcy case, the financial condition of the Debtors, or similar circumstances; (c) declare a breach or default as a result of a change in control in respect of the Debtors; or (d) provide for additional payments, penalties, conditions, renewals, extensions, charges, other financial accommodations in favor of the non-Debtor third party to the Assumed and Assigned Leases, or modification of any term or condition upon the assignment of an Assumed Lease or the occurrence of the conditions set forth in subsection (b) above, shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions under 11 U.S.C. § 365(f) and/or are otherwise unenforceable under 11 U.S.C. § 365(e). The entry of this Order constitutes the consent of the respective Tenants and non-Debtor parties to the Assumed and Assigned Leases to the assumption and assignment of such agreements without the necessity of obtaining such party's consent, written or otherwise, to such assumption or assignment. All Assumed and Assigned Leases shall remain in full force and effect, without existing default(s), subject only to payment of the applicable Cure Amount, if any, as set forth on the Assumption, Assignment, & Cure Notices filed with the Court on or about December 10, 2014 and April 10, 2015, in accordance with the Sale Agreement.

21. There shall be no rent accelerations, assignment fees, increases, or any other fees charged to the Buyer, its successors or assigns, or the Debtors as a result of the assumption and assignment of the Assumed and Assigned Leases.

22. Payment of the Cure Amounts, if any, set forth in the Assumption, Assignment, & Cure Notices, or such other amount as may be agreed to by the Debtors and the Tenant and/or the

non-Debtor counterparty to the applicable Assumed and Assigned Lease, in accordance with the Sale Agreement is hereby authorized.  All defaults or other obligations of the Debtor shall be deemed cured and shall no longer exist upon the payment, or other satisfaction, of the Cure Amounts set forth in the Assumption, Assignment, & Cure Notices against which no timely objections are properly filed and served in accordance with the Assumption Procedures and the Assumption Procedures Orders, or such other amount as may be agreed to by the Debtors and the Tenant and/or non-Debtor counterparty to the applicable or Assumed and Assigned Lease.  Except for the Cure Amounts set forth in the Assumption, Assignment, & Cure Notices against which no timely objections are properly filed and served in accordance with the Assumption Procedures and the Assumption Procedures Orders, or such other amount as may be agreed to by the Debtors and the Tenant and/or non-Debtor counterparty to the applicable Assumed and Assigned Lease, there shall be no defaults existing under the Assumed and Assigned Leases, nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

23.    In accordance with the Assumption Procedures and the Assumption Procedures Orders, the Debtors have served on all of the Tenants and/or non-Debtor counterparties to the Assumed and Assigned Leases, identified on the Assumption, Assignment, & Cure Notices, as filed with the Court, that included (i) the contracts and/or leases that are to be assumed by the Debtors and assigned to the Buyer in connection with the sale of the Properties; (ii) the Tenant Identifier and address of the respective Tenant under the Assumed and Assigned Lease; (iii) any applicable Cure Amounts; and (iv) the deadline by which any Tenant was required to have filed and served an objection to the proposed, applicable Cure Amounts.  No other or further notice is required.

24.     In accordance with the Assumption Procedures and the Assumption Procedures Orders, the Debtors have served and filed with the Court, and the Assignment Schedules, that included (i) the name of the Buyer; (ii) the contracts and/or leases that are to be assumed by the Debtors and assigned to the Buyer in connection with the sale of the Properties; (iii) the Tenant Identifier and address of the respective Tenant under the Assumed Lease; (v) the proposed effective date of the assignment; (vi) a statement as to the ability of the Buyer, to perform the Debtors' obligations under such contracts and/or leases; and (vii) the deadline by which any Tenant was required to have filed and served an objection to the proposed assumption and assignment of the applicable Assumed and Assigned Leases.   No other or further notice is required.

25.     To the extent that the Buyer seeks to include additional contracts or leases on the schedule of Assumed and Assigned Leases (the "Additional Contracts"), the Debtors shall file with the Court and serve on each non-Debtor counterparty, including Tenants as applicable, to such Additional Contracts an Assumption, Assignment, & Cure Notice in accordance with the Assumption Procedures and the Assumption Procedures Orders.  The counterparty shall have until 4:00 p.m. prevailing Eastern Time on the date that is seven (7) days from the service of such Assumption, Assignment, & Cure Notice to file and serve any objection to the assumption and assignment of the Additional Contract and proposed Cure Amount, if any, in accordance with the Assumption Procedures.   If no objection is timely filed and served in accordance with the Assumption Procedures, such Additional Contract shall be deemed an Assumed Lease, then the payment of the proposed Cure Amount, or such other amount as may be agreed between the Debtors and the Tenant and/or non-Debtor counterparty, if any, shall be authorized, and the assumption and assignment of such Assumed Lease shall be hereby approved pursuant to this

Order.

26.      Any Tenant and/or non-Debtor counterparty to an Assumed and Assigned Lease designated to be assumed and assigned to the Buyer who has not timely filed and served an objection in accordance with the Assumption Procedures and the Assumption Procedures Orders shall thereafter be barred from objecting or asserting monetary or non-monetary defaults with respect to any such Assumed and Assigned Lease, and such Assumed and Assigned Lease shall be deemed assumed by the Debtors and assigned to the Buyer on the Closing Date pursuant to this Order.

27.      Notwithstanding anything to the contrary herein or in the Assumption Procedures, the Assumption Procedures Order, the Sale & Bid Procedures, as modified, or the Sale & Bid Procedures Order, no executory contract or lease shall be considered an Assumed and Assigned Lease under this Order unless and until such executory contract or lease shall have been assumed and assigned by the Debtors to the Buyer in accordance with the Assumption Procedures and the Assumption Procedures Order.

28.      Any objection to the assumption and assignment of any Assumed and Assigned Lease, including any Additional Contract, and/or proposed Cure Amount, if any, related thereto that is filed and served in accordance with the Assumption Procedures and the Assumption Procedures Order that has not been resolved, withdrawn, or overruled on or prior to the Closing Date may be heard at a later date as set by the Court after the Closing of the Sale, provided, however, that the Debtors may, in their sole discretion, settle any objections to proposed Cure Amounts without any further notice to or action by any party or order of the Court, including, without limitation, the payment of any agreed Cure Amount; provided that notice to and consent of the Buyer shall be required to the extent, if any, that a Buyer is liable for such Cure Amount

pursuant to the Sale Agreement as may be modified by this Order.

29.    All Tenants and/or non-Debtor counterparties to the Assumed and Assigned Leases shall cooperate and expeditiously execute and deliver, upon the reasonable request of the Buyer, and shall not charge the Debtors or the Buyer for any instruments, applications, consents, or other documents that may be required or requested to effectuate the applicable transfers and assignments in connection with the Sale and the transactions contemplated thereby.

30.    Nothing in this Order, the Motions, the Assumption, Assignment, & Cure Notices, the Assignment Schedules, or any other notice or other document is or shall be deemed to be an admission by the Debtors that any contract or lease is an executory contract or must be assumed and assigned pursuant to a Sale Agreement or in order to consummate and close the Sale and the transactions contemplated thereby.

31.    The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assumed and Assigned Leases shall not constitute a waiver of any such terms or conditions, or of the Debtors' or Buyer's rights to enforce every term and condition of an Assumed and Assigned Lease.

32.    Except as expressly provided in this Order or the Sale Agreement, nothing in this Order shall be deemed to waive, release, extinguish, or estop the Debtors or their bankruptcy estates from asserting, or otherwise impair or diminish any right, including, without limitation any right of recoupment, claim, cause of action, defense, offset, or counterclaim.

33.    The failure to include specifically or expressly in this Order any particular provisions of a Sale Agreement or related or ancillary agreements, which are expressly incorporated herein by reference, shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors, and the Buyer that the Sale Agreement and any related

or ancillary agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order.  All of the provisions of this Order are nonseverable and mutually dependent.

34.    In the event of any inconsistency between this Order, the Motions, the Sale & Bid Procedures, as modified, Sale & Bid Procedures Order, the Assumption Procedures, the Assumption Procedures Orders, the Re-Solicitation Order, and the Interim Sale Order, as well as any other or prior order, motion, or pleading filed or entered in these bankruptcy cases, this Order shall govern in all respects.

35.    To the extent that this Order is inconsistent with any provisions or terms of the Sale Agreement, including, without limitation, any ancillary documents executed in connection with a Sale Agreement, this Order shall govern in all respects.

36.    The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

37.    The requirement under Local Bankruptcy Rule 9013-1(G), of a separate memorandum of points and authorities to accompany a motion, is hereby waived with respect to the Motions.

38.    Notice of: (i) the Motions, (ii) the assumption and assignment of the Assumed and Assigned Leases, (iii) the Assumption, Assignment, & Cure Notices, (iv) the Assignment Schedules, (v) the Auction, (vi) the Sale Hearing, and (vii) the sale, and all other hearings transactions contemplated thereby and related orders of this Court, was proper, fair, and equitable under the circumstances and complied in all respects with the Sale & Bid Procedures, as modified, Sale & Bid Procedures Order, the Assumption Procedures, the Assumption Procedures Orders, and the Interim Sale Order, as applicable, as well as all applicable Bankruptcy Rules, the Local Rules

of the Court, and the Bankruptcy Code.

39.     Certain former tenants at the Properties who began their tenancies before the Petition Date have vacated the Properties after the Petition Date (the "Former Tenants").  The Former Tenants have been, or will be, identified on a schedule to be filed with the Court on or before April 21, 2015 (the "Former Tenant Schedule").  Subject to the rights of only those Former Tenants identified on the Former Tenant Schedule to receive notice of the Sale of the Properties to the Buyer, assert any objections on or before April 29, 2015 at 9:00 AM prevailing Eastern time, and attend a hearing on any such objection on April 29, 2015 at 1:00 PM prevailing Eastern time, notwithstanding any Bankruptcy Rule, including, without limitation, Rules 4001, 6004, and 6006, or any Local Rules of the Court that may otherwise delay the effectiveness of this Order, the requirements of each of which are hereby waived; the terms and conditions of this Order shall be effective and enforceable immediately upon entry on the Court's docket.

40.     As to only acts necessary to, and in furtherance of, the Closing of the sale, the automatic stay of 11 U.S.C. § 362 is hereby lifted with respect to the Debtors only to the extent necessary, without further order of the Court, to allow the Buyer to deliver any notice provided for in the Sale Agreement and allow the Buyer to take any and all actions under the Sale Agreement.

41.     This Court shall retain exclusive jurisdiction to (a) interpret, implement, and enforce the terms and provisions of this Order, the Sale & Bid Procedures, as modified, the Assumption Procedures, the Assumption Procedures Orders, the Re-Solicitation Order, the Interim Sale Order, and the Sale Agreement, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, in all respects; (b) decide any disputes concerning this Order and the Sale Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Sale Agreement and this Order

including, without limitation, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Properties and any Assumed and Assigned Leases and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens; and (c) enforce the injunctions set forth herein.

42.     Nothing contained in any chapter 11 plan confirmed in either Debtor's chapter 11 case or any order confirming such a plan or any other order in the Debtors' chapter 11 cases, including, without limitation, any order entered converting either of these chapter 11 cases to a case proceeding under chapter 7 of the Bankruptcy Code or after such a conversion, shall alter, conflict with, or derogate from, the provisions of this Order or the Sale Agreement, and to the extent of any such alteration, conflict, or derogation, the terms of this Order and the Sale Agreement shall control.

43.     As necessary and as may be requested by the other, the Debtors and the Buyer, as well as CompassRock Real Estate, LLC, in its capacity as the court-appointed receiver for the Properties, each as may be applicable, shall execute and deliver, or cause to be executed and delivered, all such documents or instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate and close the sale, including, without limitation, such actions as may be necessary to vest, perfect, or confirm, record or otherwise, in the Buyer, its right, title, and interest in and to the Properties and the Assumed and Assigned Leases.

DATED:  Apr 22 2015

/s/ Keith L. Phillips
United States Bankruptcy Judge

ENTERED ON DOCKET: Apr 23 2015


*I Ask For This*:

/s/ James K. Donaldson
Robert H. Chappell, III, Esq. (VSB No. 31698)
Timothy G. Moore, Esq. (VSB No. 41730)
Jennifer J. West, Esq. (VSB No. 47522)
James K. Donaldson, Esq. (VSB No. 80307)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:      (804) 697-2000
Facsimile:      (804) 697-2100
*Counsel for the Debtors &*
*Debtors-In-Possession*

*Seen And Agreed*:

/s/ Mark D. Taylor (*by James Donaldson with permission via e-mail on April 21, 2015*)
Mark D. Taylor, Esq. (VSB No. 42416)
VLP Law Group
1629 K Street, NW, Suite 300
Washington, DC 20006

Matthew W. Levin, Esq. (*admitted pro hac vice*)
Robbin S. Rahman, Esq. (*admitted pro hac vice*)
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309-4528
*Counsel for the Holders*
*By & Through The Special Servicer*

*Seen And Agreed*:

/s/ Jonathan L. Hauser (*by James Donaldson with permission via e-mail on April 21, 2015*)
Jonathan L. Hauser, Esq. (VSB No. 18688)
Troutman Sanders, LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
*Counsel for DIV River City Renaissance, LLC*

## **CERTIFICATION**

The undersigned certifies that the foregoing Order has been endorsed by or served on all necessary parties as required by Local Bankruptcy Rule 9022(C)(1).

April 22, 2015                                              /s/ James K. Donaldson
Date                                                              Counsel

670578.v.2.doc

## SCHEDULE A

**PROPERTIES LIST & LEGAL DESCRIPTIONS**

**RIVER CITY RENAISSANCE, LC PROPERTIES**

2734-2736 W. Grace Street

All those certain tracts or parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia containing 0.169 acre, more particularly described as follows:

BEGINNING at a rod found on the north line of West Grace Street, said point being 71.64 feet East of the east line of North Boulevard; thence leaving said Street, North 35 degrees 54 minutes 30 seconds East, a distance of 86.00 feet to a point on the terminus of a 15 foot alley; thence along terminus of said alley, South 54 degrees 1 minute 42 seconds East, a distance of 8.00 feet to a point on the east line of said Alley; thence with and along said alley; North 35 degrees 54 minutes 30 seconds East, a distance of 59.00 feet to a rod found on the south line of a 20 foot alley; thence with and along said alley, South 53 degrees 59 minutes 58 seconds East, a distance of 46.00 feet to a rod
found; thence leaving said alley, South 35 degrees 54 minutes 30 seconds West:, a distance of 145.00 feet to a lead hub found on the north line of West Grace Street; thence with and along said Street, North 54 degrees West, 54.00 feet to the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a liability company, by Deed from Donald K. Waybright and Teena H. Waybright, husband and wife, dated February 3, 1998, recorded February 13, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 98-3872.

706 N. Boulevard

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.107 acre, more particularly described as follows:

BEGINNING at a rod found on the west line of North Boulevard, said rod being 87.00 feet North of the north line of Monument Avenue; thence leaving said Boulevard North 52 degrees 28 minutes 38 seconds West, a distance of108.40 feet to a lead hub found; thence North 37 degrees 31 minutes 22 seconds East, a distance of 45.31 feet to a lead hub found on the south line of a 15 feet alley; thence with and along said alley; South 52 degrees 28 minutes 38 seconds east, a distance of 97.71 feet to a rod found on the west line of North Boulevard; thence with and along said Boulevard, South 24 degrees 15 minutes 00 seconds West, a distance of 46.56 feet to the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited liability company by Deed from Ivry Thompson, married and Bradley Coker, unmarried, dated January 16, 1998, recorded January 30, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 98-2724.

801-803 N. Boulevard

All those certain tracts or parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.100 acre, more particularly described as follows:

BEGINNING at a stone found on the north east corner of North Boulevard and West Grace Street; thence with and along the east line of North Boulevard, North 22 degrees 43 minutes 30 seconds East to a nail hole found; thence leaving said Boulevard, South 54 degrees East to a PK Nail found on the west line of a 7 foot alley in common; thence southwardly along said alley, South 35 degrees 54 minutes 30 seconds West, a distance of 1.38 feet to a rod found at the terminus of said alley; thence Southeasterly along the terminus of said 7 foot alley, South 54 degrees East, a distance of 7.00 feet to a rod found; thence leaving said alley, South35 degrees 54 minutes 30 seconds West, a distance of 54.26 feet to a rod found on the north line of West Grace Street; thence along said Street, North 54 degrees West, a distance of 71.64 feet to the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited liability company, by Deed from P & S Ltd, Partnership, a Maryland limited partnership, dated January 12, 1998, recorded January 15, 1998, in the Clerk1s Office, Circuit Court of the City of Richmond, Virginia as Instrument 98-1376.

2225 Monument

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia containing 0.084 acre and more particularly described as follows:

BEGINNING at a nail found on the south line of Monument Avenue; said nail being 363.25 feet West of the west line of Allison Street; thence leaving said Avenue, South 36 degrees 54 minutes 34 seconds West, a distance of 130.0 feet to a point on the north line of a 15 foot alley; thence along said Alley, North 53 degrees 05 minutes 26 seconds West, a distance of 28.00 feet to a rod found; thence leaving said alley; North 36 degrees 54 minutes 34 seconds East, a distance of 130.00 feet to a nail found on the south line of Monument Avenue; thence with and along the south line of said Avenue, South 53 degrees 05 minutes 26 seconds East, 28.00 feet to the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited liability company, by Deed dated October 9, 1998, recorded October 16, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 98-27715

2215 Monument

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia containing 0.196 acre, more particularly described as follows:

BEGINNING at a "X" cut found on the south line of Monument Avenue; said "X" cut being 213.55 feet West of the west line of Allison Street; thence leaving said Avenue; South 35 degrees 07 minutes 00 seconds West, a distance of 130.00 feet to a rod round on the north line of 15 foot alley; thence along said alley, North 54 degrees 53 minutes 00 seconds West, a distance of 65.87 feet to a rod found on the North line of said Alley; thence leaving said alley, North 35 degrees 07 minutes 00 seconds East a distance of 130.00 feet to a drill hole found on the south line of Monument Avenue; thence with and along said Avenue, South 54 degrees 53 minutes 00 seconds East a distance of 65.87 feet to a "X" cut found, being the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited liability company, by Deed dated April 9, 1998, recorded April 13, 1998 in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 98-9308.

811 N. Boulevard

All those certain tracts or parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.071 acre, more particularly described as follows:

BEGINNING at a nail found on the east line of North Boulevard, said point being 115.59 feet North of the north line of West Grace Street; thence with and along the East line of said North Boulevard, North 22 degrees 43 minutes 30 seconds east, a distance of 33.39 feet to a rod found on the south line of a 20 foot alley; thence with and along said alley, South 53 degrees 59 minutes 58 seconds East a distance of 98.62 feet to a rod found on the west line of 15 foot alley; thence with and along said alley, South 35 degrees 54 minutes 30 seconds West, a distance of 32.50 feet to a rod found; thence leaving said alley, North 54 degrees West, a distance of 91.00 feet to the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited liability company, by Deed from Wayne L. Sullivan and Elvie I. Sullivan, husband and wife, dated March 18, 1998, recorded March 23, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 98-7104.

2730 W. Grace

All those certain tracts or parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.131 acre, more particularly described as follows:

BEGINNING at a lead hub found on the north line of West Grace Street, said point being 125.64 feet East of the east line of North Boulevard; thence leaving said Street, North 35 degrees 54 minutes 30 seconds East a distance of 145.00 feet to a rod found on the west line of a 20 foot alley; thence along said alley, South 53 degrees 59 minutes 58 seconds East, a distance of 39.50 feet to a R.R. spike set on the west line of said alley; thence leaving said alley, South 35 degrees 54 minutes 30 seconds West, a distance of 145.00 feet to a "X" in concrete found on the north line of West Grace Street; thence with and along said street, North 54 degrees 00 minutes 00 seconds a distance of 39.50 feet to a lead hub, being Point of Beginning.

Being the same property conveyed to River City Renaissance, LC, a Virginia limited liability company, by Deed from Fred D. Goodwin, III and Katheryn K. Goodwin, husband and wife, and Russell D. Stone and Macy J. Stone, husband and wife, dated May 8, 1998, recorded May 15, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 98-12494.

805-807 N. Boulevard

All those certain tracts or parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.110 acre, more particularly described as follows:

BEGINNING at nail hole found on the East line of North Boulevard, said point being 57.17 feet west of the north line of West Grace Street; thence with and along the west line of said Boulevard, North 22 degrees 43 minutes 30 seconds East, a distance of 58.42 feet to a nail found; thence leaving said Boulevard, South 54 degrees 00 Minutes 00 seconds East, a distance of 91.00 feet to a rod found on the west line of a 15 foot alley in common; thence southwardly with and along said alley, South 35 degrees 54 minutes 30 seconds West, a distance of 56.86 feet to a pk nail found on the centerline of a 2.75 foot alley in common; thence with and along said alley, North 54 degrees 00 minutes 00 seconds West, a distance of 77.68 feet to a nail hole found, being the Point of Beginning.

Being the same property conveyed to River City Renaissance; LC, a Virginia limited liability company, by Deed from Patricia Inglesby Thomas, dated May 13, 1998, recorded May 15, 1998, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 98-12493.

622 N. Boulevard

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.167 acre, more particularly described as follows:

BEGINNING at a nail set at the intersection of the west line of North Boulevard and the south line of Monument Avenue; thence along said Boulevard, South 23 degrees 17 minutes 39 seconds West, 11 distance of 50.00 feet to a nail set; thence leaving said Boulevard, North 53 degrees 26 minutes 11 seconds West, a distance of 150.00 feet to a rod found on the east line of a 15 foot alley; thence along said alley, North 23 degrees 17 minutes 39 seconds East, a distance of 50.00 feet to a nail set; thence leaving said alley, South 53 degrees 26 minutes 11 seconds East, a distance of 150.00 feet to a nail set on the west line of North Boulevard, being the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability company, by Deed from River City Renaissance II, LC, a Virginia limited liability company, dated September 18, 2002, recorded October I, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-030846.

709-711 N. Boulevard

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.170 acre, more particularly described as follows:

BEGINNING at a stone found at the intersection of the south line of West Grace Street and the east line of North Boulevard; thence with and along the south line of West Grace Street, South 51 degrees East, a distance of 110.78 feet to a pk nail found; thence leaving said Street, South 39 degrees 00 minutes 49 seconds West, a distance of 72.49 feet to a rod found at the terminus of a 5 foot alley; thence leaving said alley, North 51 degrees West, a distance of 93.62 feet to a "X" found on the east line of North Boulevard; thence with and along said Boulevard, North 25 degrees 41 minutes 28 seconds East, a distance of 74.49 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability Company, by Deed from River City Renaissance II, LC, a Virginia limited liability company, dated September 18, 2002, recorded October 1, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 02-030846.

808 N. Boulevard

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia containing 0.145 acre, more particularly described as follows:

BEGINNING at a punch hole found on the west line of North Boulevard, said punch hole being 136.59 feet north of the north line of West Grace Street; thence leaving said Boulevard North 45 degrees 00 minutes 00 seconds West a distance of l50.00 feet to a rod found on the east line of a 15 foot alley; thence along said alley, North 31 degrees 42 minutes 03 seconds East, a distance of 43.41 feet to a pk nail found; thence leaving said alley, South 45 degrees 00 minutes 00 seconds East, a distance of 150.00 feet to a rod found on the west line of North Boulevard: thence with and along said Boulevard, South 31 degrees 42 minutes 03 seconds West, a distance of 43.41 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability Company, by Deed from River City Renaissance II, LC a Virginia limited liability company, dated September 18, 2002, recorded October 1, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 02-030846.

3115 Monument Avenue

All those two certain tracts or parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.187 acres, more particularly described as follows:

BEGINNING at a pk nail found on the south line of Monument Avenue, said nail being 232.27 feet east of the line of Cleveland Street; thence with and along said Avenue, South 53 degrees 57 minutes 23 seconds East, a distance of 160.96 feet to a rod found; thence South 15 degrees 15 minutes 02 seconds West, a distance of 25.31 feet to a lead hub found on the north line of West Franklin Street, thence with and along the north line of said Street, North 75 degrees West, a distance of 149.92 feet to a pk nail found; said nail being 225.08 feet east of the cast line of Cleveland Street; thence leaving West Franklin Street, North 14 degrees 51 minutes 58 seconds East, a distance of 83.11 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability Company by Deed from River City Renaissance II, LC, a Virginia limited liability company, dated September 18, 2002, recorded October 1 2002, in the Clerk's Office Circuit Court of the City of Richmond, Virginia, as Instrument No. 02-030846.

2726 W. Grace

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.188 acre, more particularly described as follows:

BEGINNING at a "X" found on the north line of West Grace Street, said point being 165.14 feet east of the east line of North Boulevard; thence leaving said Street, North 35 degrees 54 minutes 30 seconds East, a distance of 145.00 feet to a point on the south line of a 20 foot alley; thence eastwardly along said alley, South 53 degrees 59 minutes 58" East, a distance of 56.50 feet to a rod found; thence leaving south line of said Alley, South35 degrees 54 minutes 30 seconds West, a distance of 145.00 feet to a. "X" found on the north line of West Grace Street; thence along said Street, North 54 degrees West, 56.50 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability Company, by Deed from River City Renaissance II, LC, a Virginia limited liability company, dated September 18, 2002, recorded October l, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 02-030&46.

2217 Monument

All those certain tracts of parcels of land, with all appurtenances, thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.064 acre, more particularly described as follows:

BEGINNING at a drill hole found on the south line of Monument Avenue, said drill hole being 279.42 feet West of the west line of Allison Street; thence leaving said Avenue, South 35 degrees 07 minutes West, a distance of 130.00 feet to a rod found on the north line of a 15 foot alley; thence along said alley, North 54 degrees 53 minutes West, a distance of 21.33 feet to a nail found; thence leaving said Alley, North 35 degrees 07 minutes East, a distance of 130.00 feet to a point on the south line of Monument Avenue; thence with and along the south line of said Avenue, South 54 degrees 53 minutes East, 21.33 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability Company, by Deed from River City Renaissance II, LC, a Virginia limited liability company, dated September 18, 2002, recorded October 1, 2002 in the Clerk's Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 02-030846.

2233 Monument

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.075 acre, more particularly described as follows:

BEGINNING at a point on the south line of Monument Avenue, said point being 51.00 feet east of the east line of Addison Street; thence Easterly with and along the south line of Monument Avenue, South 53 degrees 05 minutes 26 seconds East, a distance of 25 .00 feet to a point; thence leaving said Avenue, South 36 degrees 54 minutes 14 seconds West, a distance of 130.00 feet to a rod found on the north line of a 15 foot alley; thence along said alley, North 53 degrees 05 minutes 26 seconds West, a distance of 25.00 feet to a rod found; thence leaving said alley, North 36 degrees 54 minutes 34 seconds East, a distance of 130.00 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance. LC, a Virginia limited liability Company, by Deed from River City Renaissance II, LC, a Virginia limited liability company, dated September 18, 2002, recorded October 1, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-030846.

2700 W. Grace

All those certain tracts or parcels of land with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 0.110 acre more particularly described as follows:

BEGINNING at a stone found on the northwest comer of Mulberry Street and West Grace Street; thence Westwardly along the north line of West Grace Street, North 54 degrees West, a distance of 33.00 feet to a punch hole found; thence leaving said Street, North 35 degrees 55 minutes 19 seconds East, a distance of 145.00 feet to a rod found on the south line of a 20 foot alley; thence eastwardly along said alley, South 53 degrees 59 minutes 58 seconds East, a distance of 33.00 feet to a punch hole found on the west line of Mulberry Street; thence along said Street, South 35 degrees 55 minutes 19 seconds, West a distance of 145.00 feet to the Point of Beginning.

Being a part of the same property conveyed to River City Renaissance, LC, a Virginia limited liability Company by Deed from River City Renaissance II, LC, a Virginia limited liability company, dated September 18, 2002, recorded October 1, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia as Instrument No. 02-030846.

3501 Stuart Avenue and 306 N. Nansemond

All those two certain tracts of parcels of land, with all appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, containing 4.926 acres, and 0.120 acres, more particularly described as follows:

4.926 Acre Parcel

BEGINNING at a monument found on the northeast corner of Thompson Street and Hanover Avenue; thence along the east line of Thompson Street, North 40 degrees 43 minutes 27 seconds East, a distance of 396.78 feet to a monument on the southwest corner of Thompson Street and Stuart Avenue; thence along the south line of Stuart avenue, South 66 degrees East, a distance of 567.05 feet to a monument found in the northwest corner of Stuart Avenue and Nansemond Street; thence along the west line of Nansemond Street, South 23 degrees 24minutes 15 seconds West, a distance of l79.86 feet to a nail found on the north line ofa20 foot alley; thence along said alley, North 66 degrees 3 minutes 49 seconds West, 126.00 feet to a nail set on the west line of a 16 foot alley; thence along said alley, South 23 degrees 24 minutes 12 seconds West, a distance of 82.55 feet to a nail set on the south line of a 15 foot alley; thence along said alley, South 66 degrees 00 minutes 33 seconds East, a distance of 16.01 feet to a rod found; thence leaving said alley, South 23 degrees 23 minutes 39 seconds West, a distance of 117.38 feet to a nail found on the north line of Hanover Avenue; thence along said Avenue, North 66 degrees 00 minutes 33 seconds West, a distance of 575.21 feet (erroneously stated as 685.18 feet in prior conveyances) to the Point of Beginning.

0.120 Acre Parcel

BEGINNING at a rod found on the northwest corner of Nansemond Street and a 15 foot alley, said point being 132.38 feet north of the north line of Hanover Street; thence along said alley, North 65 degrees 56 minutes 48 seconds West, 110.00 feet to a nail set on the east line of a 16 foot alley; thence along said alley, North 23 degrees 24 minutes 15 seconds East a distance of 47.50 feet to a rod found on the south line of a 20 foot alley; thence along said alley; South 65 degrees 56 minutes 48 seconds East, a distance of 110.00 feet to a nail found on the west line of Nansemond Street; thence along said Street, South 23 degrees 24 minutes 15 seconds West, a distance of 47.50 feet to the Point of Beginning.

Being the same property conveyed to River City Renaissance, LC a Virginia limited liability company, by Deed from River City Renaissance IV, LC, a Virginia limited liability company, dated September 18, 2002, recorded October 1, 2002, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 02-030845.

25 N. Boulevard

All that certain lot, piece or parcel of land, lying and being in the City of Richmond, Virginia, together with all improvements thereon and all appurtenances thereto relating, known as No.25 North Boulevard or "Dakota Apartments", more particularly described as follows:

COMMENCING at a stone marking the intersection of the eastern line of North Boulevard and the southern line of Floyd Avenue; thence southwardly along the eastern line of North Boulevard, 38.0 feet to a nail; thence back eastwardly between parallel lines, the northernmost one of which is the southern line of Floyd Avenue, a distance of 131.66 feet to a cross cut marking the western line of alley and the southern one of which is 131.55 feet to a nail marking the western line of an alley, said Lot having a rear line of 38 feet abutting upon said alley as shown on the plat of survey prepared by J.K, Timmons & Associates, Incorporated Engineers, Surveyors and Planners, dated July I, 1985, attached to and made a part of that certain Deed of Trust recorded in Deed Book 48, Page 620.

Being the same property conveyed to River City Renaissance III, LC, a Virginia limited liability company by Deed from Delores K. Montalbano, dated November 27, 2000, recorded December 4, 2000, in the Clerk's Office of the Circuit Court of the City of Richmond, Virginia as Instrument No. 00-28439.

2810 Monument Avenue

All that certain lot, piece or parcel of land, with all improvements thereon and appurtenances thereunto belonging, lying and being in the City of Richmond, Virginia, known as "'The Greenwood Apartments", and numbered 2810 Monument Avenue, and being more particularly bounded and described in accordance with the plat of survey by Foster & Miller, Certified Surveyors, dated December 8, 1976, and entitled, "Plat of No. 2810 Monument Avenue, Richmond, Virginia", and described as follows:

BEGINNING at a point marked by a lead hub in the northern line of Monument Avenue, said Point being distant thereon 162.62 feet from the western line of North Boulevard; thence running in a westerly direction along and fronting on the northern line of Monument Avenue, 49 feet to a lead hub; thence back from said front, in a northerly direction between parallel lines, a distance of 130 feet to a 15 foot alley in the rear, the northwestern comer being marked by a rod and the northeastern comer being the corner of the garage on the east, said Lot having a width of 49 feet along said alley.

Being the same property conveyed to River City Renaissance, III, LC, a Virginia limited liability company, by Deed from Net Corp, L.L.C., a Virginia limited liability company, dated January 7, 2000, recorded January 19, 2000, in the Clerk's Office, Circuit Court of the City of Richmond, Virginia, as Instrument No. 00-01317.

2714-2716 W. Grace

All that certain lot, piece or parcel of land with all improvements thereon and appurtenances thereto belonging, lying being in the City of Richmond, Virginia, all as shown on the plat of survey made by Potts, Minter and Associates, P.C. Engineers, Land Surveyors, Land Planners, dated January 24, 2000, entitled "PLAT SHOWING IMPROVEMENTS ON NOS. 2714 AND 2716 W. GRACE STREET, IN The CITY OF RICHMOND, VIRGINIA", a copy of which is recorded with deed recorded in Instrument #00003353 in the Clerk's Office of the Circuit Court of the City of Richmond, Virginia.

Being the same property conveyed to River City Renaissance III, LC, a Virginia limited liability company, by Deed from Stephen H. Catlett and Margaret S. Catlett, husband and wife, dated February 3, 2000, recorded February 15, 2000, in the Clerk's Office of the Circuit Court of the City of Richmond, Virginia, as Instrument No. 00-003353.

2516, 2518 W. Grace and 803 and 805 N. Robinson

All that certain real estate situated, lying and being in the City of Richmond, Virginia, with the improvements thereon, known as No. 2516 (formerly 2520), No 2518 (formerly 2522) West Grace Street and Nos. 8031 805, 807 and 809 North Robinson Street (formerly, erroneously referred to as 803 and 805 North Robinson Street), as more particularly shown and designated upon plat of Phillip H. Brooks, C.L.S., dated June 15,1973 which is attached to and recorded with that certain Deed in Deed Book 685B, Page 89 and as further shown and designated on plat of survey by Potts, Minter and Associates, P.C., dated October 22, 1999, revised November 11, 1999, attached to and recorded with Deed recorded in Instrument #99-33764 in the Clerk's Office of the Circuit Court of the City of Richmond, Virginia.

Being the same property conveyed to River City Renaissance III, LC, a Virginia limited liability company, by Deed from Carson L. Milam a/k/a Carson Lee Milam., a married man, dated November 9, 1999, recorded December 15, 1999, in the Clerk's Office of the Circuit Court of the City of Richmond, Virginia, as Instrument No. 99-33764.

**RIVER CITY RENAISSANCE III, LC PROPERTIES**

110 North Boulevard

All that certain lot, piece or parcel of land, with improvements thereon and appurtenances thereto belonging, known as 'BELMONT APARTMENTS', lying and being in the City of Richmond, Virginia, situated on the western line of the Boulevard between Floyd and Grove Avenues, designated as No. 108-110 North Boulevard and being more particularly described as follows:

BEGINNING on the western line of the Boulevard, 118 feet North of the northern line of Floyd Avenue; thence running northwardly along the western line of Boulevard and fronting thereon 73 feet and 9 Inches; thence from said front extending back westwardly between parallel lines, 147 feet and 9 1/2 inches on the northern line and 148 feet and 3 1/2 inches on the southern line to a court and alley in the rear and being shown upon the map made Maya, 1921 by T. Crawford Redd & Bro., and recorded in the Clerk's Office of the Circuit Court of the City of Richmond, Division I, in Deed Book 273-B, Page 208.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, LLC., dated March 12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-5977.

705 -707 North Boulevard

All that certain lot, piece or parcel of land, lying and being in the City of Richmond, Virginia, together with all improvements thereon and appurtenances thereto related and generally known as No. 705 and 707 North Boulevard,and more particularly shown by plat of survey prepared by Charles H. Fleet and Assoc., Certified Surveyors, dated March 13, 1973, recorded in Deed Book 682-D, Page 78, as follows:

Commencing at a point along the eastern line of North Boulevard, which point is 74.49 feet southwardly from the intersection of the eastern line of North Boulevard and the southern line of West Grace Street. thence eastwardly through an alley in common, 103.63 feet to a rod along the northern line of an alley, 10 feet wide, (which rod is 72.5 feet southwardly from the south line of West Grace Street); thence along the said alley southwardly 57.50 feet to a point marking the intersection of the western line of said 10 foot alley with the northern line of a 15 foot alley; thence along the northern line of said 15 foot alley, 90.03 feet to a spike marking the intersection of the northern line of said 15 foot alley with the eastern line of North Boulevard; thence along the eastern line of North Boulevard 59.08 feet to the Point of Commencement.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, LLC., dated March 12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-5977.

2903 Monument Avenue

All that certain piece or parcel of land, lying and being in the City of Richmond, State of Virginia, together with all improvements thereon and appurtenances thereto belonging, known as 2903 Monument Avenue and more particularly described as follows, to wit:

Beginning at a point on the south line of Monument Avenue, 30 feet west of Colonial Avenue (formerly Deep Run Street); thence running westwardly along the south line of Monument Avenue and fronting thereon 44 feet; thence running back southerly from said front between parallel lines to a distance of 130 feet, more or less, to a public alley in the rear.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, LLC., dated March12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-5977.

3224 Stuart Avenue

All that certain lot, piece or parcel of land, lying and being in the City of Richmond, Virginia, together with all the Improvements thereon known as "The Hayes Apartment", and designated as 3224 Stuart Avenue, and more particularly described as follows:

Beginning on the north line of Stuart Avenue 57.5 feet east of Tilden Street, thence running eastwardly along and fronting on the north line of Stuart Avenue 57.5 feet; thence extending back between nearly parallel lines 130 feet to an alley, 12 feet wide, on which it fronts 57.49 feet.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, LLC., dated March12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-597

3228 Stuart Avenue

That parcel of land in the City of Richmond, Virginia, situated on the northern line of Stuart Avenue and on the eastern line of Tilden Avenue, together with all improvements on said parcel and appurtenances thereto belonging, known as "The Tilden Apartments", also known as No. 3228 Stuart Avenue, and bounded as follows, to wit:

Beginning at the northeast corner of Stuart Avenue and Tilden Street, thence running eastwardly along and fronting on the northern line of Stuart Avenue, 57.5 feet; thence extending back northwardly between the eastern line of Tilden Street and a line parallel therewith 130 feet to an alley 12 feet wide.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, LLC., dated March12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-5977.

3408 Park Avenue

That certain parcel of land with improvements thereon situated in the City of Richmond, Virginia, known as 3408 Park Avenue, and further described as follows:

Commencing at a point on the north line of Park Avenue 272.36 feet west of the western line of Roseneath Road; thence running westwardly along and fronting on the northern line of Park Avenue, 61.58 feet; thence extending back northwardly from said front between parallel lines 140 feet to an alley in the rear, 15 feet wide.

BEING a part of the same real estate conveyed to River City Renaissance III, LC, a Virginia limited liability company, by deed from Tuffy Properties, LLC., dated March 12, 2001, recorded March 13, 2001, in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument No. 01-5977